# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ABBVIE, INC., *et al.*, | |
| Plaintiffs, | |
| v. | No. 4:24-cv-00996-SRC |
| ANDREW BAILEY, *et al.*, | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE

## INTRODUCTION

Missouri Hospital Association ("MHA") and Missouri Coalition for Primary Care d/b/a Missouri Primary Care Association ("MPCA") (together "Proposed Intervenors") seek to intervene in a case where they are improper parties and that they could never file on their own. Proposed Intervenors filed this untimely motion (two weeks after a dispositive motion was filed) seeking to intervene to defend their purely economic business interests, ignoring that they have no legally cognizable rights at stake in this litigation.  Neither the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.025, nor the federal law 340B authorizing statute, 42 U.S.C. § 256b, would permit Proposed Intervenors to bring this suit.  Because Proposed Intervenors do not allege an economic injury incurred "primarily for personal, family, or household purposes," Mo. Rev. Stat. § 407.025(1), they could not seek to enforce S.B. 751 against AbbVie in a standalone suit seeking to protect the *same* rights they contend justify intervention.  And the Supreme Court has definitively held that the federal 340B statute bars private suits by covered entities against manufacturers seeking to protect their rights and interests under the 340B program.  *Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 563 U.S. 110, 121 (2011).

Proposed Intervenors cannot use intervention to circumvent limitations on private rights of action imposed by the federal and state legislatures.  In any case, Proposed Intervenors' alleged financial harm is not a legitimate interest justifying intervention.  Those interests are adequately represented by Defendants—government entities presumed by law to protect the Proposed Intervenors' interests—because Defendants have the same primary objective as Proposed Intervenors: defending S.B. 751 from invalidation.

## ARGUMENT

Proposed Intervenors cannot satisfy the elements of intervention as of right or permissive intervention under the Federal Rules and are more appropriately situated as amicus curiae.

## I.  PROPOSED INTERVENORS ARE NOT ENTITLED TO INTERVENTION AS OF RIGHT.

Proposed Intervenors cannot satisfy Rule 24(a)(2)'s requirements to intervene as a matter of right.  To succeed, they must show: (1) the motion to intervene is timely; (2) "a recognized interest in the subject matter of the litigation"; (3) "the interest might be impaired by the disposition of the case"; and (4) "the interest will not be adequately protected by the existing parties." *S. Dakota ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 785 (8th Cir. 2003) (quoting *Chiglo v. City of Preston*, 104 F.3d 185, 187 (8th Cir. 1997)); *United States v. Ritchie Special Credit Invests., Ltd.*, 620 F.3d 824, 831–32 (8th Cir. 2010).  Proposed Intervenors cannot make this showing.

### A.  Proposed Intervenors' Motion Is Untimely.

"Timeliness is to be determined from all the circumstances."  *Ritchie*, 620 F.3d at 832 (quoting *NAACP v. New York*, 413 U.S. 345, 365–66 (1973)).  The Eighth Circuit "consider[s] several specific factors relevant to a determination of timeliness: (1) how far the litigation ha[s] progressed at the time of the motion for intervention, (2) the prospective intervenor's prior knowledge of the pending action, (3) the reason for the delay in seeking intervention, and (4) the likelihood of prejudice to the parties in the action." *Id.* (internal quotations and citation omitted) (alterations adopted).  Those weigh against permitting intervention.

Proposed Intervenors filed this motion more than two months after the initial complaint and more than two weeks after Defendants moved to dismiss.  Their delay is particularly problematic given their ongoing involvement in a related case: *Novartis Pharmaceuticals Corporation v. Bailey, et al.*, 2:24-cv-04131-MDH (W.D. Mo.).  They moved to intervene in that case over two months ago, on August 20, 2024.  *Id.* (ECF No. 25).  That motion was opposed and remains pending.  Yet, they provide no explanation for their delay, or why they could not move to

2

intervene in this litigation on the same day, even though AbbVie filed its complaint nearly two weeks before Novartis, and AbbVie's complaint had been pending for nearly a month by that point.

