**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| ABBVIE INC., et al., | ) |
| | ) |
|    *Plaintiffs*, | ) |
| | ) |
| v. | )    No. 4:24-cv-00996-SRC |
| | ) |
| ANDREW BAILEY, *in his official* | ) |
| *capacity as Attorney General* | ) |
| *of the State of Missouri*, et al., | ) |
| | ) |
|    *Defendants*. | ) |

**STATE DEFENDANTS' SUPPLEMENTAL BRIEF**

**INTRODUCTION**

AbbVie's problem is the federal 340B program, not SB 751. When one cuts through all of the legal conclusions and allegations about the replenishment model, there are no factual allegations showing an injury in fact that is fairly traceable to SB 751.[1] AbbVie therefore lacks standing, and this case should be dismissed.

**LEGAL STANDARD**

To establish standing, the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). And an "injury is fairly traceable if the plaintiff shows 'a causal connection between the injury and the conduct complained of' that is 'not the result of the independent action of some third party not before the court.'" *In re SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017) (alterations and omission adopted) (quoting *Lujan*, 504 U.S. at 560). "A plaintiff must support each element of standing 'in the same way as any other matter on which the plaintiff bears the burden of proof.'" *Hawse v. Page*, 7 F.4th 685, 688 (8th Cir. 2021) (quoting *Lujan*, 504 U.S. at 561). "[A]t the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 578 U.S. at 338 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

---

[1] The Court asked the parties to get "granular" with this supplemental briefing. Tr. 80:6. Accordingly, the State has attached as Exhibit 1 a copy of AbbVie's Complaint with highlights showing the nature of each allegation: red for legal conclusions; yellow for injuries traceable to the 340B program and its abuses; and green for injuries traceable to SB 751.

1

**ARGUMENT**

AbbVie's Complaint does not include well-pleaded facts showing that it was injured by SB 751. Its allegations are either (1) legal conclusions, or (2) injuries caused by the 340B program or potential abuses of the 340B program. AbbVie has already previewed its arguments in its Complaint, response brief, and during oral argument. It has failed to "establish[] . . . the 'irreducible constitutional minimum' of standing," and the case should be dismissed. *Spokeo*, 578 U.S. at 338 (quoting *Lujan*, 504 U.S. at 560).

**I.    The Court should disregard AbbVie's legal conclusions.**

Many allegations in AbbVie's Complaint are legal conclusions that cannot be used to establish standing. The Eighth Circuit has explained that *Twombly*'s and *Iqbal*'s pleading standards apply to the standing requirement. *See Hawse*, 7 F.4th at 689 n.6. And those cases hold that courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). For each of its remaining claims,[2] AbbVie failed to "allege sufficient factual matter" to establish "the elements of Article III standing." *Id*. at 688-89.

**A.  AbbVie's background allegations about the laws, regulations, and cases at issue here are legal conclusions, not well-pleaded facts.**

Much of AbbVie's Complaint describes the 340B statute, related regulations, and cases. Paragraphs 34-40, 43-53, and 80-81 describe various aspects of the 340B statute and catalogue changes in federal guidance over the years. And paragraphs 8–10 and 84–88 describe the Third

---

[2] AbbVie has affirmatively dropped its state-law takings claim (Count II) and dormant Commerce Clause claim (Count IV). *See* Doc. 65 at 7 n.1, 13 n.3; *see also Muller v. Blue Diamond Growers*, 683 F. Supp. 3d 933, 937 (E.D. Mo. 2023). Defendants will not address those claims in this brief. AbbVie also waived its regulatory takings claim by arguing that "the regulatory-takings doctrine does not apply." Doc. 65 at 22. But because AbbVie briefly addressed regulatory takings in its response brief, Defendants will still address that claim here.

2

Circuit's decision in *Sanofi Aventis U.S. LLC v. U.S. Dep't of Health & Human Services*, 58 F.4th 696 (3d Cir. 2023), the D.C. Circuit's decision in *Novartis Pharmaceuticals Corp. v. Johnson*, 102 F.4th 452 (D.C. Cir. 2024), and the Eighth Circuit's decision in *PhRMA v. McClain*, 95 F.4th 1136 (8th Cir. 2024). Other portions of the Complaint describe SB 751 and how it functions. *See* Doc. 1, ¶¶ 12, 89-99. Those statutes, regulations, and cases all speak for themselves. The Court is not bound to accept AbbVie's interpretations of those sources of law as true for standing purposes.

