IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ABBVIE, INC., *et al.*,

    Plaintiffs,

v.

ANDREW BAILEY, *et al.*,

    Defendants.

No. 4:24-cv-00996-SRC

**PLAINTIFFS' SUPPLEMENTAL BRIEF**

**INTRODUCTION**

Following the hearing on the motion to dismiss AbbVie's complaint, the Court ordered the parties to submit supplemental briefing on the issue of injury in fact and whether AbbVie's alleged injuries stem from Missouri's S.B 751 rather than from the federal 340B Program, the so-called "replenishment model," or associated algorithms. Hr'g Tr. 78:17–80:16, Apr. 14, 2025, ECF No. 88; ECF. No. 84. AbbVie respectfully submits that its alleged injuries are fairly traceable to S.B. 751, and its current pleadings are sufficient to establish that at this stage.

***First***, AbbVie has adequately pleaded it suffered an injury in fact. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) ("[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'"). AbbVie pleaded throughout its complaint that S.B. 751 compels the transfer of its private property for private use and imposes substantive obligations on manufacturers beyond what federal law requires. *See, e.g.*, Compl. ¶¶ 100–107, 115. A constitutional injury satisfies the pleading requirements of an injury-in-fact.

***Second***, AbbVie's alleged injury flows from S.B. 751, not the federal 340B Program. *See, e.g.*, Compl. ¶ 107 (alleging injury related to the "ongoing nature of the infringement of constitutional rights ***resulting from S.B. 751***." (emphasis added)). Here, AbbVie adequately pleaded that while the federal 340B Program permits AbbVie to reasonably restrict contract pharmacy participation, *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 460 (D.C. Cir. 2024), S.B. 751 prohibits AbbVie from enforcing those otherwise lawful restrictions and compels AbbVie to complete discounted sales it would not otherwise make, *id.* at 463–64; Compl. ¶¶ 4, 10, 75. Without S.B. 751, AbbVie would transfer its drugs at the discounted 340B-price to a covered entity's in-house pharmacy or one designated pharmacy, and at ***full*** price to any other commercial

pharmacies rather than at the 340B-*discounted* price.  It is undisputed that when manufacturers restrict 340B sales bound for contract pharmacies, those pharmacies (or their covered entities, depending on who places the order) necessarily order less of the manufacturers' drugs **at the 340B price**, because there are fewer "eligible" pharmacy "dispensing events" to be replenished.

No doubt the replenishment model—a financial boon for retail pharmacies, hospital systems, and their powerful industry associations—leads to significant violations of the 340B statute, but it is not the legal source of AbbVie's injury here.  AbbVie's injury comes from S.B. 751's requirement that AbbVie sell *extra* drugs at the discounted 340B price, under conditions AbbVie would otherwise reject.  That replenishment-model abuses form part of AbbVie's **reasons** for lawfully imposing those conditions in the first place makes no constitutional difference.  Nothing in the text of S.B. 751 turns on the inventory or accounting system a pharmacy uses—it compels AbbVie to complete any transfer the pharmacy demands, regardless of inventory management methods.  Under S.B. 751, AbbVie will suffer harm no matter what inventory or accounting system the receiving pharmacies deploy, because S.B. 751 compels unwanted private sales of 340B-priced drugs.

*Finally*, the remaining Article III standing requirements are satisfied.  AbbVie's injuries are concrete and particularized because, as Defendants agree, the Missouri law directly prevents AbbVie from enforcing its policy.  And an order from this Court enjoining S.B. 751 would redress AbbVie's injuries because it would permit AbbVie to enforce its contract pharmacy policy. .Because AbbVie's complaint establishes Article III standing, the government's motion to dismiss should be denied.

In the event this Court disagrees that AbbVie's complaint adequately establishes standing, AbbVie respectfully requests leave to amend.  Among other things, AbbVie would add allegations

2

that compliance with S.B. 751 has cost an estimated **_$35 million in forced discounts_** over the past year; that its contract pharmacy policy is a material condition of its offer for sale; and that shipping and delivery are identical whether a drug has been discounted under 340B or sold at the commercial price.

