# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| ABBVIE INC. (a Delaware corporation); <br> ALLERGAN, INC. (a Delaware corporation); <br> DURATA THERAPEUTICS, INC. <br> (a Delaware corporation); <br> ABBVIE PRODUCTS LLC <br> (a Georgia limited liability company); <br> APTALIS PHARMA US, INC. <br> (a Delaware corporation); <br> PHARMACYCLICS LLC <br> (a Delaware limited liability company); <br> ALLERGAN SALES, LLC <br> (a Delaware limited liability company), <br><br> *Plaintiffs*, <br><br> vs. <br><br> ANDREW BAILEY, in his official capacity as ATTORNEY GENERAL OF THE STATE OF MISSOURI, <br><br> *and* <br><br> JAMES L. GRAY, in his official capacity as PRESIDENT OF THE MISSOURI BOARD OF PHARMACY, CHRISTIAN S. TADRUS, in his official capacity, as VICE PRESIDENT OF THE MISSOURI BOARD OF PHARMACY, and DOUGLAS R. LANG, COLBY GROVE, ANITA K. PARRAN, TAMMY THOMPSON, and DARREN HARRIS, in their official capacities as MEMBERS OF THE MISSOURI BOARD OF PHARMACY, <br><br> *Defendants*. | Civil Action No. 4:24-cv-00996-SRC |

**VERIFIED MOTION TO INTERVENE AND SUGGESTIONS IN SUPPORT OF MISSOURI HOSPITAL ASSOCIATION AND MISSOURI PRIMARY CARE ASSOCIATION**

## INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 24(a)(2) and 24(b)(1)(B), Proposed Intervenors Missouri Hospital Association ("MHA") and Missouri Coalition for Primary Care d/b/a Missouri Primary Care Association ("MPCA") (collectively, "Proposed Intervenors") seek leave to intervene in this action for the purpose of defending the legislation challenged by Plaintiffs, Missouri Senate Bill 751 ("S.B. 751"). Proposed Intervenors' participation in this action is essential to protect patients' access to vital healthcare services and medications ensured by S.B. 751.

S.B. 751 amends chapter 376 of the Revised Statutes of Missouri to protect the acquisition or delivery of 340B drugs on behalf of health care providers that are entitled to discounts under 42 U.S.C. § 256B (known as "covered entities") to pharmacies that are under contract with the covered entity to receive and dispense 340B drugs on behalf of the covered entity, commonly referred to as "contract pharmacies." S.B. 751 protects hospitals and federally qualified health centers ("FQHCs"), as well as their patients, from drug manufacturers' restrictions on the number of contract pharmacies a hospital or FQHC can use. Plaintiffs seek a declaration that S.B. 751 is preempted by federal law, is an unlawful taking under both the federal and Missouri Constitutions, and violates the dormant Commerce Clause.  Plaintiffs seek a declaration that S.B. 751 is unconstitutional and injunctive relief barring the Missouri Attorney General and Missouri Board of Pharmacy from enforcing S.B. 751 against Plaintiffs. (Dkt. No. 101 ¶ 16).

Proposed Intervenors represent the interests of the hospitals and FQHCs because, absent S.B. 751, they will be harmed by Plaintiffs', and other drug makers', restrictions on contract

pharmacies.[1] If the Court were to invalidate S.B. 751, as requested by Plaintiffs, Plaintiffs and all other drug manufacturers would undoubtedly begin to apply their contract pharmacy policy restrictions in Missouri, as they have done in other states. Members of MHA and MPCA participate in the 340B Program and rely on contract pharmacies to meet the needs of their patients and communities. Proposed Intervenors are entitled to intervene as a matter of right because they and their members have been injured by the limitations placed on contract pharmacies by drug manufacturers like Plaintiffs and have a significant interest in the viability of S.B. 751, which could be impaired as a result of this action. The Defendants' general public interest in upholding a properly passed law is separate and distinct from the Proposed Intervenors' more specific interests, including the economic dangers Proposed Intervenors' members may face if S.B. 751 is invalidated and Proposed Intervenors' decreased ability to ensure patients' access to quality and affordable healthcare including medications pursuant to their missions. The Defendants cannot adequately represent those interests. Alternatively, the Court should grant permissive intervention because Proposed Intervenors share common questions of fact and law with the action, and there will be no undue delay or prejudice to the adjudication of the original parties' rights.

