# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| ABBVIE INC. (a Delaware corporation); ALLERGAN, INC. (a Delaware corporation); DURATA THERAPEUTICS, INC. (a Delaware corporation); ABBVIE PRODUCTS LLC (a Georgia limited liability company); APTALIS PHARMA US, INC. (a Delaware corporation); PHARMACYCLICS LLC (a Delaware limited liability company); ALLERGAN SALES, LLC (a Delaware limited liability company), | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| *Plaintiffs*, | )<br>) |
| vs. | ) Civil Action No. 4:24-cv-00996-SRC |
| ANDREW BAILEY, in his official capacity as ATTORNEY GENERAL OF THE STATE OF MISSOURI, | )<br>)<br>)<br>)<br>) |
| *and* | )<br>) |
| JAMES L. GRAY, in his official capacity as PRESIDENT OF THE MISSOURI BOARD OF PHARMACY, CHRISTIAN S. TADRUS, in his official capacity, as VICE PRESIDENT OF THE MISSOURI BOARD OF PHARMACY, and DOUGLAS R. LANG, COLBY GROVE, ANITA K. PARRAN, TAMMY THOMPSON, and DARREN HARRIS, in their official capacities as MEMBERS OF THE MISSOURI BOARD OF PHARMACY, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| *Defendants*. | ) |

**INTERVENORS MISSOURI HOSPITAL ASSOCIATION AND MISSOURI PRIMARY CARE ASSOCIATION'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

The Court correctly dismissed Plaintiffs' (AbbVie) claims for lack of standing during the first go round. The only way AbbVie can salvage its claims now is by contradicting its prior pleadings (and its counsel's prior statements in open court) and by mischaracterizing its obligations under the federal 340B Program. But however AbbVie slices it, the federal 340B Program *still* requires it to dispense the same number of drugs as before, covered entities can *still* purchase as many drugs as they want, and AbbVie's injury *still* cannot be traced to anything inherent in S.B. 751. AbbVie thus lacks standing to assert the claims in its First Amended Complaint.

Regardless, even if AbbVie had standing to assert its claims, those claims remain deficient as a matter of law. S.B. 751 does not amount to an unconstitutional taking, the federal 340B Program does not preempt S.B. 751, and S.B. 751 does not violate the dormant Commerce Clause.

## I.   BACKGROUND[1]

AbbVie filed this lawsuit on July 22, 2024, challenging the constitutionality of Missouri Senate Bill 751 ("S.B. 751"). *See* ECF 1. After several rounds of briefing and a hearing in April 2025, the Court issued an order dismissing AbbVie's claims without prejudice for want of jurisdiction. ECF 91. In particular, the Court held that AbbVie had not alleged an injury that was traceable to S.B. 751 and therefore lacked standing to assert its claims. AbbVie moved the Court for leave to file an amended complaint (ECF 95), which this Court granted on August 20, 2025 (ECF 100). AbbVie then filed its First Amended Complaint the same day. ECF 101.

As explained in more detail *infra*, AbbVie's amendments do not cure either the jurisdictional issue or the legal deficiencies of its claims. The Court should accordingly dismiss AbbVie's First Amended Complaint, this time with prejudice.

---

[1] The Court is already familiar with AbbVie's allegations and the regulatory framework. ECF 91 at 2-8. Intervenors therefore recount only the facts relevant to this Motion.

## II.  STANDARD OF REVIEW

Under Rule 12(b)(1), a court must dismiss a plaintiff's claims if it determines that the plaintiff lacks standing to assert those claims. Fed. R. Civ. P. 12(b)(1); *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) ("Federal jurisdiction is limited by Article III of the Constitution to cases or controversies; if a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction.") (quoting *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2001)).

The party invoking federal jurisdiction bears the burden of proving such jurisdiction exists. *Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013) (*en banc*). To avoid dismissal under Rule 12(b)(1), "[t]he plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." *Stalley v. Cath. Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–57 (2007)). A key component of federal jurisdiction is the requirement that the plaintiff have an injury in fact that is traceable to the complained of conduct. *In re SuperValu, Inc.*, 870 F.3d 763, 767–68 (8th Cir. 2017).

