**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ABBVIE INC., et al., | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | No.  4:24-cv-00996-SRC |
| | ) | |
| ANDREW BAILEY,[1] *in his official* | ) | |
| *capacity as Attorney General* | ) | |
| *of the State of Missouri*, et al., | ) | |
| | ) | |
| *Defendants*. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

---

[1]AbbVie's Opposition Memorandum replaces Andrew Bailey in the case caption with Catherine L. Hanaway. Although it is accurate that Catherine L. Hanaway is now Missouri Attorney General and a proper defendant, AbbVie has not filed a motion to amend the case caption, nor would such a motion be appropriate here. *See, e.g., Tari v. Progressive Corp.*, No. cv-24-03021-PHX-DWL, 2024 WL 4825740, at *1 (D. Ariz. Nov. 19, 2024) (case caption is merely for identification; courts normally do not grant motions to amend case captions when defendants change as it would create confusion and administrative difficulties, and caption is not determinative of identity of the parties). Missouri thus continues to use the original case caption.

**Table of Contents**

Table of Contents ................................................................................................................. i

Table of Authorities ............................................................................................................ ii

1. Introduction ..................................................................................................................... 1

2. Argument ......................................................................................................................... 2

    A. AbbVie lacks Article III standing to bring its claims ...................................... 2

    B. This Court should dismiss AbbVie's federal takings claim .......................... 4

    C. AbbVie's preemption claim is foreclosed by *McClain* ................................ 5

    D. AbbVie's dormant Commerce Clause claim fails as a matter of law .......... 6

3. Conclusion ...................................................................................................................... 9

Certificate of Service ......................................................................................................... 10

## Table of Authorities

**Cases**

*Am. Hosp. Ass'n v. Becerra*,
   596 U.S. 724 (2022) ............................................................................................ 4

*Astra USA, Inc. v. Santa Clara Cnty.*,
   563 U.S. 110 (2011) ............................................................................................ 5

*Exxon Corp. v. Governor of Maryland*,
   437 U.S. 117 (1978) ............................................................................................ 8

*Haltiwanger v. Mobley*,
   230 F.3d 1363 (8th Cir. 2000) ........................................................................... 3

*Kiobel v. Royal Dutch Petroleum Co.*,
   569 U.S. 108 (2013) ............................................................................................ 7

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ....................................................................................... 1, 3

*National Pork Producers Council v. Ross*,
   598 U.S. 356 (2023) ............................................................................................ 8

*Novartis Pharm. Corp. v. Bailey*,
   No. 2:24-cv-04131-MDH, 2025 WL 489881 (W.D. Mo. Feb. 13, 2025) .......... 6, 7, 8

*Pharm. Res. & Mfrs. of Am. v. McClain*,
   95 F.4th 1136 (8th Cir. 2024) .................................................................... 2, 4, 5, 6

*Pharm. Res. & Mfrs. of America v. Bailey*,
   No. 2:24-cv-04144-MDH, 2025 WL 644281 (W.D. Mo. Feb. 27, 2025) .............. 6, 7

*Pharm. Res. & Mfrs. of America v. Walsh*,
   538 U.S. 644 (2003) ............................................................................................ 8

*St. Angelo v. Barr*, No. 1:19-cv-2754-JMS-D,
   LP, 2020 WL 881697 (S.D. Ind. Feb. 24, 2020) ................................................ 3

*Tari v. Progressive Corp.*,
   No. cv-24-03021-PHX-DWL, 2024 WL 4825740 (D. Ariz. Nov. 19, 2024) ...... 1

*Tuttle v. Dobbs Tire & Auto Ctrs., Inc.*,
   590 S.W. 3d 307 (Mo. 2019) ............................................................................. 7

*U.S. v. St.*,
   *Louis Met. Sewer Dist.*, 569 F.3d 829 (8th Cir. 2009) ..................................... 3

**Statutes**

42 U.S.C. § 256b ........................................................................................................ 3
42 U.S.C. § 256b(a)(1) ............................................................................................... 4
Mo. Rev. Stat. §§ 208.151 .......................................................................................... 3

