# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

ABBVIE INC. (a Delaware corporation);                )
ALLERGAN, INC. (a Delaware corporation);           )
DURATA THERAPEUTICS, INC.                           )
(a Delaware corporation);                            )
ABBVIE PRODUCTS LLC                                  )
(a Georgia limited liability company);               )
APTALIS PHARMA US, INC.                              )
(a Delaware corporation);                            )
PHARMACYCLICS LLC                                    )
(a Delaware limited liability company);              )
ALLERGAN SALES, LLC                                  )
(a Delaware limited liability company),              )
                                                     )
            *Plaintiffs*,                            )
                                                     )
      vs.                                            ) Civil Action No. 4:24-cv-00996-SRC
                                                     )
CATHERINE HANAWAY, in her official capacity )
as ATTORNEY GENERAL OF THE STATE          )
OF MISSOURI,                                         )
                                                     )
*and*                                                )
                                                     )
JAMES L. GRAY, in his official capacity as           )
PRESIDENT OF THE MISSOURI                            )
BOARD OF PHARMACY, CHRISTIAN S.                      )
TADRUS, in his official capacity, as                 )
VICE PRESIDENT OF THE MISSOURI                       )
BOARD OF PHARMACY, and DOUGLAS                       )
R. LANG, COLBY GROVE, ANITA K.                       )
PARRAN, TAMMY THOMPSON, and                          )
DARREN HARRIS, in their official                     )
capacities as MEMBERS OF THE                         )
MISSOURI BOARD OF PHARMACY,                          )
                                                     )
            *Defendants*.                            )

**INTERVENORS MISSOURI HOSPITAL ASSOCIATION AND MISSOURI PRIMARY
CARE ASSOCIATION'S BRIEF IN SUPPORT OF THEIR SECOND MOTION TO
DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

AbbVie is out of moves. For nearly two years, AbbVie has told this Court that the Eighth Circuit's binding decision in *Pharm. Rsch. & Mfrs. of Am. v. McClain* was distinguishable because, unlike the statute in that case, Missouri Senate Bill 751 ("S.B. 751") regulates drug "pricing" rather than drug "delivery," title to 340B drugs does not remain with the covered entities under S.B. 751, and the applicable federal dispute resolution program had not been enacted at the time *McClain* was decided.

Those arguments were meritless before, but now they have been rejected by the Eighth Circuit. The Eighth Circuit's recent decision in *Novartis Pharm. Corp.*—a companion case to this one involving the exact same statute—forecloses AbbVie's preemption claim (Count II) and dormant Commerce Clause claim (Count III). *Novartis Pharm. Corp. v. Hanaway*, No. 25-1619, 2026 WL 1892141 (8th Cir. July 1, 2016). All that remains, therefore, is AbbVie's Takings Clause claim (Count I). But as explained in this brief, that claim is facially meritless and should be dismissed with prejudice.

## I.   BACKGROUND

AbbVie filed this lawsuit on July 22, 2024, challenging the constitutionality of S.B. 751. *See* ECF 1. After several rounds of briefing and a hearing in April 2025, the Court issued an order dismissing AbbVie's claims without prejudice for want of jurisdiction. ECF 91. AbbVie then moved the Court for leave to file an amended complaint (ECF 95), which this Court granted on August 20, 2025 (ECF 100). AbbVie filed its First Amended Complaint the same day. ECF 101. Following AbbVie's amendments, the Eighth Circuit issued its decision in a case filed by one of AbbVie's competitors, Novartis, also involving a challenge to S.B. 751, in which the Court rejected Novartis' preemption and dormant Commerce Clause challenges—two of the same challenges AbbVie brings here.

## II.     STANDARD OF REVIEW

A district court can dismiss a plaintiff's claims if the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997)).

When a plaintiff challenges the constitutionality of a state statute, the court may dismiss the challenge under Rule 12(b)(6) if it rests on questions of law and the allegations, taken as true, fail to state a plausible claim. *See, e.g.*, *Metro. Omaha Prop. Owner Ass'n, Inc. v. City of Omaha*, 991 F.3d 880 (8th Cir. 2021) (affirming Rule 12(b)(6) dismissal of constitutional challenge to city ordinance).

