UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ABBVIE INC. et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CATHERINE HANAWAY, in her official capacity as Attorney General of the State of Missouri et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:24-cv-00996-SRC |

**Memorandum and Order**

AbbVie Inc. and several drug manufacturers, as a general policy, limit the number of pharmacies certain healthcare providers can contract with to distribute statutorily designated drugs. Missouri responded by passing a law barring that policy, and Plaintiffs sued to enjoin that law. The Missouri Hospital Association and the Missouri Primary Care Association (collectively, "Intervenors") moved to intervene. Intervenors fear that Plaintiffs' suit threatens Intervenors' access to affordable healthcare and drugs for their underserved patients. The Court takes up their motion to intervene.

## I. Background

### A. The 340B program

The Court treats the following material allegations as true for the purpose of deciding Intervenors' motion. *ACLU of Minn. v. Tarek ibn Ziyad Academy*, 643 F.3d 1088, 1092 (8th Cir. 2011) (citation omitted). Section 340B of the Public Health Service Act requires drug manufacturers participating in Medicaid to offer certain prescription drugs to "covered entities" at discounted prices. 42 U.S.C. § 256b. Covered entities include federally qualified health

centers and other entities that medically care for certain populations. *See* 42 U.S.C. § 256b(a)(4). In exchange for providing these discounts, the statute prohibits covered entities from obtaining duplicate discounts or reselling the drugs to nonpatient third parties. *See* 42 U.S.C. §§ 256b(a)(5)(A), (B).

Many covered entities, lacking on-site pharmacies, contract with multiple outside pharmacies—"contract pharmacies"—to distribute 340B drugs to patients. *See* doc. 101 at ¶ 3; *see also* doc. 106 at 2, 5 (The Court cites to page numbers as assigned by CM/ECF.). The Health Resources and Services Administration, which administers the program, permits this framework, so long as covered entities "comply with guidance . . . against diversion and duplicate discounts." 75 Fed. Reg. 10272, 10273 (Mar. 5, 2010).

**B. S.B. 751**

As covered entities expanded their dealings with contract pharmacies, drug manufacturers, including Plaintiffs, began to adopt policies limiting the use of such pharmacies. *See* doc. 101 at ¶ 6. Intervenors aver that these restrictions "generally aim to limit covered entities to distribution to one contract pharmacy." Doc. 106 at 4 (citation omitted). Subsequent litigation over these contract-pharmacy limits resulted in multiple federal courts stating that manufacturers may impose them. *See Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 464 (D.C. Cir. 2024); *Sanofi Aventis U.S. LLC v. U.S. Dep't of Health & Hum. Servs.*, 58 F.4th 696, 706 (3d Cir. 2023). In turn, Missouri enacted a law barring manufacturers from placing limits on covered entities' ability to distribute through contract pharmacies.

That law, S.B. 751, requires drug manufacturers to:

> [N]ot deny, restrict, or prohibit, either directly or indirectly, the acquisition of a 340B drug by, or delivery of a 340B drug to, a pharmacy that is under contract with, or otherwise authorized by a, covered entity to receive 340B drugs on behalf of the

> covered entity unless such receipt is prohibited by the United States Department of Health and Human Services.

Mo. Rev. Stat. § 376.414.2. At bottom, S.B. 751 prohibits manufacturers' contract-pharmacy restrictions unless the Department of Health and Human Services would otherwise prohibit delivery of 340B drugs to those pharmacies.

**C. Procedural history**

AbbVie and several other 340B-drug manufacturers sued the Missouri Attorney General and members of the Missouri Board of Pharmacy to challenge S.B. 751 in July 2024. *See* doc. 1. In September 2024, Missouri moved to dismiss. *See* docs. 32–33. Fifteen days later, Intervenors filed motions to intervene and to dismiss. *See* docs. 46–47. In turn, Plaintiffs moved for a hearing on the pending motions, doc. 66, which the Court granted, doc. 80.

The Court held the hearing on the motion to intervene and the motions to dismiss. Docs. 84, 88. The Court later dismissed Plaintiffs' complaint for lack of standing, mooting the motion to intervene. Doc. 91. Plaintiffs then sought and received leave to file an amended complaint. Docs. 95, 100. In their amended complaint, Plaintiffs requested declaratory and injunctive relief, arguing that S.B. 751 violates the United States Constitution's takings clause, doc. 101 at ¶¶ 122–134, supremacy clause, *id.* at ¶¶ 135–153, and so-called "dormant" commerce clause, *id.* at ¶¶ 154–160. Missouri again moved to dismiss, doc. 104, and Intervenors once more filed a motion to intervene and a motion to dismiss, docs. 106, 134.