The second and third timeliness factors also weigh against intervention. Given "the size and astuteness of the membership and staff" of Proposed Intervenors and that multiple news outlets reported about this case the day of or after AbbVie filed suit,[1] Proposed Intervenors "knew or should have known of the pendency of th[is] . . . action" since its inception. *NAACP*, 413 U.S. at 366–67; *see Ritchie*, 620 F.3d at 833 ("When a party had knowledge of all the facts . . . and failed to raise the issue when first presented with an opportunity to do so, subsequent intervention is untimely."). MHA, in fact, ***did*** know and issued a press release on July 24, 2024, two days after AbbVie filed its complaint, explaining that "AbbVie . . . filed a lawsuit seeking to enjoin SB 751," linking to AbbVie's as-filed complaint, and noting that although "[t]he attorney general is responsible for defending the lawsuit[,] MHA is exploring options to intervene in the litigation."[2] Yet, inexplicably, MHA did not do so for another two months and sought to intervene in a later-filed suit first. They offer no "reason for the[ir] delay in seeking intervention." *Ritchie*, 620 F.3d at 832.

Finally, AbbVie will suffer prejudice if Proposed Intervenors are permitted to intervene. By nature, intervenors lengthen, complicate, and add confusion to proceedings. *See Stadin v.*

---

[1]  *E.g.*, Hailey Konnath, *AbbVie Challenges Mo. Drug Discount Program Requirements*, Law360 (July 22, 2024), https://www.law360.com/articles/1860830/abbvie-challenges-mo-drug-discount-program-requirements; William Newton, *First Drugmaker Sues Missouri Over its 340B Contract Pharmacy Access Law*, 340B Report (July 23, 2024), https://340breport.com/first-drugmaker-sues-missouri-over-its-340b-contract-pharmacy-access-law/; Nicole DeFeudis, *AbbVie files lawsuit in Missouri federal court over 340B contract pharmacies,* Endpoints News (July 23, 2024), https://endpts.com/abbvie-files-lawsuit-in-missouri-federal-court-over-340b-contract-pharmacies/.

[2]  Press Release, MHA, Drug Manufacturers Challenge 340B Legislation (July 24, 2024), https://web.mhanet.com/media-library/mha-today-july-24-2024/.

3

*Union Elec. Co.*, 309 F.2d 912, 920 (8th Cir. 1962) (collecting cases). Those issues are compounded where Defendants have already filed, and AbbVie already opposed, a dispositive motion. Proposed Intervenors, by contrast, will suffer no prejudice if denied intervention because their interests are adequately represented by the State and Proposed Intervenors can, and in fact must, seek to recoup any interest they have in 340B "savings" through the exclusive federal ADR process. *See Astra*, 563 U.S. at 119; *infra* Section I.B; *infra* at 10; *Ritchie*, 620 F.3d at 834 ("[T]here is no prejudice to [intervenor] if it is not allowed to intervene because [it] still has a venue to contest (and protect) its claims in bankruptcy court[,] . . . [and] therefore has sufficient remedies . . . which make intervention here unnecessary.").

### B. Proposed Intervenors' Interests Are Adequately Represented By The Attorney General And Board of Pharmacy.

Proposed Intervenors cannot overcome the presumption that Defendants will adequately represent their interests. Here, Proposed Intervenors' interests are identical to those of the Attorney General and Board of Pharmacy Defendants, the kind of government entities presumed to adequately represent the interests of Missouri's citizens. In the Eighth Circuit, a "presumption of adequate representation [arises] when the prospective intervenor's interest is identical to that of an existing party." *Arrow v. Gambler's Supply, Inc.*, 55 F.3d 407, 409–10 (8th Cir. 1995). And where, like here, "a government entity is a party and the case concerns a matter of sovereign interest, the government is presumed [to] adequately . . . represent the interests of the public." *Curry v. Regents of Univ. of Minnesota*, 167 F.3d 420, 423 (8th Cir. 1999). "This presumption may be rebutted by a strong showing of inadequate representation." *Id.* For example, Proposed Intervenors "may show that [their] interests are distinct and cannot be subsumed within the public interest represented by the government entity," *Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*, 378 F.3d 774, 780 (8th Cir. 2004), or "that the [government entity] has committed misfeasance or

4

nonfeasance in protecting the public," *Chiglo*, 104 F.3d at 188.  "The intervenor bears the burden of showing that his interests are not adequately represented by existing parties." *Id.* at 187.