Elsewhere in the "Background" section, AbbVie alleges that it "has suspended or will suspend its contract pharmacy policy" because of SB 751. *Id*. ¶¶ 78, 79. But those allegations still fall short because AbbVie fails to allege any other facts showing either (1) that SB 751 violates the Supremacy Clause or Takings Clause, or (2) that the harms it suffers are caused by SB 751 and not the replenishment model or abuses of the 340B program. The Eighth Circuit has held that the mere "assertion that an injury was 'a result' of the [the defendant's] action is a threadbare allegation of an element of standing." *Hawse*, 7 F.4th at 691. "Without a sufficient factual allegation" to support elements of injury in fact and traceability, "the complaint [does] not adequately allege Article III standing." *Id*.

**B. AbbVie's legal conclusions about preemption do not establish standing.**

The Complaint alleges—though argues is a better description—that SB 751 is preempted, but it does not "'clearly . . . allege facts demonstrating' each element." *Spokeo*, 578 U.S. at 338 (quoting *Warth*, 422 U.S. at 518). Indeed, the Complaint reads more like a legal brief than "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). AbbVie's preemption allegations can be grouped into several buckets: (1) allegations that describe preemption law in general; (2) allegations that the 340B program is comprehensive; (3) allegations SB 751 conflicts with the 340B statute by changing the requirements; (4) allegations

3

that SB 751 conflicts with the 340B statute by interfering with the enforcement scheme, and (5) allegations that SB 751 interferes with the purpose of the 340B program. In all of those circumstances, the allegations are legal conclusions and the Complaint lacks the facts necessary to support them.

**1.** Paragraphs 123-25 and 127-28 describe preemption jurisprudence and cite to Supreme Court and Eighth Circuit precedent on field and conflict preemption. Those allegations are legal conclusions, not facts.

**2.** Paragraphs 2, 3, 17, 47, 99 and 126 all include legal conclusions that the 340B statute preempts the field. For example, AbbVie argues that the "federal 340B statute establishes a comprehensive program," and "[e]very detail of the 340B program is determined by federal law" leaving "no room for states to interfere with the carefully designed 340B program." Doc. 1, ¶¶2, 126. Saying that the 340B program is "comprehensive" or "exclusive" is a legal conclusion, not a fact. *Id.* ¶¶ 2, 3, 17, 47. And based on *McClain*, those conclusions are wrong as a matter of law. *McClain*, 95 F.4th at 1144 ("[W]e conclude that in enacting Section 340B, Congress did not intend to preempt the field.").

**3.** The Complaint is also full of legal conclusions that SB 751 conflicts with the 340B program by adding or changing requirements. *See* Doc. 1, ¶¶ 1, 4, 7, 11, 12, 17, 40, 42, 90-93, 107, 131. To the extent that AbbVie is arguing that the 340B program prohibits SB 751's parallel delivery regulation because it is field preempted, that is a legal conclusion for the reasons just described. AbbVie alleges that SB 751 creates a direct conflict by "seek[ing] to change the requirements of when and to which entities manufacturers must provide 340B discounted drugs as a condition of participating in Medicaid." *Id.* ¶ 12. That is a legal conclusion about the effects of the 340B program and SB 751. Whether SB 751 requires manufacturers to add contract

4

pharmacies to the list of covered entities is a legal conclusion, and one that has already been addressed by *McClain*. *See* 95 F.4th at 1144 (rejecting the argument that a law like SB 751 "add[s] pharmacies to the enumerated list of covered entities eligible to receive 340B pricing on drugs").

AbbVie's conflict preemption claim depends on the legal conclusion that SB 751 "eliminates manufactures' ability to adopt policies to prevent 340B abuses." Doc. 1, ¶ 93. That is wrong for two reasons. First, it assumes that the 340B statute gives AbbVie an affirmative right to adopt contract pharmacy policies. But AbbVie's leading cases—*Sanofi Aventis* and *Novartis*—held that this conclusion was wrong because "section 340B is 'silent about delivery.'" *Novartis*, 102 F.4th at 461 (quoting *Sanofi Aventis*, 58 F.4th at 703)). Second, it is a legal conclusion that SB 751 prevents AbbVie from policing 340B abuses. As AbbVie acknowledges, SB 751 does not apply if HHS prohibits a pharmacy's receipt of 340B drugs. *See* Doc. 1, ¶ 98. AbbVie simply concludes that "[d]espite stating that it should not be construed to conflict with federal law, there is no way to read S.B. 751 in congruence with the 340B statute." *Id*. ¶ 99. But it alleges no facts to show that to be true. Missouri can legislate under the assumption that covered entities and pharmacies will follow federal law. And AbbVie has a federal-law remedy if it believes that covered entities are illegally diverting 340B drugs to contract pharmacies. *See* 42 U.S.C. § 256b(d)(3).