## LEGAL STANDARD

Article III standing is a threshold issue that limits the jurisdiction of federal courts to actual "cases" or "controversies." U.S. Const. art. 3, § 2, cl. 1. To establish standing, a plaintiff must demonstrate three elements: (1) a concrete, particularized and actual or imminent, injury in fact; (2) that "the injury [is] 'fairly . . . trace[able] to" the defendant's challenged conduct; and (3) that the injury is redressable by a favorable decision. *Lujan*, 504 U.S. at 560–61. An injury is concrete if it is "real, and not abstract," and particularized if it affects the plaintiff "in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–40 (2016), *as revised* (May 24, 2016) (internal quotations omitted). "An allegation of future injury may suffice if the threatened injury is 'certainly impending' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation omitted). The injury must also be fairly traceable to the challenged conduct and "likely" to be redressed by judicial relief. *Lujan*, 504 U.S. at 561. Finally, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (citation omitted).

Further, "[u]nless there is a good reason for denial, 'such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment, leave to amend should be granted.'" *Bohanna v. Hartford Life & Acc. Ins. Co.*, 848 F. Supp. 2d 1009, 1015 (W.D. Mo. 2012) (citation omitted).

# ARGUMENT

## I. ABBVIE ADEQUATELY ALLEGES A CONCRETE, PARTICULARIZED AND ACTUAL INJURY THAT IS FAIRLY TRACEABLE TO S.B. 751.

AbbVie satisfies the injury-in-fact requirement because—independent of any background features of the 340B Program—S.B. 751 overrides AbbVie's lawful policy and compels discounted sales that would otherwise not occur but for Missouri's statute.

### A. AbbVie Adequately Alleges It Suffered an Injury in Fact.

AbbVie has adequately alleged its injuries flow from the additional 340B sales that S.B. 751 compels. *Nat'l Parks Conservation Ass'n v. U.S. E.P.A.*, 759 F.3d 969, 975 (8th Cir. 2014). In other words, "there is a 'causal connection' between" the "injury" and the "challenged statute" and, as such, the "fairly traceable" element is satisfied. *Alexis Bailly Vineyard, Inc. v. Harrington*, 931 F.3d 774, 779 (8th Cir. 2019) (quoting *Lujan*, 504 U.S. at 560). This is doubly so because "the named defendants . . . possess the authority to enforce the complained-of provision." *Id.*

AbbVie's injury is concrete and particularized because S.B. 751 bans AbbVie's contract-pharmacy policy and compels it to complete sales it otherwise would not. *Spokeo, Inc.*, 578 U.S. at 339–40. AbbVie, through terms it lawfully includes in its 340B transactions, reasonably limits covered entities to in-house pharmacies or one designated contract pharmacy for purposes of accessing the 340B price. *See* Compl. ¶ 75. And to be clear, AbbVie's policy does not limit the number of discounted units available for sale. Covered entities can still obtain as many 340B-priced drugs as they need. However, S.B. 751 leads to a higher number of discounted transactions not because AbbVie imposes any cap, but because the statute expands the number of contract pharmacies that can receive 340B-priced drugs. With more pharmacies comes more orders and more compelled discounted sales—transactions that would not have occurred but for the Missouri

4

law.  S.B. 751 expressly protects the expansion of the pool.  And, without S.B. 751, AbbVie's policy would have remained in effect—those discounted transactions would not have occurred.  Compl. ¶ 101.