In other actions wherein drug manufacturers, like Plaintiffs, challenged state laws that protect the delivery of 340B drugs to contract pharmacies, district courts in Missouri and other states have granted intervention motions filed by parties similar to Proposed Intervenors, including nearly identical actions currently pending in the Western District of Missouri. *See e.g., Pharmaceutical Research and Manufacturers of America v. Bailey et al.*, 2:24-CV-04144-MDH,

---

[1] Although Plaintiffs currently exempt all covered entities in Missouri from their policy due to the passage of S.B. 751 and have not applied their contract pharmacy restrictions to FQHCs in any state, Plaintiffs have changed their contract pharmacy policy in the past and could unilaterally do so again at any time including during the pendency of this lawsuit.

2

Dkt. No. 60, Order Granting Motion to Intervene (Nov. 25, 2024); *AstraZeneca Pharmaceuticals LP v. Bailey et al.*, 2:24-CV-04143-MDH, Dkt. No. 67, Order Granting Motion to Intervene (W.D. Mo. Nov. 15, 2024); *Novartis Pharmaceuticals Corp. v. Bailey et al.*, 2:24-CV-04131-MDH, Dkt. No. 62, Order Granting Motion to Intervene (W.D. Mo. Nov. 14, 2022); *Pharmaceutical Research and Manufacturers of America v. McClain et al.*, 4:21-CV-00864, Dkt. No. 22, Order Granting Motion to Intervene (E.D. Ark. May 3, 2022); *AstraZeneca Pharmaceuticals LP v. McClain*, 4:24-CV-00268, Dkt. No. 50, Order Granting Motion to Intervene (E.D. Ark. Aug. 13, 2024); *Pharmaceutical Research & Manufacturers of America v. Landry*, 6:23-CV-00997, Dkt. No. 26, Order Granting Motion to Intervene (W.D. La. Nov. 8, 2023); *AstraZeneca Pharmaceuticals LP v. Jeff Landry*, 6:23-CV-01042, Dkt. No. 29, Order Granting Motion to Intervene (W.D. La. Nov. 9, 2023); *AbbVie Inc. et al. v. Murrill*, 6:23-CV-01307, Dkt. No. 58, Ruling Granting Motion to Intervene (W.D. La. Mar. 7, 2024). The Court should do the same here.

**BACKGROUND**

I.     **The 340B Program**

Congress established the 340B drug pricing program in 1992 to protect safety-net providers, including hospitals and FQHCs, from escalating drug costs. *See* 42 U.S.C. § 256b(a)(1), 42 U.S.C. § 1396r-8(a)(1) (the "340B Program"). It requires drug manufacturers to offer discounts on covered outpatient drugs to statutorily defined safety-net providers as a condition of the manufacturers' drugs being reimbursed by Medicaid and Medicare Part B. The program was later expanded to allow critical access hospitals to participate. In *Pharm. Rsch. & Manufacturers of Am. v. McClain*, 95 F.4th 1136, 1139 (8th Cir. 2024), the Eighth Circuit described the program in the following manner:

> Section 340B incentivizes pharmaceutical manufacturers to provide qualified health care providers, referred to as 'covered entities,' with pricing discounts on

3

certain drugs prescribed to individuals and families whose incomes fall below the federal poverty level. Since the beginning, covered entities have contracted with outside pharmacies, referred to as "contract pharmacies," for the distribution and dispensation of 340B drugs. This is in large part due to the fact that building or maintaining a pharmacy is cost-prohibitive for many covered entities. Additionally, the outsourcing of pharmacy services has allowed for drug dispensation closer to where low-income patients reside.