Yet even where a plaintiff establishes jurisdiction, a court can still dismiss the plaintiff's claims if the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcraft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997)).

When a plaintiff challenges the constitutionality of a state statute, the Court may dismiss the challenge under Rule 12(b)(6) if it rests on questions of law and the allegations, taken as true, fail to state a plausible claim. *See, e.g.*, *Metro. Omaha Prop. Owner Ass'n, Inc. v. City of Omaha*, 991 F.3d 880 (8th Cir. 2021) (affirming Rule 12(b)(6) dismissal of constitutional challenge to city ordinance).

### III.     ARGUMENT

AbbVie's claims fail for purely legal reasons. ***First***, AbbVie lacks standing to assert its claims because its injuries, if any, are not traceable to S.B. 751. ***Second***, S.B. 751 does not effect an unconstitutional taking. ***Third***, AbbVie's preemption claim is contrary to both Eighth Circuit precedent and the basic tenets of federalism. ***And finally***, AbbVie's dormant Commerce Clause claim twists S.B. 751's statutory language to make it say something it plainly does not say— namely, that the statute somehow regulates out-of-state transactions.

### A.     **AbbVie lacks standing to assert its claims.**

The Court previously dismissed AbbVie's claims without prejudice because AbbVie alleged "injuries stemming not from the Missouri law at issue but from violations of federal law. . . ." ECF 91 at 1. In so doing, the Court rejected AbbVie's argument "that S.B. 751 requires it to provide more discounted drugs than AbbVie would be required to provide absent S.B. 751, and thus . . . S.B. 751 causes AbbVie financial loss." *Id.* at 11.

The Court rejected this argument for two reasons. First, the Court held that AbbVie's alleged losses arose from abuses of the federal 340B Program under the "replenishment model," in which S.B. 751 had "no hand." *Id.* at 15. Second, it held that AbbVie was not truly harmed because AbbVie "would sell the same number of drugs to 340B-qualifying patients regardless of S.B. 751[.]" *Id.* at 16.

3

AbbVie now tries to remedy these defects by deleting all references to the "replenishment model" and by changing the verbiage of its alleged injuries. *See generally* ECF 95-2. Whereas, AbbVie previously argued it had standing to sue because S.B. 751 allegedly "forces AbbVie to provide its private property to another private party in a prohibited A-to-B wealth transfer and for no recognized public use or purpose," ECF 1 ¶ 100, AbbVie now contends it has standing to sue because S.B. 751 allegedly "compels AbbVie to provide its drugs at 340B prices to contract pharmacies when AbbVie would otherwise not do so," ECF 101 ¶ 102.

This shift in the language accomplishes nothing. AbbVie does not dispute this Court's prior holding that "S.B. 751 does not *require* AbbVie to sell any *more* drugs than it otherwise would." ECF 91 at 16 (emphasis added). The most AbbVie can say is that, as a result of S.B. 751, "*more* contract pharmacies will be placing *more* orders for 340B-priced drugs." ECF 101 ¶ 104 (emphasis in original). But, as AbbVie's counsel conceded at oral argument, this is merely a difference in the number of *pharmacies* to which AbbVie must sell, not the ultimate number of *drugs* it must sell. ECF 91 at 16 (quoting Doc. 88, Oral Arg. Tr. at 22:16–22:22); *see also id.* at 46:16–46:17 (conceding that S.B. 751 "doesn't change the number of drugs that are sold at the 340B price to the covered entity"). The Court has already considered and rejected AbbVie's theory that it is harmed by being forced to sell to more contract pharmacies than it would prefer. *Id.* at 16-17.[2]

Yet even if AbbVie had standing to assert its claims, those claims fail across the board. Numerous courts—including the Eighth Circuit—have had occasion to address the arguments advanced by AbbVie and its manufacturer confrères, and the overwhelming consensus is that these arguments do not pass muster.

---

[2] The Court has also rejected AbbVie's arguments that it has standing because of the compliance costs associated with S.B. 751 and because of S.B. 751's supposed forced transfer of private property in violation of the Takings Clause. ECF 91 at 11-12, 17-18.