## 1. Introduction

Not all injuries confer Article III standing. Standing requires injury to a "legally protected interest[.]"[2] Accordingly, an illegal arms trafficking enterprise cannot bring a Clayton Act tying claim challenging a rival's distribution practices for automatic weapons and IEDs. Though all the elements of the claim may be met, economic harm due to anti-competitive practices in the illegal arms market is not a legally protected interest, and thus federal courts will not hear such suits. Backed into a wall here, AbbVie's Opposition Memorandum flips from its original concession that it would sell the same number of drugs to qualified patients regardless of S.B. 751—and that its injury is caused by diversion due to the replenishment model—to making now the remarkable assertion that S.B. 751 will cause it economic harm because patients of covered entities will fill prescriptions they otherwise would not have filled. In other words, AbbVie asserts that its "one contract pharmacy policy" contemplates low income patients not filling prescriptions their physicians have deemed medically necessary, and that S.B. 751 interferes with that business expectation. While AbbVie's candor is refreshing, no court should recognize such an interest as conferring Article III standing. Business practices intended to deprive low income patients of needed prescription medications violate public policy and should not be sanctioned by any court.

Unsurprisingly, AbbVie's First Amended Complaint does not even allege such a discreditable theory of standing. It instead merely alleges generally that S.B. 751 will lead to AbbVie selling more section 340B drugs, without distinguishing between diversion due to the replenishment model and legally proper sales to qualifying patients. These allegations are similar to those in the original Complaint that this Court deemed insufficient as a matter of law to establish standing.

---

[2] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Furthermore, AbbVie's takings, preemption, and dormant Commerce Clause claims fail to state viable causes of action. As a matter of law, title to section 340B drugs does not transfer from covered entities to contract pharmacies, and both the Supreme Court and the Eighth Circuit have foreclosed AbbVie's hairsplitting distinction between the terms "offer" and "sale." *McClain*,[3] moreover, is on all fours with this case for purposes of preemption. AbbVie's contention that administrative remedies for improper diversion did not become available until after the Eighth Circuit decided *McClain* is false. The administrative process has been in the applicable statute since 2010, and the 2024 rule that AbbVie references merely modified a 2020 rule governing the administrative process. Finally, S.B. 751 does not discriminate between in-state and out-of-state sales or have extraterritorial application, and thus the dormant Commerce Clause is inapplicable. This Court should grant Missouri's Motion to Dismiss Plaintiffs' First Amended Complaint.

## 2. Argument

### A. AbbVie lacks Article III standing to bring its claims.

AbbVie references paragraphs 102-104 of its First Amended Complaint as sufficiently alleging an injury in fact fairly traceable to S.B. 751. *See* Doc. 95-1, First Amended Complaint, pp. 33-34, ¶¶ 102-104. These paragraphs generally allege that S.B. 751 will provide drugs at 340B prices to an unlimited number of contract pharmacies, resulting in an estimated yearly cost of $35 million. *See id.* ¶ 104. AbbVie does not clarify whether these sales are due to diversion of 340B drugs to non-qualifying patients. Previously, in connection with the motion to dismiss its original complaint, AbbVie asserted that S.B. 751 would not require it to sell more 340B drugs to qualifying patients. *See* Doc. 91, Memorandum and Order, p. 16 ("AbbVie conceded at oral argument that it would sell the same number of drugs to 340B-qualifying patients regardless of

---

[3] *Pharm. Res. & Mfrs. of Am. v. McClain*, 95 F.4th 1136 (8th Cir. 2024).

S.B. 751). Its alleged injury was therefore due to improper practices by pharmacies, not S.B. 751, for which AbbVie has administrative remedies.

Recognizing that its earlier arguments foreclose Article III standing, AbbVie now asserts in its Opposition that it will be injured "regardless of whether the 340B priced drugs are dispensed to patients or, as is often the case, non-patients." Doc. 114, Pltffs' Opp. Mem., p. 9. AbbVie also contends that more contract pharmacies mean that more patients of covered entities can be served. *Id.* To the extent AbbVie's beef with S.B. 751 is that more qualifying patients will be able to obtain prescription medications at section 340B prices, its alleged injury is to an interest that is not legally protected and is thus insufficient to create Article III standing. Both the federal government and Missouri have expressed a strong interest in making prescription drugs available to low income patients at discounted prices. *See* 42 U.S.C. § 256b; Mo. Rev. Stat. §§ 208.151; 208.152; 208.780-.798.[4] Although not pleaded in its Amended Complaint, the interest asserted in the Opposition—AbbVie's interest in depriving qualifying patients from purchasing section 340B drugs—violates both federal and Missouri public policy.