## III.     ARGUMENT

AbbVie's claims fail for purely legal reasons. **First**, AbbVie's preemption and dormant Commerce Clause claims are foreclosed by binding Eighth Circuit authority, which AbbVie cannot avoid no matter how hard it tries. **Second**, S.B. 751 does not effect an unconstitutional taking.

It's time for this saga to end. AbbVie has spent years trying to get this Court to ignore clear circuit precedent—precedent that has only strengthened and crystallized over time—simply because it wishes to avoid shipping statutorily discounted drugs to community pharmacies. The Court should dismiss AbbVie's claims with prejudice.

2

A.      **AbbVie's preemption and dormant Commerce Clause claims are foreclosed.**

The Eighth Circuit recently addressed two of the claims AbbVie raises here: that S.B. 751 is preempted by the federal 340B program and that S.B. 751 violates the dormant Commerce Clause. The Eighth Circuit squarely rejected both claims.

In *Novartis v. Pharm. Corp. v. Hanaway*, AbbVie's drug manufacturer peer—Novartis Pharmaceuticals Corp.—appealed the district court's denial of its motion for preliminary injunction, which sought a prohibition on the enforcement of S.B. 751 under the theory that it was preempted by the federal 340B program and violated the dormant Commerce Clause. ___ F.4th ____, 2026 WL 1892141, at *1 (8th Cir. July 1, 2026).

The Eighth Circuit found that Novartis was unlikely to prevail on these claims. As to preemption, it held that S.B. 751 was neither field preempted nor conflict preempted. *Id.* at *10-12. As to the dormant Commerce Clause, it held that S.B. 751 did not have impermissible extraterritorial effects, did not discriminate against interstate commerce, and did not fail the *Pike* balancing test. *Id.* at *6-10.

*Novartis* controls; AbbVie's preemption and dormant Commerce Clause claims fail.

1.      S.B. 751 is not field preempted.

AbbVie alleges that S.B. 751 is unconstitutional because it is preempted by the federal 340B Program. On this front, AbbVie avers that the federal 340B Program was intended by Congress to be exhaustive, and that any attempt by the States to "modif[y] the requirements of the federal 340B program" or to "impos[e] requirements on drug manufacturers" are preempted. ECF 101 ¶ 14.

Congress may impliedly preempt state law "either through 'field' pre-emption or 'conflict' preemption." *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015). The former occurs where

3

"Congress has forbidden the State to take action in the *field* that the federal statute pre-empts." *Id.* (emphasis in original). "By contrast, conflict pre-emption exists where compliance with both state and federal law is impossible, or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (internal quotation marks and citation omitted). Either way, preemption is not to be lightly inferred. *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992). Relevant here, there is a prevailing "presumption that state or local regulation of matters related to health and safety is not invalidated under the Supremacy Clause." *Hillsborough Cnty., Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 715 (1985).

Against this backdrop, AbbVie nonetheless contends S.B. 751 is preempted under both field preemption *and* conflict preemption. Its field preemption theory is that "[t]he 340B program is a comprehensive federal healthcare program." ECF 101 ¶ 139. In fact, in AbbVie's view, the federal 340B Program is so comprehensive that "[e]very detail of the 340B Program—from eligibility and pricing to compliance and enforcement—is governed by federal law." *Id.* Thus, the statutory scheme "leaves no room for states to interfere with the carefully designed 340B program." *Id.*

The Eighth Circuit has held otherwise—twice. Addressing an identical challenge to another State's 340B contract pharmacy statute, the Court very clearly stated that "the 340B Program is not so pervasive that Congress left no room for the States to supplement it." *Pharm. Rsch. & Mfrs. of Am. v. McClain*, 95 F.4th 1136, 1143 (8th Cir. 2024) (citation modified). This is especially so given that "the practice of pharmacy is an area traditionally left to state regulation." *Id.* at 1143 (quoting *Pharm. Care Mgmt. Ass'n v. Wehbi*, 18 F.4th 956, 972 (8th Cir. 2021)). "[A]bsent a strong showing that Congress intended preemption, state statutes that impact health and welfare are not preempted." *Id.* at 1144. S.B. 751 is therefore not preempted under field preemption.