**D. Intervenors' Motion to Intervene**

In their Motion to Intervene, Intervenors, not-for-profit member organizations, state that their members are "'covered entities' in the 340B program" that "rely on" contract pharmacies to give their patients 340B-drug access. Doc. 106 at 6, 8.

Missouri Hospital Association, an organization comprised of "hospitals and healthcare systems," has, as its mission, "to shape an environment that enables member[s] . . . to meet their evolving missions so that they may improve the health of their patients and community." *Id.* at 6. Missouri Hospital Association has 139 member hospitals, approximately half of which are 340B-covered entities. *Id.* It avers that, if the Court enjoins Missouri from enforcing S.B. 751 and manufacturers like AbbVie restrict the use of contract pharmacies, Missouri Hospital Association's members will lose access to the 340B program because its members rely on contract pharmacies. *Id.* Therefore, the loss of access would "threaten[] the financial viability of [it]'s members[,]" Missouri Hospital Association claims. *Id.*

The other proposed intervenor, Missouri Primary Care Association, is a member organization consisting of "Missouri's community health centers." *Id.* at 7. It states that its "mission is to be Missouri's leader in shaping policies and programs that improve access to high-quality, community-based, and affordable primary health services." *Id.* Its members—all of which are 340B-covered entities—provide a variety of primary-care and other health services, with the majority using contract pharmacies to do so. *Id.* at 7–8. Though Plaintiffs do not prohibit any Missouri Primary Care Association member from dealing with more than one contract pharmacy, Missouri Primary Care Association claims that Plaintiffs could change this policy, absent S.B. 751. *Id.* at 8–9. Missouri Primary Care Association alleges that "some [of its] members lack the financial resources to open an in-house pharmacy and must solely rely on contract pharmacies" to get 340B-drugs to patients in need. *Id.* at 7. Without S.B. 751, Missouri Primary Care Association argues, "drug companies will be able to restrict or eliminate shipments of 340B drugs to pharmacies under contract" with its members. *Id.* Plaintiffs opposed

intervention, doc. 115, Intervenors replied, *see* doc. 119, so Intervenors' Motion to Intervene, doc. 106, is ripe for review.

## II. Standard

Federal Rule of Civil Procedure 24(a) allows a nonparty to a lawsuit to intervene in a case as of right. Under Rule 24(a)(1), a court must permit intervention if the party "is given an unconditional right to intervene by a federal statute." Fed. R. Civ. P. 24(a)(1). Absent a statutory mandate, the court must allow a party to intervene if "(1) its motion is timely, (2) it has an interest in the subject matter of the litigation, (3) disposition of the case may impair that interest, and (4) existing parties do not adequately protect that interest." *Entergy Ark., LLC v. Thomas*, 76 F.4th 1069, 1071 (8th Cir. 2023) (citing Fed. R. Civ. P. 24(a)(2)).

Alternatively, a party may seek permissive intervention under Rule 24(b). A court may permit a party to intervene if the party has either "a conditional right to intervene by a federal statute," or "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Courts have discretion in deciding whether to grant a motion for permissive intervention. *See S. Dakota ex rel Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir. 2003) ("The decision to grant or deny a motion for permissive intervention is wholly discretionary."). When reviewing a motion to intervene, Courts liberally construe Rule 24 with all "doubts resolved in favor of the proposed intervenor." *Nat'l Parks Conservation Ass'n v. E.P.A.*, 759 F.3d 969, 975 (8th Cir. 2014) (citation omitted).

## III. Discussion

Plaintiffs do not argue that Intervenors lack standing to intervene, so the Court turns first to Intervenors' request to intervene as of right.

### A. Intervention as of right

For Intervenors to intervene as of right, they must show that (1) their motion is timely; (2) they have an interest in the action's subject matter; (3) disposition of the action may practically impair or impede their ability to protect their interest; and (4) the existing parties do not adequately represent their interests. *Barnett*, 317 F.3d at 785; *see* Fed. R. Civ. P. 24(a)(2). Plaintiffs do not contest the timeliness of Intervenors' motion, *see* doc. 106 at 10; *see generally* doc. 115, so the Court addresses the remaining objections. -

#### 1. Interest in the action's subject matter

"An interest is cognizable under Rule 24(a)(2) only where it is 'direct, substantial, and legally protectable.'" *Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC*, 485 F.3d 1006, 1008 (8th Cir. 2007) (quoting *United States v. Union Elec. Co.*, 64 F.3d 1152, 1161 (8th Cir. 1995)). A proposed intervenor may base its intervention "on an interest that is contingent on the outcome of the litigation." *Union Elec.*, 64 F.3d at 1162. But an interest "contingent upon the occurrence of a sequence of events before it becomes colorable" cannot justify intervention. *Standard Heating & Air Conditioning Co. v. City of Minneapolis*, 137 F.3d 567, 571 (8th Cir. 1998) (citation omitted).