Because Proposed Intervenors and Defendants share the same objective—upholding S.B. 751 against a constitutional challenge—Defendants are presumed to adequately represent that interest.[3]  Proposed Intervenors do not (and cannot) contest that Defendants' sole interest in this matter is defending S.B. 751.  The same goes for Proposed Intervenors, regardless of their "specific economic and mission-based interests in the viability of S.B. 751." Mot. at 13; *e.g.*, *id.* at 9 (arguing that they will be injured if "S.B. 751's protections are upended" and that their injuries are "redressable by this Court because a favorable decision would allow S.B. 751 to stand"); *id.* at 11–12 ("Plaintiffs are challenging S.B. 751, which protects delivery of 340B drugs to members' contract pharmacies and ability to provide critical services to their patients and communities.").

---

[3]   The cases Proposed Intervenors cite from the Eastern District of Arkansas and the Western District of Louisiana are distinguishable on both the facts and law. *See* Mot. at 13 n.5.  In *PhRMA v. McClain*, the Arkansas Insurance Commissioner stayed enforcement of the relevant law during the litigation over the objection of the would-be intervenors "and proposed rule changes that would negatively impact Intervenors' interests regarding the 340B drug pricing program." Order (ECF No. 22) at 6, 4:21-cv-00864-BRW (E.D. Ark. May 3, 2022).  Missouri has taken no such position.  And in *AstraZeneca Pharms. LP v. McClain*, Order (ECF No. 50) at 6, 4:24-cv-00268-BRW (E.D. Ark. Aug. 13, 2024), the court failed to apply the appropriate presumption that the government defendant will adequately represent the interests of the intervenor, instead applying the incorrect standard that the proposed intervenor's burden was met "by a minimal showing that representation *may be* inadequate." Order (ECF No. 50) at 6, *AstraZeneca Pharms. LP v. McClain,* 4:24-cv-00268-BRW (E.D. Ark. Aug. 13, 2024) (emphasis added) (internal quotations omitted).  The court also ignored on-point Eighth Circuit law in holding that intervenor's "interests are sufficiently disparate from" the state because it "has a specific economic interest" in the law that the state does not. *Id.* at 6–7.  Further, in *AbbVie v. Murrill*, the plaintiffs in the two related cases did not oppose intervention, and the Louisiana court concluded that "disallowing such intervention [in the case at bar] would be inconsistent." Mem. Ruling (ECF No. 58) at 5, *AbbVie v. Murrill*, 6:23-CV-01307 (W.D. La. Mar. 7, 2024).  AbbVie, by contrast, opposes intervention, as does Novartis in a parallel action in the Western District of Missouri.  Opp. to Intervention (ECF No. 44), *Novartis Pharms. Corp. v. Bailey*, 2:24-cv-04131-MDH (W.D. Mo.).

5

The Eighth Circuit rejected a nearly identical argument in *Curry*: "The Movants characterize their interest as a concern that they will lose funding, . . . while characterizing the University as merely interested in upholding the current fee system.  The Movants potentially may lose funding, however, only if the fee system is not upheld.  Thus, although the[ir] . . . motives may be distinguishable . . . , the Movants' and the University's ***interests are the same***: both want the current fee system upheld."  167 F.3d at 423 (emphasis added).  "[T]he Eighth Circuit has made clear that simply having a heightened or particularized interest in the outcome of a suit is insufficient to overcome the strong presumption that the State will represent the interests of all of its citizens."  *St. Louis Effort for AIDS v. Huff*, 2014 WL 1631386, at *5 (W.D. Mo. Apr. 24, 2014).  Proposed Intervenors' "underlying reason or motivation for defending [S.B. 751] is not important, so long as both" the Defendants' and Proposed Intervenors' "objectives and litigation position are the same."  *Id.*  Here, Proposed Intervenors' "interest in defending the statute is coextensive with the State's, and there is no basis for deeming the State's defense inadequate just because [Proposed Intervenors] assert[] an economic motivation [the State] does not."  *Id.*  Proposed Intervenors "do[] not (and probably cannot) argue that [their] economic concerns alter the Supremacy Clause/preemption [and Takings Clause] analys[e]s that [are] called for."  *Id.*  Nor do these purported separate interests give rise to "a unique defense available to [Proposed Intervenors] that the State cannot assert."  *Id.*  In short, because Proposed Intervenors' "objective—defending [S.B. 751]—remains identical to Missouri's and thus is entirely subsumed within Missouri's defense of its own statute," they have "failed to overcome the presumption that its interest in defending [S.B. 751] is adequately addressed by Missouri's defense."  *Id.*; *Curry*, 167 F.3d at 423.[4]