**4.** AbbVie's Complaint also alleges that there is a conflict because SB 751's enforcement mechanism interferes with the 340B administrative dispute process. *See* Doc. 1, ¶¶ 3, 47, 97, 99, 129, 130. For example, AbbVie alleges that the 340B statute "grants the Secretary of [HHS] exclusive authority to enforce its provisions," and that "State enforcement 'would undermine the agency's efforts to administer [Medicaid and the 340B program] harmoniously and uniformly.'" *Id*. ¶¶ 3, 129 (quoting *Astra USA, Inc. v. Santa Clara Cnty.*, 563 U.S. 110, 120 (2011)). Once

5

more, these are legal conclusions.  AbbVie does not allege any facts showing a conflict between the two enforcement schemes, it just insists that the "specific provisions of S.B. 751 conflict with Section 340B's . . . enforcement and penalty scheme." *Id.* ¶ 99.  And as with AbbVie's other legal conclusions, that argument was rejected by the Eighth Circuit.  *See McClain*, 95 F.4th at 1144 (holding that state law enforcement is about "distribution" and the federal system handles "different disputes" about "discount pricing").

**5.** The final group of preemption-related allegations are legal conclusions about the purposes of SB 751 and the 340B statute.  *See* Doc. 1, ¶¶ 2, 4, 17, 34, 40, 42, 90, 108.  AbbVie alleges, for example, that SB 751 "conflicts with the objective of the 340B statute" and that the "only valid public purpose" of the 340B program is "helping low-income and uninsured patients obtain access to medications at discounted prices." *Id.* ¶¶ 17, 42.  Those allegations are intended to show that SB 751 is an obstacle to the accomplishment of 340B's purpose, but "[w]hat qualifies as 'a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects,'"—a quintessential legal question. *McClain*, 95 F.4th at 1144 (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000)); *see also id*. at 1145 (holding that Arkansas's equivalent to SB 751 "assists in fulfilling the purpose of 340B").  AbbVie's Complaint is missing facts that show a conflicting purpose, and "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 556 U.S. at 686.

Because all of AbbVie's allegations about preemption are legal conclusions, AbbVie has not properly pleaded preemption as an injury-in-fact that is fairly traceable to SB 751.

### C. AbbVie's legal conclusions about the takings claim do not establish standing.

As with preemption, AbbVie's allegations related to its Takings Clause claim are legal conclusions.  AbbVie alleges that SB 751 "effects an unconstitutional taking," but fails to plead

6

facts to support that legal conclusion. Doc. 1, ¶ 1; *see also id.* ¶¶ 14, 16, 19, 101, 107. Again, AbbVie's legal conclusions about its takings claim fit in several groups: (1) allegations that describe Takings Clause jurisprudence; (2) allegations that SB 751 forces transfer of AbbVie's property to contract pharmacies, (3) argument that SB 751 is a taking because it forces AbbVie to transfer its property to covered entities (this theory is not in the Complaint, but AbbVie raised it in its motion to dismiss briefing), (4) allegations that SB 751 has no valid public purpose, and (5) allegations that SB 751 is a regulatory taking.

**1.** Paragraphs 111-14 and 117 cite the Takings Clause and the Supreme Court's precedent. Those allegations are legal conclusions, not facts.