A plaintiff adequately pleads injury-in-fact by alleging that a challenged state law will effect an unconstitutional taking of its property or force compliance with state regulations that are preempted by federal law.  *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1012 n.3 (1992) ("asking damages for the temporary taking of [plaintiff's] property" was sufficient to establish injury in fact (internal quotations omitted) (Scalia, J.)); *Teva Pharm., USA Inc. v. Weiser*, 709 F. Supp. 3d 1366, 1374–75 (D. Colo. 2023) (finding injury where state law would compel manufacturer to transfer autoinjectors for free or reimburse pharmacies, under threat of penalties if it failed to comply), *appeal filed* No. 24-1035; *United States v. Missouri*, 114 F.4th 980, 984 (8th Cir. 2024), *petition for cert. docketed* (U.S. Jan. 27, 2025) (holding allegation that a Missouri statute "impaired" the United States' "legally protected interest in enforcing federal law" sufficient injury in fact).

AbbVie pleaded throughout its complaint that S.B. 751 compels the transfer of its private property for private use and imposes substantive obligations on manufacturers beyond what federal law requires.  *See* Compl. ¶¶ 4, 8, 10, 16–17, 73–75, 78, 93, 100–107, 115, 118, 131.  For example, AbbVie alleged that "[e]ffecting an unconstitutional taking of AbbVie's private property in a forced transfer to another private party for no recognized public use or purpose constitutes an irreparable injury," *id*. ¶ 104, and that "[b]y seeking to change the requirements of when and to which entities manufacturers must offer drugs at a discounted price as a condition of participating in the federal Medicaid program, S.B. 751 unlawfully modifies the requirements of the federal 340B program." *Id.* at ¶ 17.  Further, AbbVie alleged "[p]rospective injunctive relief is appropriate

5

because of the ***ongoing nature of the infringement of constitutional rights resulting from S.B. 751***. The law effects a repeated and ongoing mandatory private wealth transfer of AbbVie's 340B-discounted drugs to private, for-profit commercial pharmacies for the private benefit of that pharmacy and for no recognized public use, in violation of the United States' Constitution." *Id.* at ¶ 107 (emphasis added).

These allegations adequately plead an injury in fact fairly traceable to S.B. 751 and satisfy Fed. R. Civ. P. 8(a). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (at the pleading stage, Rule 8(a) "simply calls for enough fact to raise a reasonable expectation that discovery will reveal" support for the claims); *Reed v. Bd. of Ed. of Parkway Sch. Dist.*, 460 F.2d 824, 826 (8th Cir. 1972) ("The point of principal importance is that lawsuits no longer are to be routinely disposed of solely on the basis of the phraseology a plaintiff selects in framing his complaint."). AbbVie's complaint alleges that a constitutional deprivation flows from the state's law—nothing more is required to satisfy Article III or the Federal Rules. *Lujan*, 504 U.S. at 560–61.

B.  **AbbVie's Injury is Fairly Traceable to S.B. 751.**

AbbVie has also adequately alleged its injury in fact is fairly traceable to S.B. 751, not the federal 340B program. By way of legal background, the federal 340B statute requires pharmaceutical manufacturers ***offer*** their drugs at the discounted price to covered entities. 42 U.S.C. § 256b(a)(1). Participation in the 340B Program is ostensibly voluntary and a condition of participation in federal Medicaid and Medicare programs. *See* 42 U.S.C. §§ 256b, 1396r-8(a)(1), (5). But participating manufacturers are not required to make ***unconditional*** offers for sale at the discounted price. Both the D.C. and Third Circuits have recognized that manufacturers may include reasonable non-price terms in their offers of 340B-priced drugs and, accordingly, may decline to sell discounted drugs where covered entities and contract pharmacies refuse to accept those terms. *See Novartis*, 102 F.4th at 460 (explaining that the 340B statute's "silence" about

6

contract pharmacies "*preserves*—rather than abrogates—the ability of sellers to impose at least some delivery conditions" (emphasis added)); *Sanofi Aventis U.S. LLC v. Dep't of Health & Hum. Servs.*, 58 F.4th 696, 703 (3d Cir. 2023) (explaining that manufacturers still satisfy their statutory obligation to offer 340B-priced drugs when the offer includes contract-pharmacy limitations).