According to the Congressional Research Service, "the majority of covered entities contract with retail pharmacies, known as contract pharmacies, who then sell drugs to patients" rather than distribute drugs through in-house pharmacies.[2] "The 340B Program enables covered entities to stretch scarce federal resources as far as possible, reaching more eligible patients and providing more comprehensive services."[3] Because of the 340B Program, covered entities are able to save funds that are then used to provide necessary services to their communities. In 2020, drug manufacturers began to restrict covered entities from using contract pharmacies to dispense 340B drugs. For example, at least as of February 2022, outside of Missouri and a few other states that have passed laws similar to S.B. 751, AbbVie refuses access to 340B priced drugs at contract pharmacies if a hospital covered entity operates its own retail pharmacy and limits access to one contract pharmacy for hospital covered entities that do not operate their own retail pharmacy. Such restrictions "generally aim to limit covered entities to distribution to one contract pharmacy" and have financial consequences for entities who will have less access to 340B drugs and therefore are unable to generate 340B savings from them.[4]

---

[2] Congressional Research Service, *Litigation Continues Over Use of Contract Pharmacies in 3430B Drug Discount Program* (May 23, 2024), https://crsreports.congress.gov/product/pdf/LSB/LSB11163.

[3] Health Resources & Services Administration, *340B Drug Pricing Program*, https://www.hrsa.gov/opa#:~:text=The%20340B%20Program%20enables%20covered,and%20providing%20more%20comprehensive%20services. (last visited Aug. 25, 2025).

[4] Congressional Research Service, *Litigation Continues Over Use of Contract Pharmacies in 3430B Drug Discount Program* (May 23, 2024) https://crsreports.congress.gov/product/pdf/LSB/LSB11163.

4

**II.       Proposed Intervenors**

   **a.       Missouri Hospital Association**

MHA is a private, not-for-profit member organization whose mission is to shape an environment that enables member hospitals and healthcare systems to meet their evolving missions so that they may improve the health of their patients and community. MHA has 139 member hospitals. MHA represents every acute care hospital in the state, as well as most of the federal and state hospitals and specialty hospitals, including rehabilitation and psychiatric facilities. MHA advocates for policies that improve health and health care, provides representation and advocacy on behalf of its members, and seeks to educate its members, the public and the media, and legislative representatives about health care issues.

Approximately half of MHA's members are "covered entities" in the 340B program. The 340B program was intended to provide financial relief to hospitals, clinics and other eligible participating organizations that serve large numbers of uninsured and low-income patients. The savings provided through the 340B program subsidize patient care, including labor and delivery, pharmacy access and community-based services offered by hospitals and other providers. A majority of MHA's covered entity members, such as Mercy Hospital Joplin, rely on multiple contract pharmacies to order, receive, and dispense medications for their patients. *See* Exhibit A, Declaration of Andrew Wheeler ("Wheeler Decl.") Ex. 1, MHA Covered Entities with Contract Pharmacies. MHA estimates that as much as 20% of the 340B benefit may be derived through contract pharmacies.

Reducing access to 340B Program savings means that hospitals are unable to underwrite critical but under-reimbursed services lines. The loss of 340B savings because of contract pharmacy restrictions threatens the financial viability of MHA's members. Even with the benefits

5

of the 340B program, eligible Missouri hospitals realize very thin margins, averaging 0.8% in 2022. Without 340B savings, many small and rural hospitals would either operate at a loss or be forced to reduce or eliminate services. For others, the 340B savings allow the hospital to stay in operation. MHA's covered entity members that use more than one contract pharmacy (*see* Ex. A, Wheeler Decl.) have been or will be damaged by Plaintiffs', and other pharmaceutical manufacturers', limitations on contract pharmacies in Missouri. These same entities now stand to benefit from S.B. 751's protections.

The ultimate issue in this case is whether S.B. 751 will protect covered entities from manufacturers that place restrictions on access to 340B drugs through contract pharmacies. Plaintiffs' policy outside Missouri is that hospitals that do not operate their own retail pharmacies may not access 340B drugs at any contract pharmacy and, if the hospital has a retail pharmacy, it may access 340B drugs at only one contract pharmacy. S.B. 751 requires drug manufacturers to deliver 340B-priced drugs to *any* contract pharmacy with which a covered entity contracts.  This access to 340B drugs is critical for MHA members that are located in rural areas, particularly because they serve patients within as much as a 75-mile radius.  S.B. 751 preserves the right of patients to obtain needed pharmaceuticals near their homes.