4

### B. S.B. 751 does not violate the Takings Clauses.

AbbVie first alleges that S.B. 751 results in an unconstitutional "taking" in violation of the Fifth Amendment of the United States Constitution. ECF 101 ¶¶ 122-134. The Takings Clause generally prohibits the taking of private property for public use without just compensation. *See* U.S. Const. amend V.[3]

Takings come in two forms: *per se* and regulatory. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147-49 (2021). The former occurs when "the government directly appropriates private property for its own use." *Horne v. Dep't of Agric.*, 576 U.S. 350, 357 (2015) (internal quotation marks and citations omitted). The latter occurs when a regulation "goes too far" in interfering with property rights. *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). To determine whether a particular regulation "goes too far," courts consider the "economic impact of the regulation," "the extent to which the regulation has interfered with distinct investment-backed expectation," and "the character of the governmental action." *Penn. Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978). Either way, the government may take property only for *public* use, meaning for uses that "serve[] a 'public purpose.'" *Kelo v. New London*, 545 U.S. 469, 480 (2005).

AbbVie alleges S.B. 751 works both kinds of takings. First, it alleges that S.B. 751 amounts to a *per se* taking because it requires impermissible "A-to-B transfers of private property for the benefit of private parties." ECF 101 ¶ 125. More specifically, it alleges that S.B. 751 "appropriates AbbVie's property rights in its drugs for the private benefit of commercial third parties." *Id.* ¶ 127. Such a taking is, in AbbVie's view, unconstitutional "with or without just compensation." *Id.* ¶ 126.

Second, AbbVie alleges that, "[i]n the alternative, [S.B. 751] effectuates a partial

---

[3] AbbVie has abandoned its claim that S.B. 751 violates Missouri's Takings Clause.

regulatory taking." *Id.* ¶ 132. Here, reciting by rote the factors from *Penn Central*, AbbVie alleges that S.B. 751 "is constitutionally impermissible because it requires the physical acquisition of AbbVie's drugs by another private party for no public purpose or use; imposes significant financial losses on AbbVie and other manufacturers; interferes with drug manufacturers' reasonable investment backed expectations; and serves no valid government purpose because it deprives manufacturers of the full use and control of their property on a continual basis for the commercial benefit of private parties." *Id.* ¶ 134.

AbbVie's takings claim suffers from a host of deficiencies which AbbVie cannot cure, no matter how artful its pleadings. First and foremost, AbbVie's *per se* taking theory fails because, per this Court's prior order, nothing in the text of S.B. 751 requires covered entities to transfer title of 340B drugs to contract pharmacies. ECF 91 at 14. Title to the drugs remains with the covered entity as a required "essential element" of a contract pharmacy arrangement under HHS's guidelines. 75 Fed. Reg. 10272, 10277.

Another problem with AbbVie's takings claim is that voluntary governmental programs cannot give rise to unconstitutional takings. Indeed, courts have largely "rejected Takings Clause challenges to the 340B Drug Price Program" on exactly this basis. *Boehringer Ingelheim Pharms., Inc. v. U.S. Dep't of Health & Hum. Servs.*, No. 3:23-cv-01103 (MPS), 2024 WL 3292657, at *13 (D. Conn. July 3, 2024). AbbVie tepidly acknowledges this issue in its pleadings. ECF 101 ¶ 12. But, searching for a distinction, it alleges such a defense "is not available to Missouri" because "S.B. 751 offers no voluntary exchange to manufacturers for compliance with Missouri's law . . . ." ECF 1 ¶ 13. AbbVie fails to acknowledge that S.B. 751 only applies to distribution of drugs that have already been priced under the 340B Program.  *See* RSMo. § 376.414(1)–(2) (defining "340B drug" and requiring delivery of 340B drugs to contract pharmacies). S.B. 751 is voluntary because

participation in the 340B Program is voluntary—if AbbVie were to withdraw from the 340B drug pricing program, S.B. 751's drug distribution requirements would not apply to it. *Pharm. Rsch. & Mfrs. of Am. v. Murrill*, NO. 6:23-CV-00997, 2024 WL 4361597, at *15 (W.D. La. Sept. 30, 2024) ("Act 358 does not compel drug manufacturers to transfer Section 340B discounted drugs either to the government or to a private party. The statute only applies to drug manufacturers who voluntarily participate in the Medicaid and Medicare programs. AbbVie is not compelled to participate in these programs.").