The Supreme Court has made clear that only injuries to legally protected interests can create Article III standing.  *See Lujan*, 504 U.S. at 560; *see also U.S. v. St. Louis Met. Sewer Dist.*, 569 F.3d 829, 839-40 (8th Cir. 2009) (economic interests that lack legal protection insufficient to create Article III standing); *St. Angelo v. Barr*, No. 1:19-cv-2754-JMS-DLP, 2020 WL 881697, at *5-*7 (S.D. Ind. Feb. 24, 2020) (finding no Article III standing; interest in using illegal drugs not legally protected). Here, any interest of AbbVie in limiting prescription drug

---

[4] Indeed, even prison inmates have a constitutional right to obtain their prescribed medications. *See Haltiwanger v. Mobley*, 230 F.3d 1363 (8th Cir. 2000) (per curiam).

purchases by qualifying patients is not legally protected, and thus any alleged injury to that interest does not confer Article III standing.

Finally, AbbVie's throwaway legal conclusions in paragraphs 105-106 of the First Amended Complaint (Doc. 95-1, First Amended Complaint, p. 34 ¶¶ 105-06) merely restate its dormant Commerce Clause and takings claims, respectively. Because those claims fail as a matter of law, *see infra*, they do not independently confer Article III standing.

**B.  This Court should dismiss AbbVie's federal takings claim.**

AbbVie concedes that it is not making a regulatory takings claim, and thus Missouri will not address that issue further. And AbbVie can allege whatever it wants about what happens to title when it sells 340B drugs. What matters is what the Eighth Circuit and HHS say, and in *McClain*, the Eighth Circuit squarely held as a matter of law that "[c]overed entities maintain legal title to the 340B drugs." 95 F.4th at 1142. This holding was not based on some nuance of the Arkansas statute at issue; rather, it was based on HHS's clarification that "[t]he contract pharmacy does not purchase the drug. Title to the drugs passes to the covered entity." 61 Fed. Reg. at 43,552.

Though AbbVie tries to salvage its takings claim by distinguishing between "offering" and "selling" 340B drugs, that distinction is a red herring that falls apart upon analysis. The Supreme Court itself has said that the 340B Program "*requires* drug manufacturers to *sell* prescription drugs to those 340B hospitals at prices below those paid by other hospitals." *Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724, 730 (2022) (emphasis added) (citing 42 U.S.C. § 256b(a)(1)). The Eighth Circuit said the same thing in *McClain*: "The Pharmaceutical Pricing Agreement requires manufacturers to sell drugs to covered entities at a discounted 'ceiling price.'" 95 F.4th 1136, 1141 (8th Cir. 2024) (quoting 42 U.S.C. § 256b(a)(1)). Both these opinions are controlling as to the effect of the 340B program. In fact, the very text of S.B. 751 makes quite clear that S.B. 751 does not force any

4

transfer to a covered entity. It only prohibits denial of acquisition or delivery to a contract pharmacy that is authorized by a covered entity.

AbbVie's framing of the 340B Program as merely making an "offer" to the covered entities is flawed for another reason. Although the 340B statute uses the language of "offer," the Supreme Court has made clear that drug manufacturers like AbbVie are not free to contract with covered entities however they see fit. "Drug manufacturers opt into the 340B Program by signing a form Pharmaceutical Pricing Agreement (PPA) used nationwide. PPAs are not transactional, bargained-for contracts. They are uniform agreements that recite the responsibilities § 340B imposes, respectively, on drug manufacturers and the Secretary of HHS." *Astra USA, Inc. v. Santa Clara Cnty.*, 563 U.S. 110, 113 (2011). PPAs are "form agreements, composed by HHS," and they "contain no negotiable terms." *Id*. at 118. Faced with the requirements and language of the 340B program and the PPAs, AbbVie's argument falls apart. AbbVie must sell drugs to covered entities at discounted prices, and the 340B Program and PPAs say nothing about conditions of delivery—the subject matter of S.B. 751.