4

AbbVie's one-sentence effort to distinguish *McClain* is not just insincere; it is wrong. According to AbbVie, the Eighth Circuit found no field preemption in *McClain* "because the Court concluded that '[c]overed entities maintain title to the 340B drugs,' and the 'pharmacy becomes an agent of the covered entity.'" ECF 101 ¶ 85 (quoting *McClain*, 95 F.4th at 1144). AbbVie then says that this "is not true in Missouri," thus rendering *McClain* inapposite. *Id.*

Not so. For starters, this Court already held that "S.B. 751 doesn't require AbbVie to transfer title of discounted drugs to contract pharmacies," and that S.B. 751 presupposes an agency relationship between the covered entities and the pharmacies. ECF 91 at 14-15. But even if it hadn't, the Eighth Circuit confirmed in *Novartis* that, under S.B. 751, "the contract pharmacy acts as an agent of the covered entity" and "title to the medication remains with the covered entity." 2026 WL 1892141, at *2. "[T]his Court is bound by the Eight Circuit's decision." *United States v. Pruitt*, No. 4:22-cr-00671-SRC, 2024 WL 1576964, at *1 (E.D. Mo. Apr. 11, 2024). AbbVie's conclusory allegation to the contrary does not defeat Eighth Circuit precedent.

### 2.      S.B. 751 is not conflict preempted.

AbbVie's conflict preemption theory fares no better. While the specifics of its theory are fuzzy, AbbVie seemingly believes S.B. 751 conflicts with the 340B program in three ways. First, it "undermine[s] [HHS's] efforts to administer" the 340B Program. ECF 101 ¶ 150. Second, it "attempts to install an alternative compliance regime [which] conflict[s] with the procedures detailed in the 340B statute and the lawfully promulgated federal rules implementing the statute." *Id.* ¶ 151. And third, it imposes a "substantive obligation on manufacturers beyond what federal law requires . . . ." *Id.* ¶ 148.

AbbVie's first argument flies in the face of S.B. 751's history and Eighth Circuit precedent. As AbbVie points out, in 2010, HHS issued guidance that allowed covered entities to enter into

5

contract pharmacy arrangements with an unlimited number of contract pharmacies. *Id.* ¶ 49. The manufacturers then challenged HHS's actions in federal court, arguing that HHS "overstepped the statute's bounds." *Sanofi-Aventis U.S. LLC v. U.S. Dep't of Health & Hum. Servs.*, 58 F.4th 696, 707 (3d Cir. 2023); *see also Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 463 (D.C. Cir. 2024) (criticizing HHS's interpretation of the 340B statue as "atextual and ahistorical"). Such overstepping was impermissible, these courts held, because HHS "lacks rulemaking authority over the section 340B program" and thus is strictly limited in what duties it can create and enforce. *Novartis*, 102 F.4th at 459 (D.C. Cir. 2024); *Sanofi*, 58 F.4th at 703.

The Missouri legislature, of course, is not so limited. It has all the police powers ordinarily available to States. *McClain*, 95 F.4th at 1143 ("[W]hen it comes to pharmaceuticals, the federal government has traditionally regarded state law as a complementary form of drug regulation and has long maintained that state law offers an additional, and important, layer of consumer protection that complements federal regulation.") (cleaned up). And the Missouri General Assembly exercised those powers to establish substantive laws regulating the distribution of 340B drugs within the state. S.B. 751 therefore does not "undermine" HHS's regulatory efforts, as AbbVie would have it.