Intervenors assert that they have "substantial and legitimate" interests in the subject matter of the case. Doc. 106 at 11. They raise two interests to justify their intervention: (1) an "economic" interest in the savings from participating in the 340B program and (2) a "mission-based" interest of "providing care to low income and medically under-served" patients. *Id.* at 12. Plaintiffs interfere with these interests, Intervenors posit, because they challenge S.B. 751, which protects the delivery of 340B drugs to their members' contract pharmacies. *Id.* at 11.

Plaintiffs counter that Intervenors' interests in this litigation are too remote to be cognizable. *See* doc. 115 at 11 (citing *Standard Heating*, 137 F.3d at 571). They also argue that Intervenors' interests are not "legally protectable" because Intervenors cannot independently sue to enforce S.B. 751 or the 340B program. Doc. 115 at 11. Instead, if Intervenors have a grievance against Plaintiffs, they must resort to "the mandatory HRSA ADR process." *Id.* (citing *Astra USA, Inc. v. Santa Clara County.*, 563 U.S. 110, 119, 122 (2011)).

The Court agrees with Intervenors. Their interests in this litigation are both direct and legitimate. First, Plaintiffs cite to *Standard Heating* to support that Intervenors' interests are too remote. *See* doc. 115 at 11 (citing *Standard Heating*, 137 F.3d at 571). In *Standard Heating*, trade associations appealed the denial of their motion to intervene in a suit challenging municipal testing-and-licensing ordinances for various trades. *Standard Heating*, 137 F.3d at 569. The trade associations argued that, if the challenge succeeded, they might suffer "increased costs from injuries" on the job and lose business due to insufficiently trained tradesmen. *Id.* at 572. The Eighth Circuit disagreed because the trade associations' interests were "too speculative," depending on an unlikely sequence of events. *Id.* at 571.

But in this case, the threat to Intervenors' members looms much closer than the asserted threat to *Standard Heating*'s trade associations. The proffered economic interests there required forecasting that isn't necessary to find Intervenors' interests here "direct [and] substantial." *Med. Liab. Mut. Ins. Co.*, 485 F.3d at 1008 (quoting *Union Elec. Co.*, 64 F.3d at 1161; *see Standard Heating*, 137 F.3d at 571. Plaintiffs openly state that "[w]ithout S.B. 751, if a covered entity" tried to use multiple contract pharmacies, Plaintiffs "would simply refuse." Doc. 101 at ¶ 128. That refusal hinges on this case's outcome and implicates the cost-savings interest Intervenors' members have in distributing 340B-drugs through multiple contract pharmacies.

Next, Plaintiffs' interpretation of the "legally protectable interest" requirement is too narrow. Plaintiffs cite to dicta from *United States v. Metropolitan St. Louis Sewer District* remarking that "allowing intervention by a party with no interest upon which it could seek judicial relief" would not promote efficiency. Doc. 115 at 12 (quoting *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 840 (8th Cir 2009)). They then assert that Intervenors cannot intervene because neither the 340B statute nor S.B. 751 grant a private right of action. *See id.* at 11. But the Eighth Circuit has allowed intervention even where the proposed intervenor sought to defend a law or regulation lacking a private right of action. *See Mausolf v. Babbitt*, 85 F.3d 1295, 1302–03 (8th Cir. 1996) (finding proposed intervenors interest in defending environmental regulations sufficient to intervene to defend regulation); *Planned Parenthood of Minn., Inc. v. Citizens for Cmty. Action*, 558 F.2d 861, 869 (8th Cir. 1977) (allowing proposed intervenors to intervene to defend the validity of city zoning ordinance against constitutional challenge). Intervenors have therefore demonstrated a cognizable interest in this case.