---

[4] That Proposed Intervenors and Defendants raise nearly identical arguments in their motions to dismiss reinforces that they share an ultimate objective.  *See United States v. Bliss*, 132 F.R.D.

6

Nor does it help Proposed Intervenors that its members "benefit from the 340B Program, are harmed by drug manufacturers' actions to block shipment of 340B medications to their contract pharmacies, are the benefactors of S.B. 751's protections," and are "providing care to low income and medically underserved Missourians." Mot. at 13. These are the very interests Defendants seek to protect by defending S.B. 751. As Defendants argued in their Motion to Dismiss, Missouri "sprung into action [by enacting S.B. 751] to protect covered entities and their patients" from "restrictive policies . . . [that] cause covered entities dependent on contract pharmacies to become unable to serve patients in need." Mot. to Dismiss at 4 (alterations adopted). These interests are thus not "distinct" from, and can "be subsumed within[,] the public interest represented by" Missouri's defense of the statute. *Little Rock Sch. Dist.*, 378 F.3d at 780; *see Huff*, 2014 WL 1631386, at \*5 ("To the extent [intervenor] . . . is motivated . . . to intervene to defend the statute . . . out of some concern for Missouri citizens, its interest is identical to Missouri's").

And Proposed Intervenors "have not made the strong showing of inadequate representation necessary to rebut the" presumption that the government adequately represents their interests. *Curry*, 167 F.3d at 423. "Because we presume that the [State] is acting on behalf of [Proposed Intervenors], it is incumbent upon [Proposed Intervenors] to set forth specific interests that only it can protect by intervening." *Barnett,* 317 F.3d at 786. "Aside from the purely conjectural [injuries] that potentially might arise" if S.B. 751 is invalidated, Proposed Intervenors have "not identified any specific . . . interest implicated in this litigation that the [State] cannot or will not adequately protect." *Id.*; *see also Huff*, 2014 WL 1631386, at \*4. Nor have Proposed Intervenors

---

58, 60–61 (E.D. Mo. 1990) ("Particularly where . . . the would-be intervenors' complaint is patterned after the complaint of an existing plaintiff, . . . the party seeking intervention has the same ultimate objective as a party to the suit, and a presumption arises that its interests are adequately represented. . . ." (alterations adopted) (citation omitted)); *Stadin v. Union Elec. Co.*, 309 F.2d 912, 922 (8th Cir. 1962).

7

argued that Defendants have "committed misfeasance or nonfeasance" in defending the statute. *Chiglo,* 104 F.3d at 188.

Finally, it is irrelevant that "Defendants have not taken any enforcement action concerning S.B. 751 to date." Mot. at 13. Proposed Intervenors conflate enforcing S.B. 751 with defending it against a constitutional challenge. They do not (and cannot) explain how the AG's and Board of Pharmacy's failure to bring an enforcement action under S.B. 751 within the first two months of it taking effect—and while its constitutionality is being litigated—is evidence that they will not vigorously defend the statute. On the contrary, Defendants have proved their willingness to defend S.B. 751 by contesting AbbVie's constitutional challenge. And Proposed Intervenors do not (and cannot) suggest that if the law is upheld, Defendants will fail to enforce it; indeed, the very threat of future enforcement, and the resulting threat to constitutional rights, forms the basis of AbbVie's complaint and alleged future harm.[5]

### C. Proposed Intervenors Do Not Have A Recognized Interest In The Subject Matter Of This Litigation That Can Be Impaired By Its Disposition.