**2.** AbbVie repeatedly alleges or implies that SB 751 forces AbbVie to transfer its drugs to contract pharmacies. *See* Doc. 1, ¶¶ 7, 12, 14, 16, 64, 93, 100, 101, 104, 107, 109, 115. AbbVie alleges, for example, that SB 751 "compels a private transfer of AbbVie's 340-discounted drugs to private, for-profit commercial pharmacies" and that "[a] taking occurs each and every time a drug manufacturer is required against its own volition to transfer its drugs at the 340B discount price to a commercial pharmacy for the private benefit of that pharmacy." *Id.* ¶ 101, 107. Those are "'naked assertion[s]' devoid of 'further factual enhancement,'" and they do not suffice to show that AbbVie has standing. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

During oral argument, the Court highlighted the importance of 340B-drug ownership to AbbVie's claim. *See, e.g.*, Tr. 38-40, 55-59. AbbVie addresses 340B drug ownership twice in the Complaint. First, it alleges that "*as a result of such replenishment*, contract pharmacies take title to the drugs they purchase from manufacturers, either through covered entities or on their own behalf. At no point in time does a covered entity take title to the drugs *under this model*." Doc. 1, ¶ 64 (emphasis added). That allegation comes in the middle of a description of the

7

replenishment model and expressly ties any title transfer—diversion—to the replenishment model. If diversion occurs, AbbVie alleges that it is because of the replenishment model, not SB 751. Later in the Complaint, AbbVie tries to distinguish *McClain*'s holding on title and agency by alleging, "That is not true in Missouri.  Covered entities do not maintain title to 340B-discounted drugs provided to contract pharmacies." *Id.* ¶ 88.  AbbVie fails to allege any facts to support the conclusory allegation that contract pharmacy arrangements are fundamentally different once you cross the border from Missouri into Arkansas.  AbbVie's allegations about title and agency are legal conclusions, and they are wrong under *McClain*'s holding that "covered entities purchase and maintain title to the 340B-discounted drugs, while contract pharmacies dispense these drugs to covered entities' patients." *McClain*, 95 F.4th at 1144; *see also* Doc. 67 at 17-18.

But even if the Court disagrees that those allegations are legal conclusions, AbbVie still lacks standing because any injury from that diversion is not traceable to SB 751.  As noted above, AbbVie alleges that contract pharmacies take title to 340B drugs because of the *replenishment model*. Doc. 1, ¶ 64.  AbbVie's arguments about discovery confirm that point. *See* Tr. 66-67.  If AbbVie could get discovery showing that covered entities transfer title of 340B drugs to contract pharmacies, it would show only an agreement between third parties that potentially violates the 340B statute, not that SB 751 has done so.  There is no "causal connection" to SB 751, and any injury is "the result of the independent action of some third party not before the court." *See In re SuperValu*, 870 F.3d at 768 (alterations adopted) (quoting *Lujan*, 504 U.S. at 560).  On the contrary, SB 751 does not apply when "receipt is prohibited by the United States Department of Health and Human Services," and the law should not be "construed or applied to be in conflict with" any "[a]pplicable federal law and related regulation."  Mo. Rev. Stat. § 376.414.2, .6(1).

8

**3.** As discussed in the State's reply brief, Doc. 67 at 2-4, and at oral argument, Tr. 37, the Complaint alleges that SB 751 effects a taking because it requires transfer to contract pharmacies. AbbVie has changed its claim and now argues that a taking occurs because AbbVie has to transfer its drugs to covered entities. *Compare* Doc. 1, ¶¶ 16, 107, 115 118, *with* Doc. 65 at 15. Because this is a new argument, there are no facts to support it in the Complaint. And whatever allegation AbbVie might point to fails to create standing. It is the 340B program, not SB 751, that "*requires* drug manufacturers to *sell* prescription drugs to those 340B hospitals at prices below those paid by other hospitals." *Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724, 730 (2022) (emphasis added). To the extent that AbbVie now argues that SB 751 is a taking because it requires AbbVie to sell *more* 340B drugs—a theory missing from the Complaint—AbbVie surrendered that argument by admitting that it will "offer covered entities unlimited 340B-priced drugs at or below the ceiling price." Doc. 65 at 11; *see also* Tr. 46:16-17 ("[AbbVie's policy] doesn't change the number of drugs that are sold at the 340B price to the covered entity."); Tr. 65:6-8 (denying that AbbVie will "cap the number of drugs you're going to sell at the 340B price").