Thus, in a world without S.B. 751, manufacturers may include contract pharmacy limitations in their offers of 340B-priced drugs. And this is not theoretical: That is how it works in practice in the numerous states that currently do not have similar state contract pharmacy protections. As a result, in those states, manufacturers will sell fewer drugs at the discounted price. As the complaint explains, under AbbVie's current hospital policy, it will transfer 340B-priced drugs to one designated contract pharmacy per covered entity, if that covered entity does not have an in-house pharmacy. *See* Compl. ¶ 75 (explaining that "AbbVie updated its policy to place *reasonable limits* around provision to contract pharmacies." (emphasis added)); *id.* at ¶ 10 (explaining *Novartis* approved "conditions" "limiting" a manufacturers' offer). AbbVie will not honor any 340B-discounted orders inconsistent with that policy. *See id.* at ¶ 74 ("AbbVie . . . will not indiscriminately accept requests that it transfer 340B discounted drugs to an unlimited number of third-party commercial contract pharmacies[.]"). Yet the drugs may still be obtained at the *commercial* price. *See, e.g.*, *id.* at ¶ 7 (explaining AbbVie's policy "limit[s]" sale of "drugs at the 340B discounted price"). And that restriction upon contract pharmacies is consistent with AbbVie's obligations under the 340B statute. *Id.* at ¶ 78. Although it limits contract pharmacy usage, AbbVie still "offers" the drugs at the requisite price—i.e., "present[s] the drugs for covered entities' acceptance." *Sanofi*, 58 F.4th at 703; Compl. ¶ 75 (AbbVie "will continue to offer 'each covered entity' the ability to 'purchase' its covered outpatient drugs 'at or below the applicable

7

ceiling' price set by statute."). Through its contract pharmacy terms, AbbVie declines to provide 340B-priced drugs to unlimited contract pharmacies.

AbbVie's complaint explains how S.B. 751 forces AbbVie to engage in unwanted 340B sales. *See, e.g.*, Compl. ¶ 107 ("A taking occurs each and every time a drug manufacturer is required ***against its own volition*** to transfer its drugs at the 340B discount price to a commercial pharmacy[.]" (emphasis added)); *id.* at ¶¶ 16, 100, 101, 104, 107, 131. The text of the Missouri law bans AbbVie from including any sort of contract pharmacy limitation on its 340B offers. *See* Mo. Rev. Stat. § 376.414.2. In concrete terms, that means that multiple pharmacies affiliated with covered entities will be able to place orders for 340B-priced drugs, and AbbVie will be forced to accept those orders. At bottom, AbbVie will provide significantly more discounted drugs than it otherwise would if it were permitted to insist on its contract pharmacy terms because, as AbbVie alleged, those "transfer[s] would not occur but-for the operation of S.B. 751's prohibition on AbbVie's contract pharmacy policy." Compl. ¶ 101. *See AbbVie et al. v. Fitch*, No. 24-60375 (5th Cir. oral argument Apr. 2, 2025) at 22:55–23:23 ("*Fitch* Oral Argument") (explaining AbbVie agreed to sell its drugs "in the program that they signed up through Congress with," but asking "they didn't ever agree with Mississippi to sell them the product at this rate . . . where did they do that?").[1]

AbbVie's alleged injury does not flow from the 340B statute itself. As Judge Katsas explained in *Novartis*, the federal 340B Program "cannot plausibly [be] interpret[ed] . . . to subject manufacturers to whatever delivery conditions any covered entity might find most convenient." 103 F.4th at 461. But Missouri disagrees. Whether or not this means the 340B statute preempts S.B. 751—and AbbVie submits that it does—it places beyond dispute that the source of AbbVie's

---

[1] https://www.ca5.uscourts.gov/OralArgRecordings/24/24-60375_4-2-2025.mp3.