      b.      **Missouri Primary Care Association**

MPCA was founded in 1984 and is a private, not-for-profit member organization. Its mission is to be Missouri's leader in shaping policies and programs that improve access to high-quality, community-based, and affordable primary health services. MPCA is the recognized voice of Missouri's community health centers (or CHCs or FQHCs), which are local, non-profit, community-driven health care providers that serve low income and medically under-served communities. MPCA's members provide affordable primary care and preventative services, and

often provide on-site dental, pharmaceutical, mental health, and substance use disorder services. MPCA partners closely with its community health centers; federal, state, and local governments; and private organizations to support resources, programs, and policies that assure access to health care. All of MPCA's members are "covered entities" in the 340B program. A majority of MPCA's members, such as Southeast Missouri Health Network and Compass Health, Inc., rely on more than one contract pharmacy to fill prescriptions for their patients. *See* Exhibit B, Declaration of Joseph Pierle ("Pierle Decl.") Ex. 1, MPCA Covered Entities and Contract Pharmacies.

By law, FQHCs are required to invest every penny of 340B savings into activities that further the purpose of providing primary care without regard to the patient's ability to pay. MPCA's members abide by that promise by using 340B savings to expand non-revenue generating services like community health workers, specialty care services, and extended hours of operation to better meet patient needs. MPCA's members rely on contract pharmacies to expand access for patients. Contract pharmacies dispense 340B drugs on behalf of covered entities to their patients. Some MPCA members lack the financial resources to open an in-house pharmacy and must solely rely on contract pharmacies to order, receive, and dispense 340B medications that their patients need. Without 340B savings and the ability to utilize contract pharmacies, MPCA members' ability to provide critical resources, health care, and discounted prescription drugs is in danger.

Although Plaintiffs do not currently prohibit FQHCs, and thus MPHCA's members, from using more than one contract pharmacy, Plaintiffs have unilaterally changed their contract pharmacy restriction in the past and could change the policy at any time to apply it to FQHCs. And if this Court invalidates S.B. 751, as Plaintiffs request, other drug companies will be able to restrict or eliminate shipments of 340B drugs to pharmacies under contract with FQHCs. Accordingly, MPCA and its members need the protections of S.B. 751 and will be harmed if the

7

Plaintiffs proceed in this lawsuit by striking down S.B. 751. MPCA's members that use more than one contract pharmacy (*see* Ex. B, Pierle Decl. Ex. 1 MPCA Covered Entities and Contract Pharmacies) have already been or will be damaged by drug manufacturers', such as Plaintiffs', limitations on contract pharmacies, and stand to benefit from S.B. 751's protections.

### III.      Procedural History

On July 22, 2024, Plaintiffs filed the Complaint against Defendants Andrew Bailey, James L. Gray, Christian S. Tadrus, Douglas R. Lang, Anita K. Parran, Colby Grove, Tammy Thompson, and Darren Harris (the "Defendants")—all in their official capacities. (Dkt. No. 1). In the Complaint, Plaintiffs allege that S.B. 751 is unconstitutional because (1) it is a violation of the Takings Clause of the Fifth Amendment of the United States Constitution and the Art. I, § 28 of the Missouri Constitution; (2) it is preempted by federal law governing the 340B program under the Supremacy Clause of the United States Constitution; and (3) it is a violation of the dormant Commerce Clause. *See generally* Dkt. No. 1.

Plaintiffs claim that, absent judicial intervention to enjoin enforcement of S.B. 781, they will suffer irreparable harm. Plaintiffs did not file any motion seeking preliminary injunctive relief. On September 4, 2024, the Defendants filed a Motion for Leave to File an Overlength Brief to Dismiss and Memorandum in Support of that Motion. (Dkt. Nos. 28, 29). Defendants' Motion to Dismiss and Memorandum in Support was then filed on September 12, 2024. (Dkt. No. 33). A hearing was held on April 14, 2025, regarding the Motion to Dismiss and Motion to Intervene. During the hearing, the Court requested supplemental briefing on the Motion to Dismiss. (Tr. 79:17-80:16, Dkt. No. 84). After additional briefing, the Court granted the Defendants' Motion to Dismiss without prejudice and denied Proposed Intervenors' Motion to Intervene as moot. (Dkt. No. 91.) Plaintiffs filed a Motion for Leave to File Amended Complaint (Dkt. No. 95), which was

granted by the Court on August 20, 2025. (Dkt. No. 100.) On August 20, 2025, Plaintiffs filed their First Amended Complaint. (Dkt. No. 101.)