At any rate, even if AbbVie were right that S.B. 751 does not qualify as a "voluntary" program, it is wrong that that S.B. 751 "appropriates AbbVie's property rights in its drugs for the private benefit of commercial third parties." ECF 101 ¶ 127. To support its claim that S.B. 751 results in an impermissible "A-to-B transfer," AbbVie says, repeatedly, that S.B. 751 serves "no recognized public use or purpose." *Id.* ¶¶ 114, 121.

This contention is at odds with binding Supreme Court precedent. As AbbVie well knows, "[t]he Supreme Court has defined the concept of a public purpose 'broadly, reflecting [its] longstanding policy of deference to legislative judgments.'" *AbbVie, Inc. v. Fitch*, No. 1:24-cv-184-HSO-BWR, 2024 WL 3503965, at *20 (S.D. Miss. July 22, 2024) (quoting *Kelo*, 545 U.S. at 480). State statutes like S.B. 751, which aim to help poor and rural areas receive better access to affordable drugs, easily fit that bill. *Id.* (rejecting identical challenge to state 340B contract pharmacy statute because "[i]f condemning Ms. Kelo's home so that a pharmaceutical company could build a facility served the public purpose of economic development, then so would facilitating Mississippians' access to medications for which manufacturers have already agreed to provide a discount").

As to the purported regulatory taking, AbbVie flunks each of the *Penn Central* factors. For

7

the first factor—the "economic impact of the regulation"—AbbVie cannot demonstrate an economic impact because 340B prices are set by the 340B statute, not S.B. 751. AbbVie also does not quantify its supposed "financial losses." ECF 101 ¶ 134. The omission is telling. Supreme Court precedent has emphasized the "heavy burden placed upon one alleging a regulatory taking." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 493 (1987). Discharging this burden requires AbbVie to show that, by virtue of the challenged regulation, its activities have become "commercially impracticable." *Id.*

AbbVie does not even try to meet this onerous pleading standard, and for good reason. It knows it cannot truthfully allege S.B. 751 makes its drug manufacturing operations "commercially impracticable." This is because "the economic impact of the 340B Program is not as drastic" as AbbVie claims. *Sanofi Aventis U.S. LLC v. U.S. Dep't of Health & Hum. Servs.*, 570 F. Supp. 3d 129, 208 (D.N.J. 2021), *rev'd on other grounds*, 58 F.4th 696 (3d Cir. 2023). By and large, 340B drug sales represent only a small fraction of the prescription drug market. *Id.*

The second factor—AbbVie's "investment-backed expectations"—is more of the same. AbbVie does not allege what these "expectations" are because they do not exist. HHS authorized contract pharmacy arrangements in 1996, and any investment backed expectations since then have included 340B shipments to contract pharmacies. What's more, investment-backed expectations are generally unreasonable in "an industry that long has been the focus of great public concern and significant government regulation," like the pharmaceutical industry. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1008 (1984). "Likewise, because Section 340B does not preempt state laws requiring delivery of 340B drugs to contract pharmacies, Plaintiffs could have foreseen that states might enact policies favoring dispensation at contract pharmacies as well." *Fitch*, 2024 WL 3503965, at *20 (internal citations omitted); *see also Pace Res., Inc. v. Shrewsbury Twp.*, 808 F.2d

8

1023, 1033 (3d Cir. 1987) ("[I]nvestment-backed expectations are reasonable only if they take into account the power of the state to regulate in the public interest.").

Finally, the third factor—the "character of the governmental action"—rises and falls with AbbVie's general theory that S.B. 751 "serves no valid government purpose because it deprives manufacturers of the full use and control of their property on a continual basis for the commercial benefit of private parties." ECF 101 ¶ 134. As already explained, this theory fails. *See supra*.

### C.   The federal 340B Program does not preempt S.B. 751.

AbbVie next alleges that S.B. 751 is unconstitutional because it is preempted by the federal 340B Program. On this front, AbbVie avers that the federal 340B Program was intended by Congress to be exhaustive, and that any attempt by the States to "modif[y] the requirements of the federal 340B program" or to "impos[e] requirements on drug manufacturers" are preempted. ECF 101 ¶ 14.