### C.  AbbVie's preemption claim is foreclosed by *McClain*

The preemption issue has been thoroughly briefed, and Missouri will not rehash what has already been covered. It will, however, address the following misleading argument on page 19 of AbbVie's Opposition:

> And critically, the Executive Branch did not establish the federal ADR forum until ***after the Eighth Circuit's decision in*** **McClain.** *Compare McClain*, 95 F.4[th] at 1138 (decided March 12, 2024), *with* 89 Fed. Reg. 38643 (Apr. 19, 2024). The *McClain* court therefore had no occasion to consider the conflicting enforcement mechanisms.

Doc. 114, Pltffs' Opp. Mem., p. 19 (emphasis in original). In fact, the applicable statute containing the administrative dispute mechanism was passed in 2010, and states that the administrative

process for resolution of claims shall be established "[n]ot later than 180 days after March 23, 2010." This long precedes *McClain*. Further, while it is true that the Rule AbbVie cites at 89 Fed. Reg. 38643 became effective April 19, 2024, that is not when the administrative dispute resolution process was "established." As the HHS commentary to the Rule makes clear, the current Rule simply modifies a prior Rule that became final on December 14, 2020 which governed the ADR process. *See* Section 340B Drug Pricing Program; Administrative Dispute Regulation, Supplementary Information Part I, https://www.federalregister.gov/documents/2024/04/19/2024-08262/340b-drug-pricing-program-administrative-dispute-resolution-regulation. In short, there is no "conflicting enforcement mechanism[]" that *McClain* "had no occasion to consider"—in fact, *McClain* expressly stated that "HHS has jurisdiction over different disputes: disputes between covered entities and manufacturers regarding pricing, overcharges, refunds, and diversion of 340B drugs to those who do not qualify for discounted drugs." 95 F.4[th] at 1144. AbbVie's arguments for preemption are misleading and factually incorrect, and this Court should reject them.

**D. AbbVie's dormant Commerce Clause claim fails as a matter of law.**

AbbVie chose not to pursue the dormant Commerce Clause claim it brought in its original complaint, *see* Doc. 65, Pltffs' Opp. Mem., p. 7 n.1, and with good reason: S.B. 751 does not discriminate between in-state and out-of-state activities, and a law's mere impact on out-of-state activities, without more, does not violate the dormant Commerce Clause. Since then, a judge in the Western District allowed dormant Commerce Clause claims to proceed past the motion to dismiss stage in two similar cases, *see Pharm. Res. & Mfrs. of America v. Bailey*, No. 2:24-cv-04144-MDH, 2025 WL 644281 (W.D. Mo. Feb. 27, 2025); *Novartis Pharm. Corp. v. Bailey*, No. 2:24-cv-04131-MDH, 2025 WL 489881 (W.D. Mo. Feb. 13, 2025), which presumably motivated

AbbVie halfheartedly to resurrect this claim. With due respect to the Western District court, its analysis in both decisions is mistaken and unlikely to survive review by the Eighth Circuit.[5]

In *Pharm. Res. & Mfrs. of America*, the Court allowed the case to proceed past the motion to dismiss stage based on allegations that S.B. 751 applied to out-of-state transactions between out-of-state manufacturers, distributors, and covered entities. *See* 2025 WL 644281, at *6. The Court failed to consider the canon of statutory construction that statutes presumptively have no extraterritorial application, *see Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 115 (2013), and that the Missouri Supreme Court has expressly held that statutes that do not expressly state that they apply outside Missouri are deemed to have no extraterritorial effect. *See Tuttle v. Dobbs Tire & Auto Ctrs., Inc.*, 590 S.W. 3d 307, 311 (Mo. 2019). *Pharm Res. & Mfrs. of America's* reasoning should not be followed by this Court. Notably, moreover, the *Pharm. Res. & Mfrs. of America* decision does not use the same reasoning that the same court used in *Novartis* two weeks earlier, perhaps an indication that the court recognized that its *Novartis* reasoning was flawed, as explained below.