The Eighth Circuit's holding in *Novartis* confirms this. In rejecting an identical challenge to S.B. 751, the Court emphasized that "federal law neither prohibits nor requires the use of contract pharmacies, nor does federal law fix the number of contract pharmacies a covered entity may use to distribute 340B drugs on its behalf." *Novartis*, 2026 WL 1892141, at *12. So, "[b]ecause state laws like Arkansas Act 1103 and Missouri S.B. 751 regulate an area beyond the purview of federal law and do not pose an obstacle for drug manufacturers to comply with both federal and state law, such state laws are not conflict preempted." *Id.* at *12.

6

As to S.B. 751's supposed "alternative compliance regime," the conflict AbbVie alleges is imagined rather than real. AbbVie believes S.B. 751's penalties conflict with the dispute resolution procedures in 42 U.S.C. § 256b(d). ECF 101 ¶ 151. But S.B. 751's penalties apply only in cases where "manufacturers deny 340B drugs to covered entities' contract pharmacies." *McClain*, 95 F.4th at 1144. By contrast, under the federal dispute resolution process, "HHS has jurisdiction over ***different*** disputes: disputes between covered entities and manufacturers regarding pricing, overcharges, refunds, and diversion of 340B drugs to those who do not qualify for discounted drugs." *Id.* (emphasis added). AbbVie improperly "conflates the two statutes" to make them seem in conflict. *Id.* Read correctly, however, there is no conflict between S.B. 751 and the 340B Program's dispute resolution processes (or any other part of the 340B Program, for that matter). *Id.*; *see also AbbVie Inc. v. Skrmetti*, No. 3:25-CV-00519, 2025 WL 1805271, at *19 (M.D. Tenn. June 30, 2025) (finding no conflict between enforcement provisions in state contract pharmacy statute and federal 340B program); *AstraZeneca Pharms. LP v. Fitch*, 766 F. Supp. 3d 657, 664 (S.D. Miss. 2024) (same).[1]

AbbVie's final basis for conflict preemption—that S.B. 751 imposes obligations "beyond" what the 340B Program requires—is actually a field preemption theory. *See Arizona v. United States*, 567 U.S. 387, 433 (2012) (explaining that a state statute's interference with a Congress's chosen balance is "a classic description not of *conflict* pre-emption but of *field* pre-emption") (Scalia, J., concurring) (emphasis in original). It thus fails for the reasons explained *supra*. But at a more basic level, AbbVie's theory fails because AbbVie does not identify any conflict between

---

[1] In the last round of motion to dismiss briefing, AbbVie argued that, because the exact ADR forum at issue did not exist at the time *McClain* was decided, the *McClain* Court "had no occasion to consider the conflicting enforcement mechanisms." ECF 114 at 19. Of course, that's no longer the case following *Novartis*.

the obligations imposed by the 340B Program and those imposed by S.B. 715. It merely complains of the "difficulty of complying with varying state regulatory frameworks . . . ." ECF 101 ¶ 152. This is a far cry from alleging, as it must, that "compliance with both state and federal law is impossible, or [] the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *McClain*, 95 F.4th at 1140 (internal quotation marks and citations omitted). And, in any event, "S.B. 751 regulates the delivery of 340B drugs in a manner consistent with federal law and does not stand as an obstacle to the drug pricing objectives of Section 340B," so there is no conflict preemption. *Novartis*, 2026 WL 1892141, at *12.

**B.      S.B. 751 does not violate the Takings Clauses.**

The only claim left for AbbVie after *Novartis* is its Takings Clause claim—a claim that AbbVie has trotted out in other forums with virtually no success. AbbVie alleges that S.B. 751 results in an unconstitutional "taking" in violation of the Fifth Amendment of the United States Constitution. ECF 101 ¶¶ 122-134. The Takings Clause generally prohibits the taking of private property for public use without just compensation. *See* U.S. Const. amend V.[2]

Takings come in two forms: *per se* (sometimes called "physical") and regulatory. *Cedar Point Nursey v. Hassid*, 594 U.S. 139, 147-49 (2021). The former occurs when "the government directly appropriates private property for its own use." *Horne v. Dep't of Agric.*, 576 U.S. 350, 357 (2015) (internal quotation marks and citations omitted). The latter occurs when a regulation "goes too far" in interfering with property rights. *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). To determine whether a particular regulation "goes too far," courts consider the "economic impact of the regulation," "the extent to which the regulation has interfered with distinct investment-backed expectation," and "the character of the governmental action." *Penn. Cent. Transp. Co. v.*

---

[2] AbbVie has abandoned its claim that S.B. 751 violates Missouri's Takings Clause.