**2. Impairment of the interest**

Rule 24(a)(2) also requires a party to show "that disposition of the action 'may as a practical matter impair or impede the applicant's ability to protect [its] interest.'" *Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 60 F.3d 1304, 1307 (8th Cir. 1995) (citation omitted). Intervenors argue that resolving this lawsuit without them would impair their ability to protect their members' access to 340B drugs at multiple contract pharmacies. *See* doc. 106 at 11. The Court agrees. If Intervenors are not parties to this litigation, they could not protect their members' interest in accessing 340B drugs at contract pharmacies and using those savings to supplement the care they provide to indigent patients.

Plaintiffs respond that the outcome of this case won't impair Intervenors' interest because Intervenors' members can enforce their rights through statutory ADR procedures. *See* doc. 115 at 12 (citing 42 C.F.R. § 10.21(a)(1)). That provision of the 340B-drug-pricing program funnels to ADR "[c]laims by a covered entity *that it has been overcharged by a manufacturer for a covered outpatient drug*." 42 C.F.R. § 10.21(a)(1) (emphasis added). But Intervenors do not claim the 340B-drug manufacturers have overcharged their members for 340B drugs. *See* doc. 119 at 7. Nor do Intervenors raise a violation of federal law suitable for resolution through the federal ADR process. *Id.* Instead, Intervenors assert their motivation is to "defend the [contract-pharmacy] protections . . . provided under S.B. 751," a state law. *Id.* As the statutory ADR procedure is not available to Intervenors' members for this purpose, Intervenors would be unable to protect their members' interests without intervention. Thus, Intervenors adequately showed the outcome of this action may impair their interests.

**3. Adequate representation**

Plaintiffs argue that Missouri, as a government party, will adequately represent Intervenors' interests. Doc. 115 at 6–10. The Court agrees.

**a. Missouri presumptively adequately represents Intervenors' interests.**

Rule 24(a)(2) requires a proposed intervenor to show that the existing parties to the litigation do not adequately represent their interests. *See* Fed. R. Civ. P. 24(a)(2). Typically, a party seeking intervention "need only carry a 'minimal' burden of showing that their interests are inadequately represented by the existing parties." *Mille Lacs Band of Chippewa Indians v. State of Minnesota*,

989 F.2d 994, 999 (8th Cir. 1993) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).

But "[w]here a proposed intervenor's asserted interest is one that a governmental entity who is a party to the case is charged with protecting," the Court "presume[s] that the government's representation is adequate." *Entergy*, 76 F.4th at 1071 (citing *Chiglo v. City of Preston*, 104 F.3d 185, 187–88 (8th Cir. 1997)); *Curry v. Regents of the Univ. of Minn.*, 167 F.3d 420, 423 (8th Cir. 1999). A would-be intervenor may avoid this presumption by showing (1) that it "stands to gain or lose from the litigation in a way different from the public at large," or (2) "that its interest is 'narrower and more parochial' than the government's." *Entergy*, 76 F.4th at 1071 (first quoting *Chiglo*, 104 F.3d at 187–88; and then quoting *Mille Lacs*, 989 F.2d at 1001).

In *Curry*, for example, student groups unsuccessfully tried to intervene to defend their university's mandatory student-fee system. *Curry*, 167 F.3d at 421–22. The *Curry* court rejected intervention, though the student groups had a "distinguishable" motive in "undiminished funding," as the university already adequately represented the groups' interest in upholding the fee system. *Id.* at 422–23. Likewise, in *Chiglo*, parents moved to intervene to defend the enforcement of municipal tobacco-advertising restrictions. *Chiglo*, 104 F.3d at 187. Again, the Eighth Circuit denied their intervention because the parents and the city had the same interest in protecting public health. *Id.* at 188.

Intervenors concede that the Missouri Attorney General and Board of Pharmacy "have a general interest in protecting the constitutionality of duly enacted state laws," but contend Defendants still don't adequately represent their interests. Doc. 106 at 12. They argue that they hold "economic and mission-based interest[s] in the validity and enforcement of S.B. 751," while

Missouri doesn't. *Id.* But the Eighth Circuit has rejected these arguments in *Curry* and *Chiglo*. Both in *Curry* and here, Intervenors' economic motivation in protecting against "los[t] funding" is contingent on the validity of a provision that a government entity has an interest in upholding. *See Curry*, 167 F.3d at 423; doc. 106 at 12. And the patients themselves—part of the same public whose interest Missouri represents—share Intervenors' mission-based interest in "ensur[ing] patients' access to quality and affordable healthcare." Doc. 106 at 3. So, under *Chiglo*, when would-be intervenors share the government's "interest in protecting public health," the Court presumes that the government adequately represents intervenors' interests. *See Chiglo*, 104 F.3d at 188. Because Missouri's interest in upholding S.B. 751 eclipses Intervenors' economic and mission-based interests, the presumption applies.