Proposed Intervenors cannot satisfy the remaining two intervention elements. Proposed Intervenors' "asserted interest must be significantly protectable," i.e., "legally protectable." *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 839 (8th Cir. 2009) (internal quotations omitted). They "must also demonstrate that the subject matter of the action affects [their] interests

---

[5] To the extent Proposed Intervenors imply that Defendants' failure to bring an enforcement action under S.B. 751 is evidence that they have pursued an imprudent course of action, they "cannot rebut the presumption of representation by merely disagreeing with the litigation strategy or objectives of the party representing [them]." *Chiglo*, 104 F.3d at 188. Not enforcing a law within the first couple months of its enactment is certainly not the "sort of clear dereliction of duty" that would rebut the presumption. *Id.* States must balance objectives and resource constraints in making enforcement decisions, and courts should be reluctant to second-guess their discretion. *See Brown v. Plata*, 563 U.S. 493, 538 (2011) ("Courts should presume that state officials are in a better position to gauge how best to preserve public safety and balance competing . . . law enforcement concerns.").

8

in a direct rather than tangential way." *Id*.  "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy [Rule 24(a)(2)]." *Standard Heating & Air Conditioning Co. v. City of Minneapolis*, 137 F.3d 567, 571 (8th Cir. 1998) (quoting *Washington Elec. v. Mass. Mun. Wholesale Elec.*, 922 F.2d 92, 97 (2d Cir. 1990)).

*First,* Proposed Intervenors do not assert a legally protectable interest.  Proposed Intervenors have no right to enforce either S.B. 751 or the federal 340B statute, meaning they have no right or interest in the subject matter of this litigation.  S.B. 751 does not grant covered entities a private right of action.  As explained *supra*, Subsection 3 of S.B. 751 makes any violation of subsection 2 of the statute an unlawful practice under the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.020, and authorizes "any action" permitted in "[Mo. Rev. Stat. §] 407.010 to 407.130."  Mo. Rev. Stat. § 376.414.3.  In that range of MMPA provisions, only Section 407.025 permits a private civil action for damages against an entity that violates Section 407.020.  But Section 407.025 only permits private civil suits by those who acquire merchandise for "personal, family or household purposes," Mo. Rev. Stat. § 407.025.1, which Proposed Intervenors' members do not.  No other provision of S.B. 751 gives Proposed Intervenors' members a private right of action.

Nor can Proposed Intervenors file suit to enforce their proffered interest in 340B "savings"—indeed, their stated interest in S.B. 751 is exactly the kind of interest the Supreme Court has explained is not litigable.  In *Astra*, a covered entity sued a manufacturer for charging drug prices above the 340B-discounted price and sought reimbursement, asserting that the monies were required to "satisfy the unmet need for critical healthcare services in [plaintiffs']

9

communities." Joint Appendix, Second Am. Compl. ¶ 5, *Astra USA, Inc. v. Santa Clara Cnty.*, No. 09-1273, at 31 (U.S. Nov. 12, 2010).

The Supreme Court clarified that such complaints must be brought through the mandatory HRSA ADR process because the 340B statute does not contain a private right of action. *Astra*, 563 U.S. at 119, 122. Here, Proposed Intervenors espouse a nearly identical interest, asserting that "[t]he savings that Proposed Intervenors' members realize due to the 340B Program allow them to provide services to their patients and communities." Mot. at 11. Because Proposed Intervenors cannot file a private federal suit to vindicate this interest, they do not have a legally protectable interest in this matter. *Metro.*, 569 F.3d at 840–41 ("Judicial efficiency is not promoted by allowing intervention by a party with no interest upon which it could seek judicial relief in a separate lawsuit."). The agency's ADR procedures are the only mechanism statutorily available to resolve overcharging disputes between manufacturers and covered entities. Proposed Intervenors' ability to protect or otherwise assert their interest will thus not be impeded by the outcome of this litigation. *Id.* at 841 (denying intervention where, among other issues, the proposed intervenor "ha[d] other avenues to express its concerns").

Proposed Intervenors also claim that their members (1) realize "savings" from the 340B Program, (2) utilize these savings to "provide services to their patients and communities," and (3) are beneficiaries of S.B. 751's protections. Mot. at 11–12. At bottom, these claims implicate Proposed Intervenors' interest in having access to, and benefiting from, 340B-discounted drugs, i.e., an economic interest. *E.g.*, *id.* at 13 ("Proposed Intervenors have specific economic and mission-based interests in the viability of S.B. 751."). But the 340B policy is designed to protect patients, not the financial interests of covered entities. And, in any event, "[g]eneral economic interests are not protectable and cannot serve as the basis for intervention." *Metro.*, 569 F.3d at

10

839 ("A ratepayer's interest in reasonable fees is not legally protectable."); *see Curry*, 167 F.3d at 422 (holding that groups' interest in the university's funds distribution system was an economic interest that did not "rise to the level of a legally protectable interest necessary for mandatory intervention."). Nor do Proposed Intervenors' members have a legally protectable right to access manufacturers' drugs at 340B-discounted prices in the first place, even if they use those savings to provide services to their patients.[6]

*Second,* Proposed Intervenors' purported interests are "remote from the subject matter of the proceeding and any impact is contingent upon the occurrence of a sequence of events." *Metro.*, 569 F.3d at 840 (internal quotations omitted) (quoting *Standard Heating*, 137 F.3d at 571). The sole issue in this case is the validity of S.B. 751—a statute that regulates drug manufacturers, not Proposed Intervenors' members. Proposed Intervenors' purported interest, however, is accessing the financial benefits of the 340B Program. Their interest will only be affected by this action if the Court invalidates S.B. 751 and manufacturers then impose policies restricting covered entities' use of contract pharmacies that cause economic harm to Proposed Intervenors' members. Because Proposed Intervenors' claimed "interest is limited to how this action's financial consequences might eventually affect its members' own pocketbooks," its "interest is too tangential to the core issue[] of this . . . case to establish a right to intervene." *Metro.*, 569 F.3d at 840.

The Eighth Circuit's decision in *Standard Heating* illustrates the point. There, companies who hired technicians in certain maintenance trades challenged a city regulation that, among other things, required the relevant technicians to complete an apprenticeship and pass a competency

---

[6] Further undercutting Proposed Intervenor's "legally protected interest" is that AbbVie's contract pharmacy policy does *not* apply to Proposed Intervenors or their members. *E.g.*, Mot. at 7 ("Plaintiffs do not currently prohibit FQHCs, and thus MPHCA's members, from using more than one contract pharmacy.").

11

examination.  137 F.3d at 569–570.  Three trade associations representing employers who hired apprenticed technicians moved to intervene as defendants to defend the regulations.  *Id.* at 570.  In support of their motion, the associations claimed that, among other things, "[i]f participation in apprentice programs were voluntary, employers like them who hire participating workers would have an economic disadvantage because employers could pay lower wages to hire non-participants."  *Id.* at 571.  The court held that "[t]he interests asserted by the associations concerning the apprenticeship requirement are too speculative to be direct, substantial and legally protectable" because "[a] sequence of events would have to occur for the interests of the associations to be impacted by a successful challenge to the rules, and the associations have not made an adequate showing that these events are likely."  *Id.* (internal quotations omitted).

For much the same reasons, Proposed Intervenors lack Article III standing to intervene in the first instance.  In *Curry*, the Eighth Circuit affirmed the denial of intervention by student groups on a challenge related to "the collection of mandatory fees used to support the activities of campus organizations," but not the distribution of those funds to particular student groups.  167 F.3d at 422.  The groups alleged that, should plaintiffs succeed, they would receive less money in distribution from the campus organization fees.  *Id.*  The Eighth Circuit determined these allegations were insufficient to establish Article III standing because the groups did not have "the constitutional or legal right to compel unwilling students to provide financial support for their activities" meaning "the potential harm to the Movants is not a legally cognizable injury in fact." *Id.*  So too here.  One of the central theses of AbbVie's complaint is that, in the absence of S.B. 751, AbbVie is not compelled to *sell* its drugs to covered entities, but merely to offer them at the 340B price and subject to reasonable conditions.  In other words, covered entities like Proposed Intervenors plead the same kind of "injury" as that of the student groups rejected in *Curry*: where

12

an intervenor has no legal right to compel funds in the first instance, they have no legally cognizable injury. *See id.*

## II. PROPOSED INTERVENORS ARE NOT ENTITLED TO PERMISSIVE INTERVENTION.

Permissive intervention is within a court's discretion where the would-be intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "[P]arties seeking permissive intervention pursuant to Rule 24(b) must show . . . an independent ground for jurisdiction" and that their motion is timely. *Flynt v. Lombardi*, 782 F.3d 963, 966 (8th Cir. 2015). "The principal consideration in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights." *Barnett*, 317 F.3d at 787. The analysis is otherwise the same as under intervention of right.

Here, Proposed Intervenors do not have an independent ground for jurisdiction because they lack standing. *Supra* at 12. And, as outlined above, the relevant factors counsel against permissive intervention. *Supra* Section I; *Barnett*, 317 F.3d at 787. Where a movant seeks to intervene "for the purpose of presenting defenses or arguments that can be or already have been presented by the defendants[, p]ermissive intervention . . . would only serve to delay and unfairly prejudice the rights of the original parties." *Jiang v. Porter*, 2016 WL 4415352, at *3 (E.D. Mo. Aug. 19, 2016) (quoting *Vonage Holdings Corp. v. Neb. Pub. Serv. Comm'n*, 543 F.Supp.2d 1062, 1070 (D. Neb. 2008)). Proposed Intervenors, on the other hand, would suffer no prejudice if denied intervention because their interests are adequately represented by the State, and they could seek relief via the federal ADR process for any 340B charging and pricing disputes. *Supra* Section I.B; *supra* at 10.

13

## III.     PROPOSED INTERVENORS ARE MORE APPROPRIATELY SITUATED AS AMICUS CURIAE.

Should Proposed Intervenors wish to register their views on S.B. 751's constitutionality, they are better suited to do so as an *amicus curiae*. *South Carolina v. North Carolina*, 558 U.S. 256, 288 (2010) (Roberts, J. concurring); *Metro.*, 569 F.3d at 841.  Although Proposed Intervenors have not made the requisite showing to intervene, AbbVie would not oppose their participation as *amicus curiae*.

## CONCLUSION

For the foregoing reasons, the Court should deny Proposed Intervenors' Motion to Intervene (ECF #46).

Dated: October 25, 2024

Ashley C. Parrish (*pro hac vice* forthcoming)
John D. Shakow (*pro hac vice* forthcoming)
KING & SPALDING LLP
1700 Pennsylvania Avenue N.W.
Suite 900
Washington, D.C. 20006
Telephone: (202) 626-2627
Email: aparrish@kslaw.com

Nicole Bronnimann (*pro hac vice* forthcoming)
KING & SPALDING LLP
1100 Louisiana, Suite 4100
Houston, TX 77002
Telephone: (713) 276-7402
Email: nbronnimann@kslaw.com

Respectfully submitted,

*/s/ Lisa A. Pake*
Robert T. Haar (MO #30044)
Lisa A. Pake (MO #39397)
HAAR & WOODS, LLP
1010 Market St., Suite 1620
St. Louis, MO 63101
Telephone: (314) 241-2224
Email: roberthaar@haar-woods.com
      lpake@haar-woods.com

AND

Matthew S. Owen, P.C. (*pro hac vice*)
Meredith M. Pohl (*pro hac vice*)
Michael A. Pronin (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Email: matt.owen@kirkland.com
      meredith.pohl@kirkland.com
      michael.pronin@kirkland.com

*Counsel for Plaintiffs.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Plaintiffs' Memorandum In Opposition to Defendants' Motion to Dismiss was electronically filed with the Clerk of the Court via the Court's CM/ECF system this 25th day of October, 2024, which sent notification of such filing to all counsel of record by electronic means.

                                                                               */s/ Lisa A. Pake*