**4.** AbbVie's next group of legal conclusions relate to the purpose of SB 751. AbbVie alleges that SB 751 "unlawfully appropriates private property for the private benefit of commercial pharmacies and does so without serving any valid public purpose." Doc. 1, ¶ 16; *see also id*. ¶¶ 34, 42, 100, 104, 107. These allegations are an improper legal conclusion twice over. First, they assume that SB 751 effects a taking, which (as discussed above) is unsupported by facts alleged in the Complaint. Second, whether something is a "valid" public purpose is a legal conclusion, and AbbVie has not alleged facts showing SB 751's purpose is invalid. Instead, as discussed below, all of the factual allegations are about the replenishment model and the potential for diversion. *Id*. ¶¶ 5, 6, 40, 41, 54-72, 75. But even taken as true, those problems are not fairly traceable to SB

9

751.  There are no factual allegations from which the Court could infer that SB 751 lacks a valid public purpose.  As another district court recently explained when rejecting AbbVie's takings claim, "If condemning Ms. Kelo's home so that a pharmaceutical company could build a facility served the public purpose of economic development, then so would facilitating [Missourians'] access to medications for which manufacturers have already agreed to provide a discount." *AbbVie Inc. v. Fitch*, 2024 WL 3503965, at *20 (S.D. Miss. July 22, 2024).

  **5.** Finally, AbbVie alleges that SB 751 effects a regulatory taking.  Only three paragraphs support this claim, and they are all legal conclusions.  Paragraph 116 alleges only that "Missouri effectuates a partial regulatory taking."  Paragraph 117 lists the *Penn Central* factors.  And paragraph 118 alleges that SB 751 satisfies the *Penn Central* factors.  Nothing in those allegations shows that AbbVie suffered a regulatory-takings injury or that the injury is fairly traceable to SB 751.  Such a "formulaic recitation of the elements of a cause of action" cannot provide standing. *Iqbal*, 556 U.S. at 678.

Because all of AbbVie's allegations about its takings claim are legal conclusions, AbbVie has not properly pleaded preemption as an injury-in-fact that is fairly traceable to SB 751.

**II.** **AbbVie has not alleged facts showing that its injuries are fairly traceable to SB 751.**

When the Complaint does allege facts rather than legal conclusions, those facts still fail to establish standing.  AbbVie's factual allegations relate to either the 340B program in general or the replenishment model.  Several allegations discuss the effects of AbbVie's participation in the 340B program.  For example, AbbVie complains that 340B prices are "significantly lower than the prices at which manufacturers sell their products to other purchasers" and may be "as little as one penny per unit of drug.  *See* Doc. 1, ¶ 37.  That is not an injury fairly traceable to SB 751 because (1) discounts are required by the 340B program and (2) AbbVie voluntarily joined the 340B program.  Similarly, in paragraph 106, AbbVie alleges that the total value of all discounted

10

purchases under the 340B program is evidence of its injury. The value of the 340B program across all states and all drug manufacturers is not fairly traceable to the effects of SB 751.

The vast majority of AbbVie's factual allegations relate to the replenishment model. *See* Doc. 1, ¶¶ 5, 6, 40, 41, 54-72, 75. Any injuries AbbVie suffers from the replenishment model are not fairly traceable to SB 751. The replenishment model is the "result of the independent action of some third party not before the court." *In re SuperValu*, 870 F.3d at 768 (alterations adopted) (quoting *Lujan*, 504 U.S. at 560). Covered entities and contract pharmacies use the replenishment model, and they did so long before SB 751 was enacted. *See* Doc. 1, ¶ 54. Nothing in SB 751 requires use of the replenishment model or enables the diversion AbbVie believes happens as a result. SB 751 does not apply when receipt of a 340B drug by a contract pharmacy would be prohibited, Mo. Rev. Stat. § 376.414.2, and the 340B statute prohibits the "resale of drugs." 42 U.S.C. § 256b(1)(5)(B). If AbbVie wants a remedy for diversion or other abuses of the 340B program, it should use the federal administrative dispute resolution process, not sue Missouri.

## III.     AbbVie's arguments for standing are unavailing.

None of AbbVie's arguments in support of standing satisfy its burden to "'clearly . . . allege facts demonstrating' each element." *Spokeo*, 578 U.S. at 338 (quoting *Warth*, 422 U.S. 490 at 518). AbbVie has already argued in support of standing in its Complaint, response to Defendant's Motion to Dismiss, and at oral argument. All of its arguments fail.

***Start with the Complaint.*** AbbVie discusses standing in paragraphs 100-02. Except for one sentence about AbbVie's Pharmaceutical Pricing Agreement (which does not show an injury), all of the allegations in those paragraphs are legal conclusions. In paragraph 100, AbbVie alleges that it is "injured by S.B. 751 because the law forces AbbVie to provide its private property to another private party in a prohibited A-to-B wealth transfer and for no recognized public use or purpose." Doc. 1, ¶ 100. That is a legal conclusion not a well-pleaded fact. And the following

11

allegation that "[o]nce taken, AbbVie's property is not recoverable," assumes that property was "taken" and that such taking was effected by SB 751. *Id*. Whether SB 751 "subjects AbbVie to potential enforcement" is also a legal conclusion about the effect of the law. *Id*. And "potential enforcement" does not provide standing if, as here, the only factual allegations show that the injury was caused by a third party.

AbbVie next alleges that its "injuries are fairly traceable to SB 751" for several reasons, all of them pure legal conclusions. *Id*. ¶ 101. AbbVie concludes that SB 751 "compels a private transfer of AbbVie's 340-discounted drugs to private, for-profit commercial pharmacies" with "no recognized public use or purpose" and that the "transfer would not occur but-for" SB 751. *Id*. That is just a recitation of the elements of a takings claim. The next sentence is a similar conclusion, but for the preemption claim. Neither assertion supports standing.

Paragraph 102 discusses redressability. AbbVie calls SB 751 "unconstitutional" three times in one sentence, but provides no facts to support the legal conclusion. In sum, AbbVie's Complaint identifies the elements of standing, but does not "allege sufficient factual content" to establish standing. *Hawse*, 7 F.4th at 691.

***Next, consider AbbVie's response brief***. The brief does not directly address standing, but AbbVie's citations to the Complaint help explain which allegations it thinks show an injury traceable to SB 751. All of the Complaint citations are to legal conclusions or problems with the 340B program. In the "Background" section, AbbVie cites to various paragraphs that describe the history of the 340B program, how it functions, alleged abuses of the 340B program through the replenishment model, and AbbVie's policies. Doc. 65 at 7-12 (citing ¶¶ 37, 38, 45, 46, 54, 57, 60-69, 73-76, 85-88). When discussing SB 751, AbbVie cites paragraphs 91 and 92 to support the claim that "S.B. 751's object is to change the terms of the federal 340B Program." *Id*. at 12. Those

12

paragraphs only recount Gov. Parson's opinions about the law.  They are legal conclusions, and filtering them through Gov. Parson does not turn them into facts.

Other citations in the brief are all either legal conclusions or problems with the 340B program.  *See id.* at 12-14 (citing ¶¶ 36, 94-96, which describe the 340B statute and SB 751); 17 (citing ¶¶ 12, 17, which are legal conclusions); 18, 26, 33 (citing ¶¶ 61, 62, 64, 67, which describe potential 340B abuses from the replenishment model); 23 (citing ¶ 106, which alleges the overall value of discounted purchases under 340B); 26, 28 (citing ¶¶ 127, 131, which are legal conclusions about preemption); 33 (citing ¶ 88, which is a legal conclusion about *McClain* and ownership of 340B drugs).  AbbVie's response brief does not show that it has standing.

***Finish with the oral argument.***  While AbbVie had a chance to show how it pleaded standing at the April 14th hearing, it failed to do so.  Early in the argument, AbbVie admitted that its injury is "caused by the replenishment model," but argued that it was not "exclusively tied or traceable" to the 340B program.  Tr. 19:18-22.  But when AbbVie was pressed by the Court to explain how its injury "is something other than an economic harm that flows from the replenishment model," its arguments came up short.  Tr. 54:19-21.

The first harm AbbVie identified was that SB 751 "forces [AbbVie] to engage in or assist in diversion in violation of federal law." Tr. 56:9-14.  That argument fails for two reasons.  First, it is absent from AbbVie's Complaint.  AbbVie never alleged that SB 751 forces it to violate federal law.  Second, it is a legal conclusion, and there are no factual allegations to support it.  Nothing in SB 751 forces AbbVie to engage in or assist in diversion.  On the contrary, SB 751 does not apply if "receipt is prohibited by the United States Department of Health and Human Services."  Mo. Rev. Stat. § 376.414.2.  AbbVie's real problem is that HHS allows the replenishment model, and AbbVie cannot refuse to sell to covered entities on the suspicion that

13

they are engaging in diversion without going through the mandatory administrative dispute resolution process. *See* 42 U.S.C. § 256b(d)(3). Even if AbbVie asserted "ongoing diversion" as a defense in future SB 751 prosecution proceedings, Tr. 59:35, the harm would still be from the diversion, not anything about SB 751. The 340B statute prohibits diversion, and nothing in SB 751 changes that. As discussed above, if covered entities and contract pharmacies are diverting 340B drugs, that harm is not fairly traceable to SB 751. Missouri can and should legislate based on the assumption that covered entities will act in good faith and follow federal law.

The second injury AbbVie identified is that SB 751 "forces" AbbVie "to make a sale at a confiscatory price under conditions that" AbbVie "will not agree to." Tr. 56. Once again, that is a legal conclusion. SB 751 does not "compel" the sale; the 340B program does. Nor has AbbVie alleged facts showing that it is injured by having to ship drugs to a pharmacy rather than the covered entity that the 340B program requires it to sell to. That is likely because—absent possible diversion that AbbVie believes is caused by the replenishment model—there is no harm. AbbVie admitted that it cannot "cap the number of drugs [it is] going to sell at the 340B price," Tr. 65:6-9, and that its policy "doesn't change the number of drugs that are sold at the 340B price to the covered entity." Tr. 46:16-17; *see also* Doc. 65 at 11. No better is the argument that SB 751 compels AbbVie to sell its drugs "at a confiscatory price." Tr. 56:20. The 340B program, not SB 751, forces AbbVie to sell drugs at a discounted price. SB 751 just regulates shipping.

In another attempt to avoid *McClain*'s holding on title of 340B drugs, AbbVie argued that even shipping 340B drugs to a contract pharmacy violates 340B's diversion prohibition. AbbVie argued that one could transfer something "in a way in which you haven't necessarily passed title" and "you could still violate the diversion statute that way." Tr. 54-55. That argument is still foreclosed by *McClain*, which found no problem with Arkansas's functionally identical law.

14

*McClain*, 95 F.4th at 1144.  And it is also undermined by AbbVie's own policy, which allows the use of contract pharmacies in some cases.  *See* Doc. 1, ¶ 75.  If shipping a 340B drug to a contract pharmacy so that it has "control" or "authority to dispense" is a per se violation of the anti-diversion provision, Tr. 55:15-16, then even AbbVie's policy violates 340B.  This highlights that the only injury AbbVie has alleged is from the replenishment model, not SB 751.

Also telling was AbbVie's discussion of the discovery it would need to prove its claims.  First, AbbVie explained that it would need discovery into "the way the contract pharmacy and covered entity relationship really works in practice."  Tr. 66:25-67:1.  But what would that show?  Only whether covered entities and contract pharmacies are committing diversion.  If they were, SB 751 would not apply.  *See* Mo. Rev. Stat. § 376.414.2.  Diversion causes the injury, not SB 751.  Second, AbbVie argued that it needs discovery about "public use" and "the way the funds are used."  Tr. 68:10-20.  On this point, AbbVie's problem is with the 340B program, not SB 751.  AbbVie even admits that there is "no requirement . . . under the 340B statute about the way the money has to be used."  Tr. 68:21-23.  AbbVie may not like the fact that the 340B program gives covered entities discretion on how to use the proceeds from 340B-discounted sales.  But that stems from 340B, not SB 751.  Nor does AbbVie have standing to challenge how covered entities spend their money.  The 340B program forces AbbVie to make the discounted sale.  After that point, AbbVie is not injured just because it does not like what the covered entities end up doing with 340B savings.

## CONCLUSION

AbbVie's Complaint does not include well-pleaded facts showing that AbbVie has standing to challenge SB 751.  And because AbbVie's claims also fail as a matter of law for the reasons set forth in the State's motion to dismiss, Docs. 33, 67, any amendment would be futile.  If AbbVie requests leave to amend, it should be denied.

Respectfully submitted,

**ANDREW BAILEY**
Missouri Attorney General

 */s/ Dominic X. Barceleau*
Maria A. Lanahan #65956MO
  *Deputy Solicitor General*
Dominic X. Barceleau #703198MA
  *Assistant Attorney General*
815 Olive St, Suite 200
St. Louis, MO 63101
(314) 340-7366
(573) 751-0774 (fax)
Dominic.Barceleau@ago.mo.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

  I hereby certify that on May 5, 2025, the foregoing was filed electronically through the Court's electronic filing system to be served electronically on counsel for all parties.

                */s/ Dominic X. Barceleau*