alleged injury is not the 340B statute.  The *federal* statute permits manufacturers to enforce their contract pharmacy policies, and every Circuit to have ruled on that question is in uniform agreement. *See Novartis Pharms. Corp.*, 102 F.4th at 460; *Sanofi Aventis U.S. LLC*, 58 F.4th at 703.  Thus, is it not the case that AbbVie, by entering the 340B Program, "has already made the decision that it's going to sell [at 340B] prices," ECF. No. 88 at 52:2–7, on the terms that S.B. 751 requires or any covered entity may demand.  Rather, the extent to which AbbVie will recognize a contract pharmacy's access to the 340B price on behalf of a covered entity is a decision the federal statute left with AbbVie; S.B. 751 is the law the seeks to take that decision out of AbbVie's hands.

Nothing about S.B. 751's text hinges on use of any particular inventory or accounting model.  S.B. 751 will compel AbbVie to make additional discounted sales, irrespective of the inventory or accounting methods that contract pharmacies utilize. *See* Compl. ¶¶ 58–62.  Although these distinct inventory and accounting methods may influence ordering practices—and in some cases, enable higher-volume purchasing—that merely exacerbates AbbVie's injuries, but they are not the sole cause.  The current replenishment model carries significant negative (and illegal) consequences not merely because it enables high-volume purchasing, but because it obfuscates the ultimate destination of 340B-priced drugs and to whom they are "transferred" (patients or not), 42 U.S.C. § 256b(a)(5)(B), allowing contract pharmacies and covered entities to generate spread at the expense of both patients and manufacturers.  Compl. ¶5.  To be sure, where the replenishment model is in use, S.B. 751's forced compliance compels AbbVie to engage in illegal diversion in violation of the federal 340B statute—itself an injury.  But either way, the replenishment model is not *the* source of AbbVie's constitutional and financial injury here. AbbVie's injuries flow from S.B. 751's forcing AbbVie to sell more discounted drugs than it otherwise would under conditions it does not agree with.  Compl. ¶¶ 101, 110, 131; Opp'n to Mot. to Dismiss at 8.

9

Indeed, S.B. 751 highlights the inherent flaw in Defendants' and Proposed Intervenor's position that somehow the state's law prevents patients from having to travel long distances to access their medications.  In reality, whether S.B. 751 is in effect or not, patients are purchasing their prescriptions anywhere they choose and paying full price.  What S.B. 751 protects and expands is the covered entities' ability to categorize ***all*** of the pharmacies where their patients are ***already shopping*** as eligible for 340B utilization to maximize profit.  And pharmacies are eager to participate because doing so lowers their costs and generates profits in the hundreds of millions.  Compl. ¶¶ 55, 63, 65, 66, 71.  S.B. 751 compels AbbVie's participation in their profit-sharing scheme against AbbVie's will, the same as if a state law required Person A to sell his $50,000 car to Person B for $5, so that Persons B and C could re-sell the car and split the profit for their own personal uses, and Person A could be held liable for refusing to play along.

In sum, AbbVie's injury is traceable to S.B. 751 because it is S.B. 751 that compels AbbVie to issue the additional discounts—not the federal program, the replenishment model, or any particular accounting system.  This remains true even if the Court concludes the 340B statute or the replenishment model contribute to the injury S.B. 751 causes.  *See Loescher v. Minnesota Teamsters Pub. & L. Enf't Employees' Union, Loc. No. 320*, 441 F. Supp. 3d 762, 772 (D. Minn. 2020) (finding that "[a] plaintiff is not deprived of standing simply because the alleged facts indicate that the defendant was not the sole cause of the plaintiff's injury." (internal citation and emphasis omitted)); *City of Wyoming v. Procter & Gamble Co.*, 210 F. Supp. 3d 1137, 1151–52 (D. Minn. 2016) ("A plaintiff is not deprived of standing merely because he or she alleges a defendant's actions were a contributing cause instead of the lone cause of the plaintiff's injury."); *id.* at 1152 (noting that the "causation element in standing doctrine" is "less-stringent" than the proximate cause standard in tort law.).  S.B. 751 stands between AbbVie and its rights under the

10

federal program, and interrupts rights AbbVie would otherwise have as a matter of federal law to set the terms of its own offer for sale at the discounted price.

  **C.**  **AbbVie Faces Ongoing, Imminent Injury from Missouri's Enforcement of S.B. 751.**

AbbVie's injury is not speculative or remote; it is immediate and ongoing. AbbVie has adopted a nationwide policy conditioning its 340B offers on reasonable and federally permissible terms. In states without conflicting state statutes like S.B. 751, AbbVie enforces that policy. But in Missouri, and other states with similar laws, AbbVie is forced to suspend its policy and continue transactions on terms it would not otherwise accept. *See* Compl. ¶ 89. Because AbbVie came into compliance with S.B. 751, *id.* ¶ 78, the harm is ***actual*** and neither conjectural nor speculative. AbbVie has been accepting 340B discounts in compliance with S.B. 751 over the past year. *Id. See Cal. Cattlemen's Ass'n v. U.S. Fish & Wildlife Serv.*, 315 F. Supp. 3d 282, 285 (D.D.C. 2018) ( "Even one dollar of '[e]conomic harm to a business clearly constitutes an injury-in-fact.'" (citation omitted); *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019) (traceability satisfied where injury relied on "the predictable effect of Government action on the decisions of third parties."). Although the State criticized AbbVie for its so-called failure to "particularize" its monetary injury to Missouri, ECF No. 88 at 41:21–23, that is no basis for dismissal at this stage. Those facts were not available to AbbVie until it came into compliance, and as outlined above alleging a constitutional injury is enough. But critically, AbbVie seeks prospective injunctive relief and not monetary damages. Compl. ¶¶ 107–09. Even if it did, the State has raised sovereign immunity as a defense. *See* Mot. to Dismiss at 6–7. So, even if AbbVie ***proved*** specific monetary harm, AbbVie's "costs are not recoverable," and in that instance, "irreparable harm generally exists"—a higher standard than even an Article III injury in fact. Compl. ¶ 103 (quoting *Ala. Ass'n. of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021)).

11

In a pre-enforcement suit, "a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Driehaus*, 573 U.S. at 159 (citation omitted). That is precisely the situation here. AbbVie intends to (and would otherwise) attach conditions to its 340B offer by limiting the number of contract pharmacies that may place valid 340B orders. But S.B. 751 prohibits it from doing so, under threat of civil penalties and enforcement by the State.[2] Courts routinely find the injury-in-fact element satisfied where a challenged law regulates present and ongoing conduct, and creates a credible threat of enforcement. *See Driehaus*, 573 U.S. at 158 ( "[A]n actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law."); *see also Steffel v. Thompson,* 415 U.S. 452, 459 (1974) (same); *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 128–29 (2007). AbbVie faces injury every day it refrains from enforcing its policy in Missouri due to the threat of enforcement. *See* Compl. ¶ 107.

S.B. 751 presents a classic pre-enforcement injury Hobson's choice: comply with an unconstitutional mandate or risk enforcement and severe penalties. In *Virginia v. Am. Booksellers*

---

[2] It is clear from their positions to date that the State believes AbbVie's policy violates S.B. 751 and the State would proceed with enforcement, given the opportunity. For that reason, AbbVie has adequately alleged likelihood of enforcement harm. Nevertheless, should the Court conclude that as a textual matter, 340B-discounted drugs only become subject to S.B. 751's enforcement power once "purchased" by a covered entity, then AbbVie's policy would not violate S.B. 751. *See* S.B. 751 § 1(1)(c). AbbVie's contract pharmacy policy exists as part of its offer for sale. "Under Missouri law, a contract 'does not exist without a definite offer and a "mirror-image" acceptance,'" including "new or variant terms from the offer presented amounts to a counter-offer and a rejection of the original offer." S*L EC, LLC v. Ashley Energy, LLC*, 561 F. Supp. 3d 802, 816 (E.D. Mo. 2021) (citation omitted); *See Forbush v. Adams*, 460 S.W.3d 1, 7 (Mo. Ct. App. 2014) ("If a purported acceptance adds or alters the terms of the proposition made, neither party is bound."). Where covered entities counter AbbVie's offer for sale with a new term requiring unlimited contract pharmacy access, that is not a "mirror-image" acceptance of AbbVie's offer, no sale takes place, and no drugs are "purchased". *See* ECF No. 88 at 60:8-62:4. Notably, the drugs have been "subject to an offer for reduced prices by a manufacturer," that offer simply was not accepted. S.B. 751 § 1(1)(b). And accordingly, the drugs are not "purchased by a covered entity." *Id.*

12

*Ass'n, Inc.*, the Supreme Court confirmed that where plaintiffs face credible threat of prosecution and costly compliance, they suffer Article III injury—even before enforcement. 484 U.S. 383, 392–93 (1988). Likewise, in *Holder v. Humanitarian Law Project*, the Court held that plaintiffs need not "await and undergo a criminal prosecution as the sole means of seeking relief" when facing a credible threat under a newly enacted law. 561 U.S. 1, 15 (2010) (citation omitted). This case is no different. S.B. 751 coerces immediate changes in AbbVie's conduct and exposes it to state enforcement for exercising rights Congress preserved. *See* Compl. ¶ 79 ("AbbVie's compelled compliance is directly attributable to Missouri's enactment of [S.B. 751]").

That AbbVie permitted unlimited contract pharmacies for a time does not bind it to do so forever—any more than a retailer who previously fulfilled nationwide orders is required to continue doing so. Businesses remain free to modify their offers in response to operational, legal, and economic realities. AbbVie lawfully sought to condition its 340B offers. It is S.B. 751—not any federal statute or longstanding practice—that forces it to abandon that policy and continue offering 340B-discounted drugs under terms it expressly rejected.

D. **A Ruling Invalidating S.B. 751 Would Fully Redress AbbVie's Injury.**

An order enjoining S.B. 751 as to AbbVie would redress AbbVie's injury because it would restore AbbVie's ability to condition its 340B offers as permitted under federal law. Without Missouri's interference, AbbVie could enforce its contract pharmacy policy without facing conflicting legal duties, regulatory penalties, or enforcement risk in Missouri. Article III requires only that a favorable decision is "likely" to redress the injury, *Uzuegbunam v. Preczewski*, 592 U.S. 279, 285 (2021), and that is certainly the case here. The Court's invalidation of S.B. 751 would immediately eliminate the conflicting state obligations that compel AbbVie to accept sales terms it would otherwise reject. That suffices for redressability. *See* Compl. ¶ 102 ("Enjoining the provisions of S.B. 751 that apply to pharmaceutical manufacturers and unconstitutionally force

13

the taking of their private property for no public use would redress AbbVie's injuries because AbbVie's property would not be unconstitutionally taken, nor would it be forced to comply (or continue complying) with a preempted and unconstitutional law.").

Moreover, courts have consistently found redressability where a favorable ruling would relieve a plaintiff of compliance with an allegedly unlawful state law. *See Am. Booksellers Ass'n, Inc.*, 484 U.S. at 392 (relief was redressable where Plaintiffs "will have to take significant and costly compliance measures or risk criminal prosecution" if their "interpretation of the statute is correct"); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 303 (1979) (redressability satisfied where statute placed plaintiffs in an untenable compliance position). Eliminating S.B. 751's restrictions would free AbbVie to exercise the rights preserved under the federal 340B framework without threat of state enforcement or civil liability.

## II.   IN THE ALTERNATIVE, ABBVIE SHOULD BE GIVEN LEAVE TO AMEND.

Even if the Court were to conclude that AbbVie has not sufficiently alleged Article III standing, AbbVie respectfully submits that any such deficiency can be cured through amendment and would request leave to do so. AbbVie has not previously amended its complaint or sought leave to do so, no scheduling order has issued, and this request comes promptly after the Court's indication that injury in fact is at issue. There is no undue delay, no prejudice to Defendants, and AbbVie is not merely expressing willingness to amend—it is showing exactly how it would do so. *See Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 409 (8th Cir. 1999); *see also Sarasota Wine Mkt., LLC v. Parson*, 2018 WL 3122580, at *3 (E.D. Mo. June 26, 2018) (granting leave to amend complaint when "Plaintiffs have failed to plead any injuries-in-fact, and therefore lack Article III standing.").

As alleged in the complaint, AbbVie has come into compliance with S.B. 751, Compl. ¶¶ 78–79, and has not enforced its contract pharmacy policy in Missouri over the past year.

14

AbbVie now estimates that the cost of compliance in Missouri totaled around ***$35 million in forced discounts*** last year . *See* Ex. 1, Scheidler Decl. ¶ 23.  And, AbbVie's cost of complying with a similar law in Mississippi cost around $33.1 million.  *Id.*  As more states like Missouri adopt similar laws, AbbVie's injury grows into the hundreds of millions.  *Id.*  Those facts were not available to AbbVie at the time it filed its initial complaint, but if granted leave to amend, AbbVie would allege them now.

Further, in amending, AbbVie would plead additional facts related to: the terms and conditions of its 340B offer, including that its contract pharmacy policy is a material condition of that offer, *see* Ex. 1, Scheidler Decl., Ex. D at 1–2; AbbVie's identical shipping and delivery procedures for 340B-discounted and commercially priced drugs, Ex. 1, Scheidler Decl. ¶¶ 15e, f; that AbbVie cannot simply "opt out" of Medicare and Medicaid in Missouri to avoid S.B. 751, but would have to do so nationally and over a period of time; and additional facts showing that covered entities and their contract pharmacies reap substantial profits for private gain (a private taking for private use) amounting to hundreds of millions of dollars annually, Ex. 2, Cassidy Report at App. 106.

## CONCLUSION

For the foregoing reasons, the AbbVie's injury is not speculative, hypothetical, or rooted in dissatisfaction with a federal program.  It is the direct result of an unconstitutional state law that prohibits conduct federal law permits.  The Court should deny Defendants' Motion to Dismiss.

15

Dated:  May 5, 2025

Ashley C. Parrish (*pro hac vice* forthcoming)
John D. Shakow (*pro hac vice* forthcoming)
KING & SPALDING LLP
1700 Pennsylvania Avenue N.W.
Suite 900
Washington, D.C. 20006
Telephone: (202) 626-2627
Email: aparrish@kslaw.com

Nicole Bronnimann (*pro hac vice* forthcoming)
KING & SPALDING LLP
1100 Louisiana, Suite 4100
Houston, TX 77002
Telephone: (713) 276-7402
Email: nbronnimann@kslaw.com

Respectfully submitted,

*/s/ Matthew S. Owen, P.C.*
Matthew S. Owen, P.C. (*pro hac vice*)
Meredith M. Pohl (*pro hac vice*)
Michael A. Pronin (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Email: matt.owen@kirkland.com
          meredith.pohl@kirkland.com
          michael.pronin@kirkland.com

AND

*/s/ Robert T. Haar*
Robert T. Haar (MO #30044)
Lisa A. Pake (MO #39397)
HAAR & WOODS, LLP
1010 Market St., Suite 1620
St. Louis, MO 63101
Telephone: (314) 241-2224
Email: roberthaar@haar-woods.com
          lpake@haar-woods.com

*Counsel for Plaintiffs.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Plaintiffs' Supplemental Brief Regarding Injury In Fact Under Article III was electronically filed with the Clerk of the Court via the Court's CM/ECF system, which sent notification of such filing to all counsel of record by electronic means.

*/s/ Matthew S. Owen, P.C.*
Matthew S. Owen, P.C.