## ARGUMENT

**I.      Proposed Intervenors Should be Permitted to Intervene as a Matter of Right.**

Rule 24(a)(2) allows a party to intervene as a matter of right if: (1) the motion is timely; (2) the intervenor "claims an interest relating to the property or transaction that is the subject of the action"; (3) disposition of the action "may as a practical matter impair or impede the movant's ability to protect its interest"; and (4) the existing parties do not "adequately represent" their interests. Fed. R. Civ. P. 24(a)(2).

### a.      Proposed Intervenors' Motion to Intervene is timely.

"In determining timeliness, factors that bear particular consideration are the reason for the proposed intervenor's delay in seeking intervention, how far the litigation has progressed before the motion to intervene is filed, and how much prejudice the delay in seeking intervention may cause to other parties if intervention is allowed." *Mille Lacs Band of Chippewa Indians v. State of Minn.*, 989 F.2d 994, 998 (8th Cir. 1993). Proposed Intervenors timely sought intervention in September 2024 shortly after this action had commenced (Dkt. No. 46) and are now seeking intervention on the heels of Plaintiffs filing the Amended Complaint on August 20, 2025. (Dkt. No. 101.) Proposed Intervenors have not delayed seeking intervention in this action, and no prejudice will occur to Plaintiffs regarding the Court's consideration or granting of this motion.

### b.      Proposed Intervenors have a legitimate interest in the lawsuit.

The applicant for intervention must have a "cognizable interest in the subject matter of the litigation." *Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC*, 485 F.3d 1006, 1008 (8th Cir. 2007). An interest is cognizable under Rule 24(a)(2) if it is "direct, substantial, and legally protectable." *Id.*

9

(quoting *U.S. v. Union Elec. Co.*, 64 F.3d 1152, 1161 (8th Cir. 1995)).

Proposed Intervenors' members participate in the 340B Program and either do not have in-house pharmacies and must use contract pharmacies or choose to use contract pharmacies to ensure their patients are able to continue receiving discounted medications at or near their homes. The savings that Proposed Intervenors' members realize due to the 340B Program allow them to provide services to their patients and communities they would otherwise not be able to provide. Plaintiffs are challenging S.B. 751, which protects delivery of 340B drugs to members' contract pharmacies and ability to provide critical services to their patients and communities. Proposed Intervenors' interests in this action are substantial and legitimate.

      **c.**    **Proposed Intervenors are so situated that disposing of the lawsuit without Proposed Intervenors would impair or impede its ability to protect its interests.**

S.B. 751 protects the members of Proposed Intervenors' members ability to access 340B drugs at contract pharmacies (*see* Ex. A, Wheeler Decl., Ex. B, Pierle Decl.) and provide affordable medications to their patients, as well as the ability to use the savings from 340B drugs dispensed at contract pharmacies to supplement the care they provide to indigent patients. Plaintiffs are asking this Court to invalidate S.B. 751, which would prevent critical access to affordable medications to the patients of Proposed Intervenors' members and will reduce critical services by reducing savings from 340B drugs that are used to subsidize these services. Rule 24(a)(2) requires only that disposition of the action "may as a practical matter impair or impede the applicant's ability to protect [its] interest." *Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 60 F.3d 1304, 1307 (8th Cir. 1995). Without S.B. 751's protections for the delivery of 340B drugs to contract pharmacies, Proposed Intervenors' members are in danger of not being able to meet the needs of their patients or the communities in which they serve.

10

### d. Proposed Intervenors are not adequately represented by the existing parties.

Finally, Proposed Intervenors' interests are not adequately represented by the existing parties in the lawsuit. "Typically, persons seeking intervention need only carry a 'minimal' burden of showing that their interests are inadequately represented by the existing parties." *Mille Lacs*, 989 F.2d at 999. The presumption that the government will adequately represent the interests of the public does not apply in all cases to which the government is a party, including cases—such as this case—where the proposed intervenors' interests are not a matter of "sovereign interest." *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996).

Defendants have a general interest in protecting the constitutionality of duly enacted state laws, but Proposed Intervenors and their members have a narrower and more specific economic and mission-based interest in the validity and enforcement of S.B. 751. These interests are not subsumed in the general interest Missouri has in the continued constitutionality of its duly-passed legislation. MHA and MPCA's members are the entities that benefit from the 340B Program, are harmed by drug manufacturers' actions to block shipment of 340B medications to their contract pharmacies, are the benefactors of S.B. 751's protections to deliver 340B drugs to contract pharmacies, and they are the entities providing care to low income and medically under-served Missourians. Defendants have also not taken any enforcement action concerning S.B. 751 to date. This point is critical, as Defendants are the parties charged with enforcing S.B. 751. The law does not plainly provide Proposed Intervenors with a private right of action for violations of S.B. 751, so the Defendants cannot adequately represent the Proposed Intervenors' interests. As such, Proposed Intervenors' interests are different than Defendants' and will not be adequately protected

11

by Defendants.[5]

### e. To the extent it is required, Proposed Intervenors have Article III standing.

Though the Eighth Circuit has held that a party must establish Article III standing in order to intervene,[6] the United States Supreme Court appears to take a different approach regarding parties seeking to intervene as *defendants*, as opposed to plaintiffs. *See McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 233 (2003), *overruled on other grounds by Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010); *see also Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 435 (2017) (holding that an intervenor under Rule 24(a)(2) must meet the requirements of Article III if the intervenor wishes to pursue relief not requested by a plaintiff). There, despite the plaintiffs' arguments that intervention of the intervenor-defendants was not appropriate because they lacked Article III standing, the Court expressly declined to address the standing of the intervenor-defendants because the named defendant had standing and the intervenor-defendants took a position identical to the named defendant. *Id.* Here, the Defendants have standing and have taken the position that S.B. 751 is constitutional. Proposed Intervenors take that same position.

To the extent the Court finds that *McConnell* does not exempt Proposed Intervenors from establishing standing, however, Proposed Intervenors can satisfy Article III standing. To have Article III standing, a party must show an injury in fact, causation, and redressability. *See Lujan*

---

[5] Multiple courts have recognized the diverging interests between covered entities and state government representatives in several cases substantially similar to this one. *See* Order, *PhRMA v. McClain*, 4:21-CV-00864 (E.D. Ark. May 3, 2022), Dkt. No. 22; Order *AstraZeneca v. McClain*, 4:24-CV-00268 (E.D. Ark. Aug. 13, 2024), Dkt. No. 50; Order, *PhRMA v. Murrill*, 6:23-CV-00997 (W.D. La. Nov. 8, 2023), Dkt. No. 26; Order, *AstraZeneca v. Murrill*, 6:23-CV-1042 (W.D. La. Nov. 9, 2023), Dkt. No. 29; Order, *AbbVie v. Murrill*, 6:23-CV-01307 (W.D. La. Mar. 7, 2024), Dkt. No. 58.

[6] *Liddell v. Special Admin. Bd. of the Transitional Sch. Dist. of the Dist. of the City of St. Louis*, 894 F.3d 959, 964-65 (8th Cir. 2018).

HB: 4906-3698-5692.1

*v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). A party seeking intervention to *defend* a government action—such as the Proposed Intervenors—can show that they will be injured in fact by the invalidation of the law it seeks to defend, that their injury will have been caused by that invalidation, and their injury would be prevented if the government action is upheld. *See e.g., Am. Horse Prot. Ass'n, Inc. v. Veneman*, 200 F.R.D. 153, 156 (D.D.C. 2001) (discussing standing requirements for a party seeking intervention in order to defend a government action).

Drug manufacturers, such as AbbVie, have impaired Proposed Intervenors' members' use of contract pharmacies and will continue to do so if S.B. 751 is invalidated, thus resulting in two distinct injuries to Proposed Intervenors' members, including: (1) depriving their covered entity members' savings and revenue used to provide critical services to the community, and (2) depriving their patients of access to medications covered under the 340B program. Both injuries also interfere with Proposed Intervenors' ability to carry out their missions. The only reason that Plaintiffs have lifted their restrictions in Missouri is *because* of the passage of S.B. 751. Without access to 340B drugs and the attendant savings—access that S.B. 751 protects—Proposed Intervenors' members' continued ability to provide critical services and medications to their patients is in danger.

Plaintiffs' attack on S.B. 751 threatens the protections for delivery of 340B drugs to contract pharmacies, which are essential to the continued viability of the operations and services provided by Proposed Intervenors' members. Members of Proposed Intervenors have and will experience financial harm due to drug manufacturers' policies regarding contract pharmacies, and will experience additional economic harm if S.B. 751's protections are upended, in addition to the further erosion of their ability to provide quality health care to Missourians. Plaintiffs' and other manufacturers' actions regarding contract pharmacies are "fairly traceable" to the harms Proposed

Intervenors' members have already suffered and will suffer if S.B. 751 is ruled unconstitutional. Finally, the harms imposed by Plaintiffs and drug manufacturers are redressable by this Court because a favorable decision would allow S.B. 751 to stand, which would prohibit Plaintiffs and other manufacturers from restricting distribution of 340B program drugs to contract pharmacies in the state of Missouri.

### II. Alternatively, Proposed Intervenors Should be Permitted to Intervene in the Lawsuit by Permissive Intervention.

While Proposed Intervenors should be permitted to intervene in this matter as of right, in the alternative, Proposed Intervenors should be allowed to intervene pursuant to Federal Rules of Civil Procedure Rule 24(b)(1). Under Rule 24(b) of the Federal Rules of Civil Procedure, upon timely motion, the Court may permit a party to intervene if the party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "The principal consideration in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights." *Nosker v. Gill Bros. Trucking*, 2006 WL 1798089, at *5 (W.D. Mo. June 28, 2006). Here, the motion is timely, and there will be no undue delay or prejudice to any of the parties for the reasons set forth above in Section II(a). Proposed Intervenors will abide by the deadlines set by the Court. Proposed Intervenors also will share common questions of law and fact with Defendants regarding the claims that Plaintiff raises in the First Amended Complaint challenging the constitutionality of S.B. 751.

### III. Positions of the Parties

Counsel for Defendants has stated to undersigned counsel that Defendants take no position regarding this motion. Counsel for Plaintiffs has stated to undersigned counsel that Plaintiffs oppose this motion.

## CONCLUSION

For the reasons set forth herein, Proposed Intervenors Missouri Hospital Association and Missouri Primary Care Association pray that this Court grant them leave to intervene in this action as a matter of right, or, in the alternative, permit them to intervene, file their Motion to Dismiss and Suggestions in Support of the Motion to Dismiss, and grant any further relief the Court deems just and proper.

HB: 4906-3698-5692.1

Dated September 3, 2025.	Respectfully submitted,

        HUSCH BLACKWELL LLP

By: */s/ James F. Monafo*
    James F. Monafo, #38774
    Tanner M. Cook, #71846
    8001 Forsyth Boulevard, Suite 1500
    St. Louis, Missouri 63105
    Phone: (314) 480-1500
    Fax: (314) 480-1551
    Jim.Monafo@huschblackwell.com
    Tanner.Cook@huschblackwell.com

    Alexa B. Barton, #71779
    14606 Branch St., Ste. 200
    Omaha, Nebraska
    Telephone: (402) 964-5000
    Fax: (402) 964-5050
    allee.barton@huschblackwell.com

    ATTORNEYS FOR PROPOSED INTERVENORS
    MISSOURI HOSPITAL ASSOCIATION AND
    MISSOURI PRIMARY CARE ASSOCIATION

POWERS PYLES SUTTER & VERVILLE, PC

By: */s/ Ronald S. Connelly*
    RONALD S. CONNELLY*
    1250 Connecticut Ave., NW
    Eighth Floor
    Washington, DC 20036
    Phone:  202-872-6762
    Fax:     202-466-6550
    Email:  Ron.Connelly@PowersLaw.com

    ATTORNEY FOR PROPOSED INTERVENORS
    MISSOURI HOSPITAL ASSOCIATION AND
    MISSOURI PRIMARY CARE ASSOCIATION
    **Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of September 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send a notice of electronic fling to all persons registered for ECF as of this date.

                                                                               */s/ James F. Monafo*

HB: 4906-3698-5692.1