Congress may impliedly preempt state law "either through 'field' pre-emption or 'conflict' preemption." *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015). The former occurs where "Congress has forbidden the State to take action in the *field* that the federal statute pre-empts." *Id.* (emphasis in original). "By contrast, conflict pre-emption exists where compliance with both state and federal law is impossible, or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (internal quotation marks and citation omitted). Either way, preemption is not to be lightly inferred. *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992). Relevant here, there is a prevailing "presumption that state or local regulation of matters related to health and safety is not invalidated under the Supremacy Clause." *Hillsborough Cnty., Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 715 (1985).

Against this backdrop, AbbVie nonetheless contends S.B. 751 is preempted under both

9

field preemption *and* conflict preemption. Its field preemption theory is that "[t]he 340B program is a comprehensive federal healthcare program." ECF 101 ¶ 139. In fact, in AbbVie's view, the federal 340B Program is so comprehensive that "[e]very detail of the 340B Program—from eligibility and pricing to compliance and enforcement—is governed by federal law." *Id.* Thus, the statutory scheme "leaves no room for states to interfere with the carefully designed 340B program." *Id.*

The Eighth Circuit has held otherwise. Addressing an identical challenge to another State's 340B contract pharmacy statute, the Court very clearly stated that "the 340B Program is not so pervasive that Congress left no room for the States to supplement it." *Pharm. Rsch. & Mfrs. of Am. v. McClain*, 95 F.4th 1136, 1143 (8th Cir. 2024) (cleaned up); *see also AbbVie, Inc. v. Skrmetti*, ___ F. Supp. 3d ___, No. 3:25-cv-00519, 2025 WL 1805271, at *13 (M.D. Tenn. June 30, 2025) (holding that, in creating the federal 340B Program, "Congress did not intend to preempt the field"); *AstraZeneca Pharma. LP v. Fitch*, 766 F. Supp. 3d 657, 665 (S.D. Miss. 2024) (same); *Murrill*, 2024 WL 4361597, at *8 (same). This is especially so given that "the practice of pharmacy is an area traditionally left to state regulation." *McClain*, 95 F.4th at 1143 (quoting *Pharm. Care Mgmt. Ass'n v. Wehbi*, 18 F.4th 956, 972 (8th Cir. 2021)). "[A]bsent a strong showing that Congress intended preemption, state statutes that impact health and welfare are not preempted." *Id.* at 1144. S.B. 751 is therefore not preempted under field preemption.

AbbVie's one-sentence effort to distinguish *McClain* is insincere. According to AbbVie, the Eighth Circuit found no field preemption in *McClain* "because the Court concluded that '[c]overed entities maintain title to the 340B drugs,' and the 'pharmacy becomes an agent of the covered entity.'" ECF 101 ¶ 85 (quoting *McClain*, 95 F.4th at 1144). AbbVie then says that this "is not true in Missouri," thus rendering *McClain* inapposite. *Id.*

10

There are a few things wrong with this statement. For starters, this Court already held that "S.B. 751 doesn't require AbbVie to transfer title of discounted drugs to contract pharmacies," and that S.B. 751 presupposes an agency relationship between the covered entities and the pharmacies. ECF 91 at 14-15. But even putting that issue aside, AbbVie's field preemption argument does not even make conceptual sense. Field preemption, as its name implies, focuses on whether the "*federal* regulatory scheme occupies the field" and whether "*Congress* intend[ed] to foreclose any state regulation." *McClain*, 95 F.4th at 1143 (cleaned up; emphasis added). It does not depend on the peculiarities of the challenged state law. On the contrary, field preemption operates "irrespective of whether state law is consistent or inconsistent with 'federal standards.'" *Oneok*, 575 U.S. at 377 (quoting *Arizona v. United States*, 567 U.S. 387, 401 (2012)).

In any event, AbbVie takes the *McClain* Court's language out of context. The Court did not hold that the Arkansas statute was constitutional "because" covered entities maintained title to the 340B drugs. It found the Arkansas statute constitutional because Congress's "silence on pharmacies in the context of 340B indicates that Congress did not intend to preempt the field." *McClain*, 95 F.4th at 1144. The language AbbVie quotes was merely the Eighth Circuit's response to a particular argument the manufacturers raised in that case, which the Court criticized as "misconstruing" the effect of the state statute. *Id.* Tellingly, this criticism came only after the Court had already examined the 340B Program and determined that it "is not intended to preempt the field." *Id.* at 1143.

AbbVie's conflict preemption theory fares no better. While the specifics of its theory are fuzzy, AbbVie seemingly believes S.B. 751 conflicts with the 340B program in three ways. First, it "undermine[s] [HHS's] efforts to administer" the 340B Program. ECF 101 ¶ 150. Second, it "attempts to install an alternative compliance regime [which] conflict[s] with the procedures

11

detailed in the 340B statute and the lawfully promulgated federal rules implementing the statute." *Id.* ¶ 151. And third, it imposes a "substantive obligation on manufacturers beyond what federal law requires . . . ." *Id.* ¶ 148.

AbbVie's first argument flies in the face of S.B. 751's history. As AbbVie points out, in 2010, HHS issued guidance that allowed covered entities to enter into contract pharmacy arrangements with an unlimited number of contract pharmacies. *Id.* ¶ 49. The manufacturers then challenged HHS's actions in federal court, arguing that HHS "overstepped the statute's bounds." *Sanofi*, 58 F.4th at 707; *see also Novartis*, 102 F.4th at 463 (criticizing HHS's interpretation of the 340B statue as "atextual and ahistorical"). Such overstepping was impermissible, these courts held, because HHS "lacks rulemaking authority over the section 340B program" and thus is strictly limited in what duties it can create and enforce. *Novartis*, 102 F.4th at 459; *Sanofi*, 58 F.4th at 703.

The Missouri legislature, of course, is not so limited. It has all the police powers ordinarily available to States. *McClain*, 95 F.4th at 1143 ("[W]hen it comes to pharmaceuticals, the federal government has traditionally regarded state law as a complementary form of drug regulation and has long maintained that state law offers an additional, and important, layer of consumer protection that complements federal regulation.") (cleaned up). And the Missouri General Assembly exercised those powers to establish substantive laws regulating the distribution of 340B drugs within the state. S.B. 751 therefore does not "undermine" HHS's regulatory efforts, as AbbVie would have it. Quite the opposite—S.B. 751 "assists in fulfilling the purpose of 340B." *McClain*, 95 F.4th at 1144-45.

As to S.B. 751's supposed "alternative compliance regime," the conflict AbbVie alleges is imagined rather than real. AbbVie believes S.B. 751's penalties conflict with the dispute resolution procedures in 42 U.S.C. § 256b(d). ECF 101 ¶ 151. But S.B. 751's penalties apply only in cases

12

where "manufacturers deny 340B drugs to covered entities' contract pharmacies." *McClain*, 95 F4th at 1144. By contrast, under the federal dispute resolution process, "HHS has jurisdiction over ***different*** disputes: disputes between covered entities and manufacturers regarding pricing, overcharges, refunds, and diversion of 340B drugs to those who do not qualify for discounted drugs." *Id.* (emphasis added). AbbVie improperly "conflates the two statutes" to make them seem in conflict. *Id.* Read correctly, however, there is no conflict between S.B. 751 and the 340B Program's dispute resolution processes (or any other part of the 340B Program, for that matter). *Id.*; *see also Skrmetti*, 2025 WL 1805271, at *19 (finding no conflict between enforcement provisions in state contract pharmacy statute and federal 340B program); *Fitch*, 766 F. Supp. 3d at 664 (same).

AbbVie's final basis for conflict preemption—that S.B. 751 imposes obligations "beyond" what the 340B Program requires—is actually a field preemption theory. *See Arizona v. United States*, 567 U.S. 387, 433 (2012) (explaining that a state statute's interference with a Congress's chosen balance is "a classic description not of *conflict* pre-emption but of *field* pre-emption") (Scalia, J., concurring) (emphasis in original). It thus fails for the reasons explained *supra*. But at a more basic level, AbbVie's theory fails because AbbVie does not identify any conflict between the obligations imposed by the 340B Program and those imposed by S.B. 715. It merely complains of the "difficulty of complying with varying state regulatory frameworks . . . ." ECF 101 ¶ 152. This is a far cry from alleging, as it must, that "compliance with both state and federal law is impossible, or [] the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *McClain*, 95 F.4th at 1140 (internal quotation marks and citations omitted).

13

### D. S.B. 751 does not violate the dormant Commerce Clause.

AbbVie's final claim is that S.B. 751 violates the so-called "dormant Commerce Clause." ECF 101 ¶ 155. Though its contours are ill-defined and frequently debated, the gist of the dormant Commerce Clause is that it effectively "prohibits the enforcement of state laws driven by economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023) (cleaned up).

AbbVie suggests S.B. 751 is such a law because it "extends not just to pharmaceutical manufacturers, covered entities, and contract pharmacies located within Missouri, but to virtually every manufacturer, covered entity, and pharmacy in the country." ECF 101 ¶ 160. Consequently, according to AbbVie, "Missouri's law could govern a transaction between a drug manufacturer located in Illinois, its wholesaler in Kentucky, and a California contract pharmacy that dispenses the drug to a Texas resident." *Id.*

No, it couldn't. AbbVie's parade of horribles rests on S.B. 751's "series of definitions," which AbbVie posits "places no restriction whatsoever" on the statute's territorial reach. *Id.* AbbVie has the extraterritoriality test backwards. S.B. 751 need not "place restrictions" on its territorial reach because Missouri law "applies the longstanding presumption that Missouri statutes, absent express text to the contrary, apply only within the boundaries of this state and have no extraterritorial effect." *Tuttle v. Dobbs Tire & Auto Ctrs., Inc.*, 590 S.W.3d 307, 311 (Mo. banc 2019). Thus, because S.B. 751 "does not exhibit a clear intent to regulate out-of-state conduct," it has no extraterritorial application and does not violate the dormant Commerce Clause. *Pharm. Rsch. & Mfrs. of Am. v. Fitch*, No. 1:24-cv-160-HSO-BWR, 2024 WL 3277365, at *13 (S.D. Miss. July 1, 2024); *see also Skmretti*, 2025 WL 1805271, at *23-25 (applying presumption against

14

extraterritoriality and rejecting AbbVie's dormant Commerce Clause theory).

## IV. CONCLUSION

The Court should dismiss AbbVie's claims with prejudice.

HB: 4935-0122-6083.1

Dated September 3rd, 2025.                    Respectfully submitted,

                                       HUSCH BLACKWELL LLP

                              By:  /s/ *James F. Monafo*
                                       James F. Monafo, #38774
                                       Tanner M. Cook, #71846
                                       8001 Forsyth Boulevard, Suite 1500
                                       St. Louis, Missouri 63105
                                       Phone: (314) 480-1500
                                       Fax: (314) 480-1551
                                       Jim.Monafo@huschblackwell.com
                                       Tanner.Cook@huschblackwell.com

                                       Alexa B. Barton, #71779
                                       14606 Branch St., Ste. 200
                                       Omaha, Nebraska
                                       Telephone: (402) 964-5000
                                       Fax: (402) 964-5050
                                       allee.barton@huschblackwell.com

                                       ATTORNEYS FOR PROPOSED INTERVENORS
                                       MISSOURI HOSPITAL ASSOCIATION AND
                                       MISSOURI PRIMARY CARE ASSOCIATION

                                       POWERS PYLES SUTTER & VERVILLE, PC

                              By:     /s/ *Ronald S. Connelly*
                                       RONALD S. CONNELLY*
                                       1250 Connecticut Ave., NW
                                       Eighth Floor
                                       Washington, DC 20036
                                       Phone:  202-872-6762
                                       Fax:      202-466-6550
                                       Email:  Ron.Connelly@PowersLaw.com

                                       ATTORNEY FOR PROPOSED INTERVENORS
                                       MISSOURI HOSPITAL ASSOCIATION AND
                                       MISSOURI PRIMARY CARE ASSOCIATION
                                       *Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of September 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send a notice of electronic fling to all persons registered for ECF as of this date.

/s/  James F. Monafo

HB: 4935-0122-6083.1