*Novartis's* reasoning differed in that the court allowed the claim to survive a motion to dismiss based on four alleged "burdens" on interstate commerce. The first—that S.B. 751 favors in-state covered entities and in-state pharmacies at the expense of out-of-state manufacturers—can be readily dispensed with. S.B. 751 does not distinguish between in-state and out-of-state pharmacies and manufacturers. It thus applies to national chain pharmacies that operate in Missouri and are based elsewhere and to any drug manufacturers based in Missouri. This supposed "burden" on interstate commerce is no burden at all based on the plain language of S.B. 751.

---

[5] The denial of a preliminary injunction request in the *Novartis* case is currently being briefed before the Eighth Circuit, and the validity of the dormant Commerce Clause claim is an issue in the appeal. A copy of Missouri's Appellees' Brief is attached as Ex. 1.

The other three supposed burdens on interstate commerce identified by the *Novartis* court amount to the same thing: the manufacturers contend that they will have to deal with different laws in different states and incur compliance costs. *See Novartis*, 2025 WL 489881, at *6. The U.S. Supreme Court has expressly rejected claims that such supposed burdens contravene the dormant Commerce Clause. *See, e.g.*, *National Pork Producers Council v. Ross*, 598 U.S. 356 (2023); *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117 (1978). Compliance costs of this nature simply do not, as a matter of law, violate the dormant Commerce Clause. *See National Pork Producers*, 598 U.S. at 386-87.

The key here is S.B. 751 does not seek to advantage in-state businesses or disadvantage out-of-state rivals. *See National Pork Producers*, 598 U.S. at 370-71. That insulates it from a dormant Commerce Clause challenge. And there is no allegation that the practical effect of S.B. 751 in operation "would disclose purposeful discrimination against out-of-state businesses," *see id.* at 379, nor would such an allegation be plausible. Indeed, in *Exxon*, the Supreme Court upheld a much more burdensome Maryland statute that barred oil producers or refiners from operating retail service stations in the state and that required oil producers to give discounts they previously provided only to independent service stations to all service stations the oil producers supplied in the state. *See* 437 U.S. at 119-20, 127-29. Similarly, in *Pharm. Res. & Mfrs. of America v. Walsh*, 538 U.S. 644, 649-50 (2003), the Supreme Court reversed a preliminary injunction and rejected a dormant Commerce Clause challenge to a Maine program to provide discounted prescription drugs to Maine citizens. Paramount to the Court's reasoning was that "[a] manufacturer could not avoid its rebate obligation by opening production facilities in Maine." *Id.* at 669. That same reasoning applies to S.B. 751—a drug manufacturer could not avoid its obligations under S.B. 751 by moving its production facilities to Missouri. Laws much more burdensome than S.B. 751 have survived

dormant Commerce Clause challenges at the Supreme Court, and this Court should accordingly dismiss AbbVie's dormant Commerce Clause claim.

**3.  Conclusion**

This case should be dismissed completely. AbbVie lacks Article III standing to pursue its claims because it has not alleged injury to a legally protected interest caused by S.B. 751. AbbVie's Takings claim (First Claim for Relief) fails because title does not transfer to contract pharmacies, its preemption claim (Second Claim for Relief) is foreclosed by *McClain*, and its Commerce Clause claim (Third Claim for Relief) fails because S.B. 751 does not discriminate against out-of-state activity and applies equally to any Missouri drug companies. The Court should grant Missouri's Motion to Dismiss Plaintiffs' First Amended Complaint.

Respectfully submitted,

**CATHERINE L. HANAWAY**
Missouri Attorney General

*/s/ J. Patrick Sullivan*
J. Patrick Sullivan #42968 MO
  *Chief Counsel, Litigation Section*
615 E. 13th Street, Suite 401
Kansas City, MO 64106
(816) 889-5019
Patrick.Sullivan@ago.mo.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2025, the foregoing was filed electronically through the Court's electronic filing system to be served electronically on counsel for all parties.

*/s/ J. Patrick Sullivan*