*City of New York*, 438 U.S. 104, 124 (1978). Either way, the government may take property only for *public* use, meaning for uses that "serve[] a 'public purpose.'" *Kelo v. New London*, 545 U.S. 469, 480 (2005).

AbbVie alleges S.B. 751 works both kinds of takings. First, it alleges that S.B. 751 amounts to a *per se* taking because it requires impermissible "A-to-B transfers of private property for the benefit of private parties." ECF 101 ¶ 125. More specifically, it alleges that S.B. 751 "appropriates AbbVie's property rights in its drugs for the private benefit of commercial third parties." *Id.* ¶ 127. Such a taking is, in AbbVie's view, unconstitutional "with or without just compensation." *Id.* ¶ 126.

Second, AbbVie alleges that, "[i]n the alternative, [S.B. 751] effectuates a partial regulatory taking." *Id.* ¶ 132. Here, reciting by rote the factors from *Penn Central*, AbbVie alleges that S.B. 751 "is constitutionally impermissible because it requires the physical acquisition of AbbVie's drugs by another private party for no public purpose or use; imposes significant financial losses on AbbVie and other manufacturers; interferes with drug manufacturers' reasonable investment backed expectations; and serves no valid government purpose because it deprives manufacturers of the full use and control of their property on a continual basis for the commercial benefit of private parties." *Id.* ¶ 134.

AbbVie's takings claim suffers from a host of deficiencies which AbbVie cannot cure, no matter how artful its pleadings. First and foremost, AbbVie's *per se* taking theory fails because, per this Court's prior order, nothing in the text of S.B. 751 requires covered entities to transfer title of 340B drugs to contract pharmacies. ECF 91 at 14. Title to the drugs remains with the covered entity as a required "essential element" of a contract pharmacy arrangement under HHS's guidelines. 75 Fed. Reg. 10272, 10277. *Novartis* leaves no room for doubt on this point. 2026 WL

9

1892141, at *2 (holding that "title to the medication remains with the covered entity").

Another problem with AbbVie's takings claim is that voluntary governmental programs cannot give rise to unconstitutional takings. Indeed, courts have largely "rejected Takings Clause challenges to the 340B Drug Price Program" on exactly this basis. *Boehringer Ingelheim Pharms., Inc. v. U.S. Dep't of Health & Hum. Servs.*, No. 3:23-cv-01103 (MPS), 2024 WL 3292657, at *13 (D. Conn. July 3, 2024). AbbVie tepidly acknowledges this issue in its pleadings. ECF 101 ¶ 12. But, searching for a distinction, it alleges such a defense "is not available to Missouri" because "S.B. 751 offers no voluntary exchange to manufacturers for compliance with Missouri's law . . . ." ECF 1 ¶ 13. AbbVie fails to acknowledge that S.B. 751 only applies to distribution of drugs that have already been priced under the 340B Program.  *See* RSMo. § 376.414(1)–(2) (defining "340B drug" and requiring delivery of 340B drugs to contract pharmacies). S.B. 751 is voluntary because participation in the 340B Program is voluntary—if AbbVie were to withdraw from the 340B drug pricing program, S.B. 751's drug distribution requirements would not apply to it. *Pharm. Rsch. & Mfrs. of Am. v. Murrill*, NO. 6:23-CV-00997, 2024 WL 4361597, at *15 (W.D. La. Sept. 30, 2024) ("Act 358 does not compel drug manufacturers to transfer Section 340B discounted drugs either to the government or to a private party. The statute only applies to drug manufacturers who voluntarily participate in the Medicaid and Medicare programs. AbbVie is not compelled to participate in these programs.").

At any rate, even if AbbVie were right that S.B. 751 does not qualify as a "voluntary" program, it is wrong that that S.B. 751 "appropriates AbbVie's property rights in its drugs for the private benefit of commercial third parties." ECF 101 ¶ 127. To support its claim that S.B. 751

10

results in an impermissible "A-to-B transfer," AbbVie says, repeatedly, that S.B. 751 serves "no recognized public use or purpose." *Id.* ¶¶ 114, 121.

This contention is at odds with binding Supreme Court precedent. As AbbVie well knows, "[t]he Supreme Court has defined the concept of a public purpose 'broadly, reflecting [its] longstanding policy of deference to legislative judgments.'" *AbbVie, Inc. v. Fitch*, No. 1:24-cv-184-HSO-BWR, 2024 WL 3503965, at *20 (S.D. Miss. July 22, 2024) (quoting *Kelo*, 545 U.S. at 480). State statutes like S.B. 751, which aim to help poor and rural areas receive better access to affordable drugs, easily fit that bill. *Id.* (rejecting identical challenge to state 340B contract pharmacy statute because "[i]f condemning Ms. Kelo's home so that a pharmaceutical company could build a facility served the public purpose of economic development, then so would facilitating Mississippians' access to medications for which manufacturers have already agreed to provide a discount").

Notably, the Fifth Circuit has rejected AbbVie's physical takings claims twice now. First, in *AbbVie, Inc. v. Fitch*, the Fifth Circuit held that the state law at issue—which the *Novartis* Court characterized as "materially similar to Missouri S.B. 751," 2026 WL 1892141 at *12—did not result in a physical taking because it did not "impose on drug manufacturers a positive obligation to directly transfer or sell their drugs to anyone" nor "require them to sell larger quantities of their drugs at discounted prices than Section 340B requires and thereby deprive them of sales at full market price." 152 F.4th 635, 643 (5th Cir. 2025). Then, in *AbbVie, Inc. v. Murrill*, the Fifth Circuit again held—in connection with another "materially similar" statute, 2026 WL 1892141, at *12— that the challenged statute did not result in a physical taking because it did not "deprive AbbVie of anything to which § 340B entitles it." ___ F.4th ____, 2026 WL 1947948, at *9 (5th Cir. July 6, 2026). The same is true here. AbbVie's *per se* taking claim should accordingly be dismissed.

11

As to the purported regulatory taking, AbbVie flunks each of the *Penn Central* factors. For the first factor—the "economic impact of the regulation"—AbbVie cannot demonstrate an economic impact because 340B prices are set by the 340B statute, not S.B. 751. AbbVie also does not quantify its supposed "financial losses." ECF 101 ¶ 134. The omission is telling. Supreme Court precedent has emphasized the "heavy burden placed upon one alleging a regulatory taking." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 493 (1987). Discharging this burden requires AbbVie to show that, by virtue of the challenged regulation, its activities have become "commercially impracticable." *Id.*

AbbVie does not even try to meet this onerous pleading standard, and for good reason. It knows it cannot truthfully allege S.B. 751 makes its drug manufacturing operations "commercially impracticable." This is because "the economic impact of the 340B Program is not as drastic" as AbbVie claims. *Sanofi-Aventis U.S. LLC v. U.S. Dep't of Health & Hum. Servs.*, 570 F. Supp. 3d 129, 208 (D.N.J. 2021), *rev'd on other grounds*, 58 F.4th 696 (3d Cir. 2023). By and large, 340B drug sales represent only a small fraction of the prescription drug market. *Id.*

The second factor—AbbVie's "investment-backed expectations"—is more of the same. AbbVie does not allege what these "expectations" are because they do not exist. HHS authorized contract pharmacy arrangements in 1996, and any investment backed expectations since then have included 340B shipments to contract pharmacies. What's more, investment-backed expectations are generally unreasonable in "an industry that long has been the focus of great public concern and significant government regulation," like the pharmaceutical industry. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1008 (1984). "Likewise, because Section 340B does not preempt state laws requiring delivery of 340B drugs to contract pharmacies, Plaintiffs could have foreseen that states

12

might enact policies favoring dispensation at contract pharmacies as well." *Fitch*, 2024 WL 3503965, at *20 (internal citations omitted); *see also Pace Res., Inc. v. Shrewsbury Twp.*, 808 F.2d 1023, 1033 (3d Cir. 1987) ("[I]nvestment-backed expectations are reasonable only if they take into account the power of the state to regulate in the public interest.").

The third factor—the "character of the governmental action"—rises and falls with AbbVie's general theory that S.B. 751 "serves no valid government purpose because it deprives manufacturers of the full use and control of their property on a continual basis for the commercial benefit of private parties." ECF 101 ¶ 134. AbbVie's sole basis for this theory—*i.e.*, that "[c]overed entities do not pass on 340B's discounted prices to individual patients," so therefore "[t]he effect of S.B. 751 is not to benefit needy patients or increase and facilitate access to medications" (*id.* ¶¶ 130-131—is false. As the *Novartis* Court observed:

> Even though covered entities can obtain large quantities of 340B drugs at little cost, covered entities are not required to pass the discounts on to patients through free or subsidized medication. Instead, Congress envisioned that covered entities would use 340B savings to stretch scarce Federal resources as far as possible, reaching more eligible patients and providing more comprehensive services. Following Congress's lead, many covered entities use the excess revenues from the 340B Program to finance their operations and expand services.

2026 WL 1892141, at *2 (citation cleaned up). The fact that some covered entities do not pass on the discounted prices to individual patients does not detract from the other, tangible benefits that contract pharmacies promote and that restrictive contract pharmacy policies (like the one AbbVie wishes to foist upon Missouri's covered entities) frustrate.

Finally, it bears repeating that the only appellate court to consider this issue has twice rejected AbbVie's regulatory claims in connection with nearly identical state contract pharmacy laws. *See Fitch*, 152 F.4th at 644 (rejecting regulatory takings challenge because "the potential for dispensation of Section 340B drugs by contract pharmacies was foreseeable" and "restrictive

13

contract-pharmacy policies detrimentally affect patient access and provider offerings"); *Murrill*, 2026 WL 1947948, at \*10 (finding that AbbVie failed each *Penn Central* factors). There is no basis in AbbVie's amended complaint for this Court to find otherwise.

## IV.     CONCLUSION

The Court should dismiss AbbVie's claims with prejudice.

Dated July 15, 2026                          Respectfully submitted,

                                             HUSCH BLACKWELL LLP

                                             By:   /s/ James F. Monafo
                                                   James F. Monafo, #38774
                                                   Tanner M. Cook, #71846
                                                   8001 Forsyth Boulevard, Suite 1500
                                                   St. Louis, Missouri 63105
                                                   Phone: (314) 480-1500
                                                   Fax: (314) 480-1551
                                                   Jim.Monafo@huschblackwell.com
                                                   Tanner.Cook@huschblackwell.com

                                                   Alexa B. Barton, #71779
                                                   14606 Branch St., Ste. 200
                                                   Omaha, Nebraska
                                                   Telephone: (402) 964-5000
                                                   Fax: (402) 964-5050
                                                   allee.barton@huschblackwell.com

                                                   ATTORNEYS FOR PROPOSED INTERVENORS
                                                   MISSOURI HOSPITAL ASSOCIATION AND
                                                   MISSOURI PRIMARY CARE ASSOCIATION

                                             POWERS PYLES SUTTER & VERVILLE, PC

                                             By:   /s/ Ronald S. Connelly
                                                   RONALD S. CONNELLY*
                                                   1250 Connecticut Ave., NW
                                                   Eighth Floor
                                                   Washington, DC 20036
                                                   Phone:  202-872-6762
                                                   Fax:    202-466-6550
                                                   Email:  Ron.Connelly@PowersLaw.com

                                                   ATTORNEY FOR PROPOSED INTERVENORS
                                                   MISSOURI HOSPITAL ASSOCIATION AND
                                                   MISSOURI PRIMARY CARE ASSOCIATION
                                                   *Pro Hac Vice

15