**b. Intervenors fail to rebut the presumption.**

A proposed intervenor can rebut this presumption "only with a 'strong showing' of inadequacy," such as by demonstrating that the government entity "has committed misfeasance or nonfeasance in protecting the public." *Entergy*, 76 F.4th at 1072 (quoting *North Dakota ex rel. Stenehjem v. United States*, 787 F.3d 918, 922 (8th Cir. 2015)). But "[a]bsent" a "clear dereliction of duty . . . the proposed intervenor[s] cannot rebut the presumption . . . by merely disagreeing with the . . . objectives of the party representing [them]." *Chiglo*, 104 F.3d at 188.

On this point, Intervenors assert that Missouri "[has] not attempted to enforce S.B. 751 or create regulations implementing [it]." Doc. 119 at 5. They even maintain that Missouri "ha[s] a disincentive to enforce S.B. 751" because Missouri could lose Medicaid-rebate income if it enforces S.B. 751. *Id.* But this argument is self-defeating.

To rebut the presumption of representation, a would-be intervenor must show the government "*has committed* . . . nonfeasance," not that it *might*. *Entergy*, 76 F.4th at 1072

(emphasis added). Intervenors fail to establish that Missouri has committed nonfeasance. Instead, Missouri hasn't needed to enforce the law yet as the threat of enforcement coaxed 340B-drug manufacturers like AbbVie into compliance. *See* doc. 101 at ¶ 75 ("AbbVie has suspended or will suspend its contract pharmacy policy in Missouri and come into compliance with [S.B. 751].").

As the presumption of adequate representation applies, and Intervenors have failed to rebut it, the Court must deny intervention as of right. Still, Intervenors' back-up argument asserts that they may intervene through permissive intervention under Rule 24(b).

**B. Permissive intervention**

Alternatively, Rule 24(b) permits a party to intervene through a timely motion if it "has a claim or defense that shares . . . a common question of law or fact" with the suit. Fed. R. Civ. P. 24(b)(1)(B). The proposed intervenor must also have "an independent ground for jurisdiction." *Flynt v. Lombardi*, 782 F.3d 963, 966 (8th Cir. 2015) (citation omitted). "The principal consideration . . . is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights." *Barnett*, 317 F.3d at 787. "[A]dequacy of protection" is a legitimate consideration in deciding a Rule 24(b) motion, if "only a minor" one. *Id.*

Plaintiffs dispute neither timeliness nor the Court's jurisdiction over this case. And Intervenors' defense—that S.B. 751 does not violate the Constitution—maps directly onto the main issue of the case, providing "a common question of law." Fed. R. Civ. P. 24(b)(1)(B). Additionally, the Court finds that Plaintiffs provide no reason that Intervenors' presence in this case would significantly delay or prejudice the existing parties. After all, Intervenors have already participated in this case in a limited capacity, docs. 84, 88, and other courts faced with identical or substantially similar facts have permitted organizations like Intervenors to intervene

without causing significant delays. *See, e.g.*, *Pharm. Rsch. & Mfrs. of Am. v. Bailey*, No. 2:24-cv-04144-MDH, 2024 WL 5453832 (W.D. Mo. Nov. 25, 2024) (holding that Intervenors could intervene as of right); *AstraZeneca Pharms. LP v. McClain*, No. 4:24-cv-00268-BRW, 2024 WL 6995039 (E.D. Ark. Aug. 13, 2024); *Pharm. Rsch. & Mfrs. of Am. v. McClain*, No. 4:21-cv-00864-BRW, 2022 WL 23038829 (E.D. Ark. May 3, 2022).

Plaintiffs contest that denying intervention wouldn't prejudice Intervenors "because their interests are adequately represented by the State." Doc. 115 at 13. That much is true. But adequate representation is "only a minor factor" when deciding whether to permit intervention. *Barnett*, 317 F.3d at 787. And Intervenors will likely provide helpful perspectives on the merits of the case, which may assist the Court in distilling and resolving the issues. So, in its discretion, the Court grants permissive intervention because it finds that the benefits of intervention outweigh the burdens.

## IV. Conclusion

Accordingly, the Court grants Intervenors' [106] motion to intervene.

So ordered this 24th day of September 2026.

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE